# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| RESOLUTE FOREST PRODUCTS, INC., RESOLUTE FP US, INC., RESOLUTE FP AUGUSTA, LLC, FIBREK GENERAL PARTNERSHIP, FIBREK U.S., INC., FIBREK INTERNATIONAL INC., and RESOLUTE FP CANADA, INC. | : : : : : : | |
| | : | CIVIL ACTION FILE No.:_____ |
| Plaintiffs, | : : | |
| - against - | : : | |
| GREENPEACE INTERNATIONAL (aka "GREENPEACE STICHTING COUNCIL"), GREENPEACE, INC., GREENPEACE FUND, INC., FORESTETHICS, DANIEL BRINDIS, AMY MOAS, MATTHEW DAGGETT, ROLF SKAR, TODD PAGLIA, and JOHN AND JANE DOES 1-20, | : : : : : : : | |
| Defendants. | : | |

## LOCAL RULE 9.1 CIVIL RICO CASE STATEMENT

Plaintiffs Resolute Forest Products, Inc., Resolute FP US, Inc., Resolute FP Augusta, LLC, Fibrek General Partnership, Fibrek U.S., Inc., Fibrek International Inc., and Resolute FP Canada (collectively "Resolute" or "Plaintiffs"), through their undersigned counsel and pursuant to Rule 9.1 of the Local Rules of the Unites States District Court for the Southern District of Georgia, hereby submits its Civil RICO Case Statement (the "RICO Case Statement") in the above captioned action.

## ANSWER TO RULE 9.1 QUESTIONS

**1. State whether the alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962(a), (b), (c) and/or (d).**

**ANSWER to 1:** The unlawful conduct alleged in Resolute's May 31, 2016 complaint (the "Complaint") is in violation of 18 U.S.C. §§ 1962(a), (b), and (c), and O.C.G.A §§ 16-14-4 (b) and (c).  Each violation is pled as a separate cause of action in the Complaint.

2.  **List each defendant and state the alleged misconduct and basis of liability of each defendant.**

**ANSWER to 2:**  The Defendants named in the Complaint include Greenpeace International aka "Greenpeace Stichting Council" ("Greenpeace International"), Greenpeace, Inc. ("GP-Inc."), Greenpeace Fund, Inc. ("GP-Fund"), Daniel Brindis, Amy Moas, Matthew Daggett, Rolf Skar (collectively, "Greenpeace Defendants") and ForestEthics and Todd Paglia (together, "ForestEthics").

As set forth in detail in the Complaint, each of the Defendants were responsible for orchestrating a wide-ranging scheme of disinformation, fraud, misappropriation, extortion, illegal money transfers, and other illegal conduct, which (a) fraudulently induced people throughout the United States and the world to donate millions of dollars that Defendants purported to use for environmental purposes, but which were in fact used to perpetuate the corrupted entities themselves, the salaries of their leaders and employees, and the fraud and other tortious conduct that they were perpetuating; (b) misappropriated proprietary customer, sourcing, and trade secrets through impersonation and other false pretenses; (c) used the mails and wires to perpetrate the schemes to defraud donors and misappropriate proprietary information; (d) used the mails and wires to transfer illicit proceeds from Defendants' fraudulent fundraising in interstate commerce; (e) used the mails and wires to transfer misappropriated proprietary information; (f) made extortive threats to Plaintiffs and their customers; and (g) invested and used illicit proceeds in the Defendants and the enterprise to perpetuate the enterprise's scheme and to fund other direct actions against the Plaintiffs and other business relationships.

Each Defendant is alleged to have knowingly and willfully participated in this illegal conduct.  Greenpeace International and GP-Fund funded, directed, directly participated in, and procured illicit proceeds from the scheme to defraud donors, and then used and invested those

proceeds in themselves and the enterprise to perpetuate the scheme and otherwise harm the Plaintiffs in their business and property.  GP-Inc. and ForestEthics directed, participated in, and procured illicit donations from the scheme to defraud donors, misappropriated proprietary information, used and invested illicit proceeds from the scheme in themselves and the enterprise to perpetuate the scheme, and took other direct action to damage Plaintiffs' business and property.   The individual Defendants directed and participated in the fraudulent scheme to defraud donors and misappropriated proprietary information, and directed and participated in the direct actions taken to harm Plaintiffs in their business and property.

**3.  List the alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each wrongdoer.**

The campaign against Resolute alleged herein was conducted by an illegal enterprise (the "Greenpeace Enterprise") consisting of various legally distinct but associated-in-fact environmental groups, individuals, and others who associated together for the purpose of carrying out the pattern of racketeering activity alleged herein, including, but not limited to, using the mails and wires to: (a) defraud donors and steal proprietary information; (b) defraud the United State Treasury, (c) make bribes and extortive threats, (d) transport and transmit misappropriated funds and property through interstate commerce, and (e) further a conspiracy to do the same.  Beyond the Defendants set forth in response to Question 2 above, the following wrongdoers are currently set forth in the Complaint as "Enterprise Members:" Greenpeace Canada, Richard Brooks, Shane Moffatt, Nicolas Manville, Annie Leonard, and Amanda Carr. Additional details regarding each of these enterprise members' specific roles and relationship with the Greenpeace Enterprise are set forth in response to Question 6 below.

**(a)      Greenpeace Canada:** Greenpeace Canada is a federally incorporated company with its head offices in Toronto Ontario and is the Canadian presence of the Greenpeace

3

associations.  It works closely with Greenpeace International and GP-Inc. in executing the campaign directed at Resolute set forth in the Complaint.   Greenpeace Canada employs enterprise members Richard Brooks, Shane Moffatt and Nicolas Mainville, and has, acting in concert with the Defendants and other enterprise members, participated in and directed the affairs of the Greenpeace Enterprise, and engaged in a pattern of criminal activity, including by sending funds obtained through fraudulent fundraising to Greenpeace International, some of which are then used to further the Greenpeace Enterprise's campaign against Resolute.

Greenpeace Canada's website, greenpeace.org.ca, has been used by the Greenpeace Enterprise and enterprise members to publish many false and defamatory articles and blog posts authored by the individual Defendants and enterprise members published in furtherance of the "Resolute: Forest Destroyer" campaign aimed at harming Resolute and fraudulently inducing donations from the public.

In addition to operating the website on which a significant portion of the Greenpeace Enterprise's racketeering scheme is carried out, Greenpeace Canada is also intimately involved in planning, approval, direction, and monitoring of the campaigns and activities that it funds and from which it fundraises.

Without limitation, through its involvement in and the material support provided to the Greenpeace Enterprise's campaign against Resolute, Greenpeace Canada has knowingly participated both directly and indirectly in the predicate acts cognizable as a pattern of criminal activity under 18 U.S.C. § 1861 and O.G.C.A. § 16-14-4 as incorporated therein and/or acts in furtherance of the fraudulent schemes alleged in the Complaint, including by participating directly and indirectly in all of the acts committed by the Greenpeace Enterprise and described in more detail above.

As set forth in more detail below, these acts constitute violations of 18 U.S.C. § 1861 (a), (c), and (d) and O.G.C.A. § 16-14-4 (b) and (c).

(b)      **Richard Brooks:** Richard Brooks is a forest campaign coordinator for Greenpeace Canada with responsibility for Greenpeace Canada's participation in the campaign directed at Resolute set forth in the Complaint.  Mr. Brooks has, at all relevant times, played an integral role in the Greenpeace Enterprise's racketeering scheme directed at Resolute.

Without limitation, through his involvement in and the material support provided to Greenpeace Enterprise's campaign against Resolute, Mr. Brooks knowingly participated both directly and indirectly in the predicate acts cognizable as a pattern of criminal activity under 18 U.S.C. § 1861 and O.G.C.A. § 16-14-4 as incorporated therein and/or acts in furtherance of the fraudulent schemes alleged in the Complaint, including by participating directly and indirectly in all of the acts committed by the Greenpeace Enterprise and described in more detail above. Moreover, Mr. Brooks has specifically used the mails and wires to harm Resolute's reputation and business relationships, and to generate public support for the Greenpeace Enterprise's campaign in the form of donations, by publishing numerous false and defamatory statements concerning Resolute on Twitter, on Greenpeace Canada's website, and in direct mail and email communications with Resolute's customers and other key constituents.  Additionally, Mr. Brooks travelled to Augusta, Georgia to broadcast and disseminate Greenpeace's false and defamatory statements concerning Resolute to Resolute's shareholders, board of directors, and the public at Resolute's Annual General Meeting on May 29, 2015.

As set forth below, these acts constitute violations of 18 U.S.C. § 1861 (a), (c), and (d) and O.G.C.A. § 16-14-4 (b) and (c).

(c)   **Shane Moffatt**:  Shane Moffatt is a forest campaigner for Greenpeace Canada responsible for Greenpeace Canada's participation in the campaign directed at Resolute set forth in the Complaint.  Mr. Moffatt has, at all relevant times, played an integral role in the Greenpeace Enterprise's racketeering scheme directed at Resolute.

Without limitation, through his involvement in and the material support provided to Greenpeace's campaign against Resolute, Mr. Moffatt knowingly participated both directly and indirectly in the predicate acts cognizable as a pattern of criminal activity under 18 U.S.C. § 1861 and O.G.C.A. § 16-14-4 as incorporated therein and/or acts in furtherance of the fraudulent schemes alleged in the Complaint, including by participating directly and indirectly in all of the acts committed by the Greenpeace Enterprise and described in more detail above.  Moreover, Mr. Moffatt has specifically used the mails and wires to harm Resolute's reputation and business relationships, and to generate public support for the Greenpeace Enterprise's campaign in the form of donations, by publishing numerous false and defamatory statements concerning Resolute on Twitter, on Greenpeace Canada's website, and in direct mail and email communications with Resolute's customers and other key constituents.

As set forth below, these acts constitute violations of 18 U.S.C. § 1861 (a), (c), and (d) and O.G.C.A. § 16-14-4 (b) and (c).

(d)   **Nicolas Mainville**: Nicolas Mainville is a forest campaigner for Greenpeace Canada with responsibility for Greenpeace Canada's participation in the campaign directed at Resolute set forth in the Complaint.  Mr. Mainville has, at all relevant times, played an integral role in the Greenpeace Enterprise's racketeering scheme directed at Resolute.

Without limitation, through his involvement in and the material support provided to the Greenpeace Enterprise's campaign against Resolute, Mr. Mainville knowingly participated both

directly and indirectly in the predicate acts cognizable as a pattern of criminal activity under 18 U.S.C. § 1861 and O.G.C.A. § 16-14-4 as incorporated therein and/or acts in furtherance of the fraudulent schemes alleged in the Complaint, including by participating directly and indirectly in all of the acts committed by Greenpeace Enterprise and described in more detail above.

Moreover, Mr. Mainville has specifically used the mails and wires to harm Resolute's reputation and business relationships, and to generate public support for the Greenpeace Enterprise's campaign in the form of donations, by publishing numerous false and defamatory statements concerning Resolute on Twitter, on Greenpeace Canada's website, and in direct mail and email communications with Resolute's customers and other key constituents.  Additionally, Mr. Mainville travelled to Resolute's headquarters in Montreal on May 22, 2014 to deliver a "Guardian Tree" to Resolute "as a symbol of shared resolve to protect Canada's Boreal Forest from Resolute's clear-cutting," which was the product of the Greenpeace Enterprise's "Stand For Forests" campaign.

As set forth below, these acts constitute violations of 18 U.S.C. § 1861 (a), (c), and (d) and O.G.C.A. § 16-14-4 (b) and (c).

(e)   **Annie Leonard:** Annie Leonard is the executive director of Greenpeace Fund and Greenpeace, Inc. with knowledge, control, and responsibility for the participation of these two Defendants in the campaign directed at Resolute set forth in the Complaint.

Without limitation, through her involvement in and the material support provided to Greenpeace's campaign against Resolute, Ms. Leonard knowingly participated both directly and indirectly in the predicate acts cognizable as a pattern of criminal activity under 18 U.S.C. § 1861 and O.G.C.A. § 16-14-4 as incorporated therein and/or acts in furtherance of the fraudulent schemes alleged in the Complaint, including by participating directly and indirectly in all of the

7

acts committed by the Greenpeace Enterprise and described in more detail above.

As set forth in more detail below, these acts constitute violations of 18 U.S.C. § 1861 (a), (c), and (d) and O.G.C.A. § 16-14-4 (b) and (c).

(f)     **Amanda Carr:** Amanda Carr is a campaign director for Canopy, a non-profit organization that claims its mission is "to protect the world's forests, species and climate by collaborating with business leaders, scientists and decision-makers to help create sustainable supply chains and foster innovative solutions to environmental challenges."

Without limitation, through her involvement in and the material support provided to the Greenpeace Enterprise's campaign against Resolute, Ms. Carr has knowingly participated both directly and indirectly in the predicate acts cognizable as a pattern of criminal activity under 18 U.S.C. § 1861 and O.G.C.A. § 16-14-4 as incorporated therein and/or acts in furtherance of the fraudulent schemes alleged in the Complaint, including by participating directly and indirectly in acts committed by the Greenpeace Enterprise and described in more detail above.   Moreover, Ms. Carr has specifically used the wires to harm Resolute's reputation and business relationships, and to generate public support for the Greenpeace Enterprise's campaign in the form of donations, by authoring and disseminating false and defamatory statements about Resolute, including specifically co-authoring and disseminating a letter with other enterprise members falsely accusing Resolute of violating the CBFA by logging in off-limits areas.

As set forth below, these acts constitute violations of 18 U.S.C. § 1861 (a), (c), and (d) and O.G.C.A. § 16-14-4 (b) and (c).

**4.  List the alleged victims and state how each victim was allegedly injured.**

**ANSWER to 4:** The victims known to plaintiffs were as follows:

(a)  Donors fraudulently induced to donate monies under false pretenses;

8

(b) Plaintiffs who had (i) their business and property, particularly their customer relationships, goodwill, and reputation damaged by the false claims used to fraudulently induce donations and by Defendants' extortive threats to those customers, (ii) proprietary information stolen and used to interfere with their business and property, (iii) their customer relationships interfered with by actions funded from the illicit funds Defendants procured through their fraud and used to harm Plaintiffs, and (iv) substantial costs, expenses, and resources consumed attempting to mitigate the damage the Greenpeace Enterprise inflicted on it as a direct result of the Greenpeace Enterprise's actions;

(c) Resolute customers and other companies sourcing wood from the same forests as Resolute who were targeted and had their proprietary sourcing and other trade secrets misappropriated; and

(d) the United States treasury which does not collect taxes from GP-Fund and GP-Inc. based on their bogus 501(c)(3) and 501(c)(4) tax statuses inconsistent with each entity's true purpose.

**5. Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim. A description of the pattern of racketeering shall include the following information:**

    **a) List the alleged predicate acts and the specific statutes which were allegedly violated;**

    **b) Provide the dates of the predicate acts, the participants in the predicate acts and a description of the facts surrounding the predicate acts;**

    **c) If the RICO claim is based on the predicate offenses of wire fraud, mail fraud or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Identify the time, place and content of the alleged misrepresentations and the identity of persons to whom and by whom the alleged misrepresentations were made;**

    **d) State whether there has been a criminal conviction for violation of the predicate acts;**

    **e) State whether civil litigation has resulted in a judgment in regard to the predicate acts;**

    **f) Describe how the predicate acts form a "pattern of racketeering activity"; and**

    **g) State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe in detail.**

**ANSWER to 5(a)-(c):** The Greenpeace Enterprise's conduct and acts in furtherance of the fraudulent scheme included, but were not limited to the predicate RICO acts of: (i) mail fraud in violation of 18 U.S.C. § 1341; (ii) wire fraud in violation of 18 U.S.C. § 1343, as set forth in 18 U.S.C. §§ 1961(1)(B); (iii) extortion and other crimes in violation of 18 U.S.C. § 875-77, 880 and 18 U.S.C. § 1512; (iv) illegal interference with commerce in violation of 18 U.S.C. § 1951; (v) illegal monetary transactions in violation of 18 U.S.C. § 1957; (vi) and corresponding Georgia statutes criminalizing the same conduct, and which constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).  These predicate acts were intended to and did mislead donors, customers, and others about plaintiffs so as to induce donations and compliance with the Defendants' demands and to extract and intimidate others, all of which objectives were obtained.

Specifically, among other things, throughout the scheme period, in furtherance of and for the purpose of executing and attempting to execute the described schemes and artifices to defraud, each of the Defendants, on numerous occasions, used and caused to be used wire communications in interstate and foreign commerce and U.S. mails, by both making and causing to be made wire communications and mailings.  These wire communications and mailings were made, inter alia, for the purpose of: (i) preparing false and misleading reports concerning Resolute and its customers; (ii) broadly disseminating the false and defamatory reports and other statements through Greenpeace's website and other internet platforms, such as Twitter and Facebook; (iii) communicating and coordinating with one another to effectuate the dissemination of false and misleading information necessary to perpetrate the scheme to harm Resolute; (iv) disseminating the false and misleading allegations directly to Resolute's stakeholders, customers, trade associations, government regulators, and other critical market constituents through email, U.S. mail, and phone; (v) misappropriating proprietary customer, sourcing, and other trade secret

information under false pretenses from Resolute and its customers; (vi) harassing Resolute's customers with extortionate threats; (vii) soliciting fraudulent charitable donations from the public by means of false pretenses, representations, or promises; (viii) wiring fraudulently obtained funds to sustain the Greenpeace Enterprise's "campaign" against Resolute; and (ix) submitting materially false and misleading tax submissions and financial information.  The Defendants have also processed millions of dollars in fraudulently induced donations over the wires in thousands of individual transactions.

The Greenpeace Enterprise also took direct action against Resolute's customers whereby the Greenpeace Enterprise issued extortive threats demanding that such customers terminate their relationships with Resolute and endorse the Greenpeace Enterprise's position and efforts, which provided a substantial benefit to the Greenpeace Enterprise in the form of enhanced fundraising potential.

Further, in conducting the affairs of the Greenpeace Enterprise, Defendants used and invested income that was derived from the pattern of racketeering activity, directly or indirectly, in the operations of the Greenpeace Defendants and the Greenpeace Enterprise, which are entities and an enterprise engaged in, and the activities of which affect, interstate and foreign commerce, in violation of 18 U.S.C. § 1962(a).  Specifically, the Defendants used funds they fraudulently procured through the alleged pattern of predicate acts to: (a) fund the Greenpeace Enterprise; (b) fund the dissemination of materially false and fraudulent information used to induce donors to make contributions to the Greenpeace Enterprise and individual Enterprise Members; and (c) fund the expanded attack on Resolute and its relationships with customers, partners and other critical business constituents as alleged in this complaint, including but not limited to the use of illicit funds from fraudulently induced donations to fund the direct actions

11

against Resolute customers that caused the loss of those customers and market share in an

amount the Greenpeace Enterprise has estimated to be not less than C$100 million, to fund direct

and indirect actions directed at Resolute's relationship with FSC and the auditors responsible for

evaluating compliance with FSC certification standards, and to fund the fraudulent

misappropriation of proprietary customer, sourcing and other trade secret information from

Resolute and its customers, which it then used to target these customers.

     As described in further detail in the Complaint, the Greenpeace Enterprise authored and

published numerous reports and other Resolute-related updates and blog posts as set forth in

Table A below, each such publication constituting a separate fraudulent wire communication:

**TABLE A**

| GREENPEACE PUBLICATIONS | |
|---|---|
| **TITLE** | **DATE** |
| Consuming The Boreal Forest: The Chain Of Destruction From Logging Companies To Consumers | 8/1/2007 |
| Crisis In Our Forests: A Case Study Of AbitibiBowater's Irresponsible Forestry In The English River Forest | Nov-09 |
| Resolute Forest Products Violates Canadian Boreal Forest Agreement With Logging Activity In Off-Limit Areas | 12/6/2012 |
| Boreal Alarm: A Wakeup Call For Action In Canada's Endangered Forests | 1/2013 |
| Greenpeace Calls For A Halt On Logging In Five Key Areas In The Boreal Forest | 1/22/2013 |
| Ridiculous Tax Break Sought By Resolute In The Boreal Forest | 4/10/2013 |
| Protecting Our Land – The Mishigamish In The Broadback Valley In Quebec | 4/29/2013 |
| Algonquin Community Defends Their Lands Against Resolute Forest Products | 5/14/2013 |
| Resolute's False Promises: The [Un]sustainability Report 2013 | 5/15/2013 |
| Buyer Beware, Resolute Forest Products' Sustainability Falls Flat, Report Reveals | 5/15/2013 |
| Resolute's Green Marketing Won't Cut It | 5/16/2013 |
| Resolute Forest Products' Deceit Leads To Collapse Of Boreal Agreement | 5/21/2013 |
| Resolute's Flawed 'Controlled Wood' Threatens FSC's Credibility | 8/29/2013 |
| FSC AT RISK: Canada's Resolute Forest Products: Opening FSC To Controversial 'Controlled Wood' Sources | 8/29/2013 |
| Woodland Caribou Aren't The Only Ones In Trouble | 10/3/2013 |
| ForestEthics Defends An Endangered Forest In Ontario | 10/10/2013 |
| Sustainability Requires Action, Not Words | 10/10/2013 |

| | |
|---|---|
| FSC Suspends Three Certificates Operated By Logging Giant Resolute | 12/12/2013 |
| Canada's Largest Logging Company Resolute Loses Three Sustainability Certificates, Proving Forest Mismanaged | 12/12/2013 |
| Its Not Our Fault That We Lost Our Green Label' Says Logging Giant Resolute | 12/16/2013 |
| Resolute's FSC Suspensions In Ontario and Quebec, and Assessment Failure In Ontario | 1/14/2016 |
| The Guardian Tree: Where art and the forest come together | 2/12/2014 |
| Forest Solutions: An Insider's Look At Greenpeace Collaborations In Forest Regions Around The World | 3/1/2014 |
| Message To Resolute: You Can Collaborate With Us.  Others Have | 3/17/2014 |
| Mount Royal Cross Transformed Into Scales Of Justice: Greenpeace Protests The Reckless Destruction Of Canada's Boreal Forest | 3/18/2014 |
| Montreal Cross Scales Of Justice | 3/18/2014 |
| What Environmentalists Do | 4/3/2014 |
| FSC AT RISK: Resolute Forest Management: FSC Must Do More To Protect Intact Forests, Species At Risk And Indigenous Rights In Canada | 5/2014 |
| Mr. Garneau, Will You Be Part Of The Solution?  60,000 Citizens Stand For Forests | 5/22/2014 |
| Shoot: Signature Delivery At Resolute Headquarters in Montreal | 5/22/2014 |
| Ignoring Boreal Forests Could Speed Up Global Warming | 5/5/2014 |
| Greenpeace At Resolute's AGM: Will Richard Garneau Be Part Of The Solution | 5/23/2014 |
| Resolute's Transparency Crisis Over Its Operations In Canada's Forests | 6/12/2014 |
| Ontario Nature Shines A Spotlight On Caribou Forest | 9/15/2014 |
| Field Visit To Atikamekw: The Devastation Of The Logging Industry Has Lasted Too Long | 9/26/2014 |
| Better Buying In The Boreal Forest | 11/2014 |
| Best Buy Is Wasting Ancient Forests, One Flyer At A Time | 11/26/2014 |
| Electronics Giant Best Buy Wasting Boreal Forest One Flyer At A Time: Greenpeace Report | 11/26/2014 |
| Help Best Buy Get Out Of Ancient Forests | 11/26/2014 |
| Best Buy Does Better For Canada's Forests, Commits To Sustainable Paper | 12/9/2014 |
| For Workers And For Our Public Forests, Resolute Must Work To Regain Its FSC Certificates | 12/18/2014 |
| Who's Been Naughty And Who's Been Nice To The Planet This Year | 12/22/2014 |
| Will You Stand For The Boreal Forest? | 2/17/2015 |
| Posted: Good News for Forests! | 3/5/2015 |
| FSC International Calls Out Resolute Forest Products' Leadership, Asks For An Immediate Change In Approach | 3/16/2015 |
| Rite Aid Making The Wrong Choice For Ancient Forests | 4/15/2015 |

| | |
|---|---|
| How Rite Aid And Other Customers Of Boreal Forest Products Can Support Real Solutions | 4/17/2015 |
| Join Our Thunderclap: Say It Loud For Real Solutions In The Boreal Forest | 5/22/2015 |
| Chief Forester Of Quebec Issues Alarming Report On Future Of Caribou | 5/29/2015 |
| What Did 10,000 Tweets Say To Resolute Forest Products? | 6/1/2015 |
| Ban On Logging: Cree First Nation More Committed Than Ever To Protect Their Last Intact Forests | 7/14/2015 |
| Rite Aid: Still Making The Wrong Choice For Forests | 7/21/2015 |
| US Pharmacy Giant Rite Aid Is Destroying Canada's Boreal Forest | 7/21/2015 |
| Why Forests Are Critical For Public Health | 7/25/2015 |
| US pharmacy Giant Making Wrong Choice For The Boreal Forest | 7/28/2015 |
| Collaboration Is The Key To Sustainability In Canada's Boreal Forest | 8/14/2015 |
| Maker of Post-It Notes Lives Up To Promise, Begins To Eliminate Destructive Logger from Supply Chain | 10/12/2015 |
| Protecting Intact Forests & FSC's Motion 65: Getting The Facts Straight | 12/15/2015 |
| Resolute Forest Products: Key Risks And Concerns For Investors | 1/1/2016 |
| Axing The Broadback? Strong Opposition To The Logging Industry At The COMEX Public Hearings | 1/21/2016 |
| Certification Update February 2016 - Montagnes Blanches Endangered Forest | 2/2016 |
| Endangered Forests in the Balance - The impact of logging reaches new heights in the Montagnes Blanches Endangered Forest - Updated February 2016: | 2/2016 |
| A Good Reputation Takes Work Not Forest Destruction | 2/22/2016 |
| Boreal Forest: The Facts | 3/27/2016 |
| Resolute: Forest Destroyer | Undated |
| Boreal Forests | Undated |
| #STAND FOR FORESTS | Undated |

The Enterprise also disseminated falsehoods about Resolute by phone, through electronic mail, U.S. mail, and posts on social media platforms, such as Twitter, which resulted in direct injury to Plaintiffs.  The total number of phone calls, e-mails, and mailings, and the identities of all enterprise members is not yet known, but members of the Greenpeace Enterprise engaged in the following phone calls, e-mails, and U.S. mailings as set forth in Table B, each constituting a separate mail or wire communication in furtherance of the fraudulent scheme:

14

**TABLE B**

| ADDITIONAL MAIL AND WIRE COMMUNICATIONS | | | | |
|---|---|---|---|---|
| **SENDER/CALLER** | **RECIPIENT** | **DATE** | **SUBJECT** | **METHOD** |
| Greenpeace | Kimberly-Clark | 8/21/2012 | Challenging Resolute's compliance with FSC standards | E-mail |
| Greenpeace | P&G | 9/2012 | Accusing Resolute of unsustainable operations in the Canadian Boreal Forest | U.S. Mail or E-Mail |
| Greenpeace | P&G | 11/2012 | Challenging Resolute's compliance with FSC standards | U.S Mail or Email |
| Greenpeace | Lowes Companies, Inc. | 1/2013 | Accusing Resolute of logging in restricted areas | Phone |
| Joanne Kerr | Seaman Paper | 1/9/2013 | Accusing Resolute of unsustainable operations in the Canadian Boreal Forest | U.S. Mail or E-Mail |
| Andisheh Beiki | Harlequin Enterprises | 1/17/2013 | Transmitting the "Boreal Alarm" Report | E-mail |
| Andisheh Beiki | Lowes Companies, Inc. | 1/22/2013 | Transmitting the "Boreal Alarm" Report | E-mail |
| Catharine Grant; Daniel Brindis | TC Transcontinental | 3/28/2013 | Accusing Resolute of threatening the survival of woodland caribou herds | U.S. Mail or E-Mail |
| Catharine Grant | Wausau Paper | 5/15/2013 | Transmitting "Resolute False Promises - the [Un]sustainability Report" | E-mail |
| Rolf Skar | N/A | 5/15/2013 | "New report shows Canadian logging giant Resolute Forest Products cutting into endangered forests @GreenpeaceCA" | Twitter |
| Stand | N/A | 5/21/2013 | "Our Commitment 2 #Boreal #Forest Protection: Stronger than @ResoluteFP via @ForestEthics #TheRootWord" | Twitter |
| Stand | N/A | 5/21/2013 | "@ResoluteFP won't do anything close to what science warrants to protect our it-forests and threatened #caribou" | Twitter |
| Todd Paglia | N/A | 5/21/2013 | "My blog: Our Commitment to Boreal Forest Protection: Stronger than Resolute" | Twitter |
| Greenpeace | Unisource Worldwide | 5/31/2013 | Transmitting "Resolute False Promises - the [Un]sustainability Report" | U.S. Mail or E-mail |

15

| Greenpeace | Local Search Association | 6/2013 | Accusing Resolute of forest destruction and degradation in Canada's Boreal Forest | Phone |
|---|---|---|---|---|
| Richard Brooks | Hearst | 6/14/2013 | Accusing Resolute of unsustainable operations in the Canadian Boreal Forest | E-mail |
| Daniel Brindis | Perfection Press, Inc. | 8/27/2013 | Accusing Resolute of unsustainable operations in the Canadian Boreal Forest | U.S. Mail or E-mail |
| Greenpeace | Pearson | 9/3/2013 | Accusing Resolute of Violating the CBFA | U.S. Mail or E-mail |
| Greenpeace | Pearson | 9/26/2013 | Accusing Resolute of Violating the CBFA | Phone |
| Oliver Salge | European Newspaper Publishers Association | 11/21/2013 | Accusing Resolute of unsustainable operations in the Canadian Boreal Forest | E-mail |
| Richard Brooks | Lowes Companies, Inc. | 12/12/2013 | False allegations re FSC suspensions | E-mail |
| Amy Moas | N/A | 12/13/2013 | "Good new Canadian logging giant Resolute Forest's #FSC certificates suspended. Stop the destruction! #Greenpeace" | Twitter |
| Stand | N/A | 12/17/2013 | "Grand Council of the Crees wins suspension of Resolute Forest Products' #FSC Certification" | Twitter |
| Greenpeace USA | N/A | 12/17/2013 | "The @FSC_IC stands up to logging giant, #Resolute, for the violation of strict #sustainability standards" | Twitter |
| Stand | N/A | 12/17/2013 | "Canada's largest forest company, Resolute Forest Products, loses several eco-certifications from #FSC" | Twitter |
| Greenpeace USA | N/A | 12/18/2013 | "Logging giant, #Resolute, points fingers as to why they recently lost @FSC_IC #sustainability certifications" | Twitter |
| Greenpeace | Resolute Customer | 1/2014 | Accusing Resolute of unsustainable operations in the Canadian Boreal forest. | U.S. Mail or Email |
| Greenpeace | Pro Build | 3/2014 | Transmitting the "Boreal Alarm" report | U.S. Mail or Email |

| Greenpeace | N/A | 3/18/2014 | "@GreenpeaceCA turn Montreal Mt Royal into scales of justice - resolute Logging co. vs Boreal Forest #StandForForests" | Twitter |
|---|---|---|---|---|
| Nicolas Mainville | N/A | 3/19/2014 | "Sending a resolute message to a forest destroyer #standforforests" | Twitter |
| Hilde Stroot; Oliver Salge | Wegener Media | 4/3/2014 | False allegations re FSC suspensions | U.S. Mail or E-mail |
| Stephanie Goodwin | Flambeau River Papers | 4/4/2014 | Transmitting "Forest Solutions" report | U.S. Mail or Mail |
| Richard Brooks | Krueger | 4/14/2014 | Transmitting link to "Forest Solutions - Collaborations with Greenpeace from around the world" | E-mail |
| Amy Moas | N/A | 5/21/2014 | "Shameful! @Resolutefp sues @RnfrstAlliance to cover up forest destruction. Awful Corporate behavior! @GreenpeaceCA" | Twitter |
| John Sauven | The Guardian | 7/15/2014 | Accusing Resolute of threatening the survival of woodland caribou herds | E-mail |
| Nicolas Mainville | N/A | 10/12/2014 | "Why is @resolutefp so upset about @BestBuy using sustainable paper? Because they failed #FSC exams." | Twitter |
| Nicolas Mainville | N/A | 12/21/2014 | "@resolutefp abandons #FSC standard despite corporate commitments, risking contracts and sustainability bit.ly/1wAT9hX @RBGreenpeace" | Twitter |
| Nicolas Mainville | N/A | 1/25/2015 | "Thanks @gcccra @billnama. Resolute's violation of free prior consent under #FSC has been recognized by #ASI, what would now be the solution?" | Twitter |
| Greenpeace | Express Newspapers | February 2015 | Accusing Resolute of unsustainable operations in the Canadian Boreal Forest | U.S. Mail or E-mail |
| Greenpeace | News International | February 2015 | Accusing Resolute of unsustainable  operations in the Canadian Boreal Forest | U.S. Mail or E-mail |

| Pat Venditti | Northern & Shell | 2/2/2015 | Accusing Resolute of forest destruction and degradation in Canada's Boreal forest | U.S. Mail or E-mail |
|---|---|---|---|---|
| Pat Venditti | Trinity Mirror Plc | 2/2/2015 | Accusing Resolute of forest destruction and degradation in Canada's Boreal forest | U.S. Mail or E-mail |
| Rolf Skar | N/A | 3/16/2015 | "@FSC_IC asks that Resolute Forest Products "immediately stops their discriminatory activities and communications" | Twitter |
| Todd Paglia | N/A | 3/16/2015 | "Once again @resolutefp is part of an agreement but doesn't want to follow the rules they agreed to: FSC replies" | Twitter |
| Richard George | European Newspaper Publishers Association | 5/13/2015 | Accusing Resolute of waging public attack on the FSC | U.S. Mail or E-mail |
| Christiane Mazette | Grupo Folha | 8/2015 | Accusing Resolute of forest destruction and degradation in Canada's Boreal forest | E-mail |
| Amy Moas | N/A | 8/31/2015 | "Publisher @axelspringerEN ditches unsustainable @resolutefp paper. Wants Canadian paper but less enviro controversy" | Twitter |
| Todd Paglia | N/A | 12/18/2015 | "#Forest Products shows collaboration is foreign concept, rejects calls for mediation, go it alone or die?" | Twitter |
| Amy Moas | Midland Paper | Undated | Accusing Resolute of logging in Montagnes Blanches | E-mail |
| Amy Moas | Penguin Random House | Undated | Accusing Resolute of logging in Montagnes Blanches | E-mail |
| Greenpeace | Newscorp | Undated | Accusing Resolute of unsustainable operations in the Canadian Boreal Forest | U.S. Mail or E-mail |
| Stephanie Goodwin | Pro Build | Undated | Accusing Resolute of unsustainable operations in the Canadian Boreal Forest | Phone |
| Stephanie Goodwin | Pro Build | undated | Accusing Resolute of unsustainable operations in the Canadian Boreal Forest | U.S. Mail or E-mail |

Defendants committed and participated in the above-detailed acts willfully and with knowledge of their illegality.  These predicate acts were intended to and did mislead donors, customers, and others about Plaintiffs so as to induce donations and compliance with the Defendants' demands and to extract and intimidate others, all of which objectives were obtained.

**ANSWER to 5(d)**:  There has been no criminal conviction for any of the incidents of criminal activity.

**ANSWER to 5(e)**: No civil litigation has resulted in a judgment in regard to the predicate acts.

**ANSWER to 5(f)**: The predicate acts committed by the Defendants and other enterprise members in furtherance of the scheme described above and in the Complaint have persisted beginning in at least 2012 and continuing through the present.

As described in further detail in response to Questions 5(a)-(c) above, the Greenpeace Enterprise's conduct and acts in furtherance of the fraudulent scheme included, but were not limited to the predicate RICO acts of: (i) mail fraud in violation of 18 U.S.C. § 1341; (ii) wire fraud in violation of 18 U.S.C. § 1343, as set forth in 18 U.S.C. §§ 1961(1)(B); (iii) extortion and other crimes in violation of 18 U.S.C. § 875-77, 880 and 18 U.S.C. § 1512; (iv) illegal interference with commerce in violation of 18 U.S.C. § 1951; (v) illegal monetary transactions in violation of 18 U.S.C. § 1957; (vi) and corresponding Georgia statutes criminalizing the same conduct.

Specifically, among other things, throughout the scheme period, in furtherance of and for the purpose of executing and attempting to execute the described schemes and artifices to defraud, each of the Defendants, on numerous occasions, used and caused to be used wire communications in interstate and foreign commerce and U.S. mails, by both making and causing

to be made wire communications and mailings.  These wire communications and mailings were
made, inter alia, for the purpose of: (i) preparing false and misleading reports concerning
Resolute and its customers; (ii) broadly disseminating the false and defamatory reports and other
statements through Greenpeace's website and other internet platforms, such as Twitter and
Facebook; (iii) communicating and coordinating with one another to effectuate the dissemination
of false and misleading information necessary to perpetrate the scheme to harm Resolute; (iv)
disseminating the false and misleading allegations directly to Resolute's stakeholders, customers,
trade associations, government regulators, and other critical market constituents through email,
U.S. mail, and phone; (v) misappropriating proprietary customer, sourcing, and other trade secret
information under false pretenses from Resolute and its customers; (vi) harassing Resolute's
customers with extortionate threats; (vii) soliciting fraudulent charitable donations from the
public by means of false pretenses, representations, or promises; (viii) wiring fraudulently
obtained funds to sustain the Greenpeace Enterprise's "campaign" against Resolute; and (ix)
submitting materially false and misleading tax submissions and financial information.

  Each of the predicate acts referred to above and set forth in detail in response to
Questions 5(a)-(c) was for the purpose of executing the Greenpeace Enterprise's fraudulent
scheme, and Defendants and enterprise members engaged in such acts with the specific intent of
furthering that scheme.  Each of the Defendants performed or participated in the performance of
at least two of the predicate acts.

  The Enterprise's scheme and the predicate acts in furtherance thereof constituting a
pattern of racketeering activity are described in further detail in the Complaint and in response to
Questions 2 and 5(a)-(c) above.

**ANSWER to 5(g):** The predicate acts committed by the Defendants and other enterprise members in furtherance of the scheme described above were committed for the common purpose of creating and disseminating false and misleading reports and information concerning Resolute, under the guise of protecting the environment, but in truth, for the unlawful purpose of soliciting fraudulent donations from the public at-large.

As set forth herein and in the Complaint, the conduct and actions were related to each other by virtue of: (a) common participants; (b) a common victim; and (c) the common purpose and common result of a concerted attack on Plaintiffs' business practices to fraudulently solicit and maximize donations and cause harm to Resolute's business and reputation.  The Defendants' activities were interrelated, not isolated, and involved a calculated series of repeated violations of the law in order to conceal and promote fraudulent activity.

The Greenpeace Enterprise's scheme and the related predicate acts in furtherance thereof which were committed as part of a common plan are described in further detail in the Complaint and in response to Questions 2, 3 and 5(a)-(c) above.

6. **Describe in detail the alleged enterprise for each RICO claim.  A description of the enterprise shall include the following information:**

   a) **State the name of the individuals, partnerships, corporations, associations, or other legal entities which allegedly constitute the enterprise;**

   b) **Describe the structure, purpose, function and course of conduct of the enterprise;**

   c) **State whether any defendant is an employee, officer or director of the alleged enterprise;**

   d) **State whether any defendant is associated with the alleged enterprise;**

   e) **State whether you are alleging that the defendants are individuals or entities separate from the alleged enterprise or that the defendants are the enterprise itself, or members of the enterprise; and**

21

  **f) If any defendant is alleged to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments or victims of the alleged racketeering activity.**

**ANSWER to 6(a):** The enterprise for each RICO claim alleged in the Complaint is the same. The Greenpeace Enterprise is comprised of the following individuals and entities: GPI, Greenpeace International, GP-Inc., GP-Fund, Greenpeace Canada, Daniel Brindis, Amy Moas, Matthew Daggett, Rolf Skar, Richard Brooks, Shane Moffatt, Nicholas Manville, Annie Leonard, ForestEthics, Todd Paglia, Amanda Carr and others unknown to Resolute at this time who participated in the Greenpeace Enterprise by misappropriating or helping other enterprise members misappropriate proprietary information and interfered with, or assisted other enterprise members interference with Resolute's business, including through cyber-attacks. The full extent of the Greenpeace Enterprise's scope and membership is unknown to Plaintiffs at this time. Discovery in this matter may reveal additional members of the Greenpeace Enterprise unknown to Resolute at this time or greater involvement and control in the Greenpeace Enterprise by those already known to Resolute.

  The individuals and entities set forth above formed an illegal enterprise consisting of various legally distinct but associated-in-fact environmental groups, individuals, and others who associated together and functioned as a continuing unit throughout the course of the scheme for the common purpose of carrying out the pattern of racketeering activity alleged herein and in the Complaint, including, but not limited to, using the mails and wires to defraud donors and steal proprietary information, defrauding the United State Treasury, making bribes and extortive threats, transporting and transmitting misappropriated funds and property through interstate commerce, and conspiracy to do the same. The fraud perpetrated against Resolute is part of a larger scheme in which the Greenpeace Enterprise operated to defraud numerous donors as part of a regular way of doing business.

**ANSWER to 6(b):**

The campaign against Resolute alleged herein was conducted by an illegal enterprise consisting of various legally distinct but associated-in-fact environmental groups, individuals, and others who associated together for the purpose of carrying out the pattern of racketeering activity alleged herein, including, but not limited to, using the mails and wires to defraud donors and steal proprietary information, defrauding the United States Treasury, making bribes and extortive threats, transporting and transmitting misappropriated funds and property through interstate commerce, and conspires to do the same. The Greenpeace Enterprise associated for the purpose of carrying out these racketeering acts was comprised of, among others, the following members:

**Greenpeace International** - Defendant Greenpeace International is a putative Dutch charitable foundation ("Stitching") formed under the laws of the Netherlands.  As a Dutch putative charitable foundation, Greenpeace International has no members or equity capital and is run entirely by its appointed board.  Greenpeace International serves as the international coordinating body for a network of over twenty-six legally distinct national and regional associations under the common Greenpeace name, including the Defendants GP-Inc. and GP-Fund in the United States, but which have no formal corporate structure under which anyone is a parent, subsidiary or affiliate of the other.  Rather these are distinct corporate or other legal entities from around the globe associated-in-fact by way of their common use of the Greenpeace name and their long-term and regular long-standing interrelationships and associations, shared objectives, and concerted action.  Greenpeace International, among other things, holds the Greenpeace trademark and each of these organizations pays Greenpeace International for the right to use that trademark.  These organizations also provide grants, loans, and other financial

remuneration to Greenpeace International from time to time and for specific purposes, and Greenpeace International also provides grants and disbursements back to select organizations from time to time to support its international campaigns.  As such, Greenpeace International is directly involved in the creation, management, control, and implementation of the associations' coordinated campaigns and associated fundraising.

**Greenpeace Fund, Inc.** – Defendant GP-Fund is a 501(c)(3) not-for profit foundation which falsely purports to be exclusively operated for a charitable purpose.  It has no voting members and is run exclusively by its board of directors.  GP-Fund collects 501(3)(c) tax exempt donations throughout the United States, including in Georgia, and distributes those monies to Greenpeace International in the Netherlands and GP-Inc. in the United States.  In 2014, GP-Fund collected approximately $14.8 million and distributed approximately $6 million of that to Greenpeace International and $5 million to GP-Inc. in the United States.  The rest of the revenue was consumed by salaries and fundraising expenses.  Although GP-Fund and GP-Inc. are identified by the Greenpeace association as Greenpeace USA, they are separate and distinct legal entities with no corporate relationship to each other in the form of parent, subsidiary or affiliate.  Indeed, their separate tax-status so requires.  Like Greenpeace International does throughout the Greenpeace associations, GP-Fund is intimately involved in planning, approval, direction, and monitoring of the GP-Inc. campaigns and activities that it funds and from which it fundraises.

**Greenpeace, Inc. -** Defendant GP-Inc. is a nonprofit corporation organized pursuant to the laws of California and headquartered in Washington D.C., and is licensed to do business and raises donations in many states throughout the United States, including Georgia.  It is registered for tax-exempt status as a Section 501(c)(4) "social welfare" organization with the Internal Revenue Service, and falsely purports to be operated "exclusively to promote social welfare" and

24

describes its social welfare mission as "promot[ing] the protection and preservation of the environment."  Funded by direct donations as well as grants and loans from Greenpeace International and GP-Fund, GP-Inc. receives substantial direction, control, and monitoring from Greenpeace International and GP-Fund.  It also coordinates closely with other entities in the Greenpeace association, including particularly Greenpeace Canada in executing the Greenpeace Enterprise's campaign directed at Resolute set forth below.

**Greenpeace Canada** – Greenpeace Canada is a federally incorporated company with its head offices in Toronto, Ontario and is the Canadian presence of the Greenpeace associations.  It works closely with Greenpeace International and GP-Inc. in executing the Greenpeace Enterprise's campaign directed at Resolute set forth below.

**Matthew Daggett** – Defendant Matthew Daggett is the Greenpeace International Global Campaign Leader for Forests with responsibility for Greenpeace International coordination and support for the campaign alleged herein.  Defendant Daggett coordinates closely the activities of the various organizations and individuals engaged in the Greenpeace Enterprise's campaign directed at Resolute alleged herein.

**Daniel Brindis** – Defendant Daniel Brindis is a Senior Forest Campaigner for GP-Inc. with responsibility for GP-Inc.'s participation in the Greenpeace Enterprise's campaign directed at Resolute alleged herein.

**Amy Moas** – Defendant Amy Moas is a Senior Forest Campaigner for GP-Inc. with responsibility for GP-Inc.'s participation in the campaign directed at Resolute alleged herein.

**Rolf Skar** – Defendant Rolf Skar is a Forest Campaigner for GP-Inc. with responsibility for Greenpeace, Inc.'s participation in the Greenpeace Enterprise's campaign against Resolute alleged herein.

**Richard Brooks** – Richard Brooks is a Forest Campaign Coordinator for Greenpeace Canada with responsibility for operating and managing Greenpeace Canada's coordinated role and participation in the Greenpeace Enterprise's campaign directed at Resolute alleged herein.

**Shane Moffatt** – Shane Moffatt is a Forest Campaigner for Greenpeace Canada responsible for operating and managing Greenpeace Canada's coordinated role and participation in the Greenpeace Enterprise's campaign directed at Resolute alleged herein.

**Nicolas Mainville** – Nicolas Mainville is a Forest Campaigner for Greenpeace Canada with responsibility for operating and managing Greenpeace Canada's coordinated role and participation in the Greenpeace Enterprise's campaign directed at Resolute alleged herein.

**Annie Leonard** – Annie Leonard is the Executive Director of GP-Fund and GP-Inc. with responsibility for operating and managing the coordinated role and participation of these two Defendants in the Greenpeace Enterprise's campaign directed at Resolute alleged herein.

**ForestEthics** – Defendant ForestEthics is a 501(c)(3) corporation headquartered in Washington State, which is now called STAND. A coalition of three partner organizations, US-based ForestEthics, Canadian-based ForestEthics Advocacy, and ForestEthics Solutions (collectively, "ForestEthics"), ForestEthics has strong ties to Greenpeace, upon which its organization is modeled. Indeed, ForestEthics founder, Tzeporah Berman, was the former co-director of Greenpeace International's Global Climate and Energy Program, and Karen Mahon, the director of ForestEthics Advocacy, was formerly the director of Greenpeace Canada. The two organizations have been described as "close all[ies]" and have a long history of collaborating on campaigns together, including the one directed at Resolute described herein. Like Greenpeace, ForestEthics is known for its coercive and manipulative "campaigns" which have targeted, among others, Victoria's Secret, 3M and Staples. Following Greenpeace's blueprint,

26

ForestEthics has aggressively disseminated sensational lies untethered to facts, to threaten, malign, and isolate large corporate targets and extort public concessions, endorsements, and other benefits, which it then touts to potential donors as successes to extort additional financial support.  As set forth herein, beginning in 2012, Greenpeace and ForestEthics identified Resolute as a target, and embarked on a years-long "Resolute: Forest Destroyer" campaign.  Throughout this campaign, ForestEthics participated directly and indirectly in the criminal enterprise, by among other things, echoing the falsehoods that Greenpeace was disseminating in reports, direct communications, and on Twitter; threatening Resolute's executives, its customers, and stakeholders; and engaging in other wrongful conduct.

**Todd Paglia** - Defendant Todd Paglia is the Executive Director of ForestEthics residing in Washington State and had responsibility for operating and managing ForestEthics' coordinated role and participation in the Greenpeace Enterprise's campaign directed at Resolute alleged herein.

**Amanda Carr** – Amanda Carr is a Campaign Director for the Environmental non-government organization ("ENGO"), Canopy.  Ms. Carr has operational and managerial control over Canopy's coordinated role and participation in the Greenpeace Enterprise's campaign directed at Resolute alleged herein, works in concert with the Defendants and other enterprise members to, among other things, undermine Resolute's participation in the Canadian Boreal Forest Agreement ("CBFA") and interfere with Resolute's relationships with other signatories and participants to the CBFA.

**John and Jane Does** - On a frequent and long-term basis, the Defendants and enterprise members work with third-parties currently unknown to Plaintiffs to illegally misappropriate proprietary and other confidential information from Resolute and its customers as well as targets

27

of other campaigns by impersonating other people and customers and otherwise misrepresenting themselves.  The Defendants and enterprise members have also associated with persons unknown to Plaintiffs at this time engaged in illegal cyber-attacks and intrusions on Plaintiffs and their customers.  This is part of broader enterprise practice of engaging in various illegal activities to misappropriate trade and other secrets from, or interfere with, targets of the Greenpeace Enterprise's campaigns and the customers of those targets.

Although these persons and entities are distinct and independent of each other, and free and incentivized to act in and advance their own interests independently, they have associated in fact with a common purpose, identifiable relationships, and sufficient longevity to pursue their common purpose.  Specifically, beginning from no later than 2012 through to the present they have been engaged in a mutually understood, agreed upon, and coordinated campaign of racketeering activity directed at Resolute.

The common purpose of the Greenpeace Enterprise was to target Resolute for a disinformation campaign that could be used to fraudulently induce millions of dollars in donations from individual donors and foundations that could be used to fund the enterprise members and salaries of its leaders, perpetuate more fraudulent fundraising, and expand the campaign to direct attacks on Resolute customers that would provide even more powerful fundraising opportunities.

The relationship in and among the enterprise members included Greenpeace International providing the right to use the Greenpeace name to enterprise members GP-Inc., GP-Fund, and Greenpeace Canada, funding these entities and underwriting this disinformation campaign, and providing an internet platform and website to support, facilitate, and promote the campaign.  In addition, Greenpeace International actively participated in the campaign by publishing and

republishing the campaign's disinformation on its own webpages, in direct communications in the market place, and by being directly involved in the operation, control and planning of that campaign through its Defendant and enterprise member Matthew Daggett and his coordination with enterprise members Skar, Moas, Brooks, Brindis, Moffatt, Mainville, and Leonard, all of whom were involved in the operation and control of the campaign,. In exchange for this participation, Greenpeace International used the disinformation campaign to directly and fraudulently induce donations and to secure portions of the monies that GP-Fund, GP-Inc., and Greenpeace Canada fraudulently induced from others.

GP-Fund likewise provided funding to GP-Inc. to underwrite the disinformation campaign, published and republished the disinformation on its own webpages and, along with Greenpeace International, was actively involved in the operation, control and planning of the campaign with GP-Inc., Greenpeace Canada, and other enterprise members. GP-Fund exercised its operation and control through enterprise member Annie Leonard, who is its executive director, and who directed and controlled the activities of GP-Inc. and enterprise members Daniel Brindis, Amy Moas, and Rolf Skar, who operated and controlled GP-Inc.'s enterprise related activities. GP-Fund benefited from this participation by fraudulently inducing donations to itself directly that it used to sustain its continued operations, pay the salary of Annie Leonard and others, and fund even more fundraising by itself and GP-Inc.

GP-Inc.'s relationship with the Greenpeace Enterprise included receiving funding and substantial support from both Greenpeace International and GP-Fund, including the use of the Greenpeace name and the funding necessary to pay its substantial operating expenses and salaries and fund its execution of the disinformation campaign. GP-Inc. and enterprise members Brindis, Moas, and Skar aggressively prosecuted the disinformation campaign to fraudulently

induce donations that then were used to fund GP-Inc.'s operations and enrich GP-Fund and Greenpeace International.  These enterprise members also coordinated closely, and mutually operated and controlled the disinformation campaign and broader attacks with Greenpeace Canada and enterprise members Richard Brooks, Shane Moffatt, and Nicolas Mainville, including assuming substantial responsibility for the attacks on Resolute customers funded by the disinformation campaign.  GPI-Inc. undertook these activities in consultation and coordination with Greenpeace International and GP-Fund as well as enterprise members Greenpeace Canada, ForestEthics, and Canopy.  GP-Inc. also worked closely with third-party enterprise members responsible for the theft of proprietary customer and supply trade secrets from Resolute and its customers.

Greenpeace Canada received funding from Greenpeace International and Greenpeace-Fund and worked closely with GP-Inc. in executing the disinformation campaign.  Enterprise members Brooks, Moffatt, and Mainville conducted the operation and control of these consultations and the implementation of the disinformation campaign.  Greenpeace Canada used the disinformation campaign to fraudulently induce donations and procure more financial support from Greenpeace International and GP-Fund.

ForestEthics and Canopy worked closely with GP-Inc. and Greenpeace Canada in both the dissemination of disinformation and the subsequent aggressive attacks on Resolute's customers and did so to participate in the opportunity to induce donations based on the fraudulent disinformation that would perpetuate these organizations and pay the salaries of its owners and leaders, including ForestEthics leader Todd Paglia and Canopy leader Amanda Carr.

For approximately four years this group and the others comprising the Greenpeace Enterprise have been pursuing the Greenpeace Enterprise's purposes and they continue to do so today.

The structure, purpose, roles, function, and course of conduct of the enterprise are further described in the Complaint and in response to Questions 2, 3 and 5(a)-(c) above.

**ANSWER to 6(c):**  None of the Defendants named in the Complaint are employees, officers, or directors of the Greenpeace Enterprise.  The Greenpeace Enterprise consists of various legally distinct but associated-in-fact environmental groups, as well as individuals, some of whom are employees of a single other enterprise member but not the others and none are employees of the Greenpeace Enterprise.

**ANSWER to 6(d)-(f):**  Defendants Greenpeace International, GP-Inc., GP-Fund, Daniel Brindis, Amy Moas, Matthew Daggett, Rolf Skar, ForestEthics and Todd Paglia are all "associated with" the enterprise.  Other alleged members of the enterprise are not defendants.

The Complaint alleges that the Defendants are separate from the Greenpeace Enterprise itself, they are not the enterprise itself, but are members of the enterprise as alleged.

Defendants Greenpeace International, GP-Inc., GP-Fund, Daniel Brindis, Amy Moas, Matthew Daggett, Rolf Skar, ForestEthics and Todd Paglia are all perpetrators of the criminal activity that harmed Resolute.

7. **State and describe in detail whether you are alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.**

**ANSWER to 7:**  The Greenpeace Enterprise and alleged pattern of racketeering activity are separate although the alleged pattern of racketeering activity is alleged to also support the enterprise alleged.  As set forth in detail in response to Question 6, the Greenpeace Enterprise consists of multiple legally distinct entities and persons who nevertheless have identifiable

31

structures, relationships, and common purposes and concerted action that is independent of the alleged pattern of racketeering acts.

**8. Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity.  Discuss how, if at all, the racketeering activity differs from the usual and daily activities of the enterprise.**

<u>**ANSWER to 8**</u>:  The Greenpeace Enterprise is comprised of distinct legal entities and persons who are associated-in-fact by certain common purposes and a web a relationships of different types to and among each other.  The common purposes of the entities and those relationships are not dependent on nor do they arise from the pattern of racketeering activity. However, the Complaint does allege that the Greenpeace Enterprise pursues one of its purposes through a pattern of racketeering activity, and then uses the proceeds from that illicit activity to fund themselves and the Greenpeace Enterprise and further the Greenpeace Enterprise's efforts beyond the scheme to defraud and harm Plaintiffs.  Some of those efforts to harm Plaintiffs are not themselves racketeering acts and thus the Greenpeace Enterprise and its racketeering acts are not coterminous although the use of proceeds from racketeering acts to fund those activities is a separate RICO violation.

**9. Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.**

<u>**ANSWER to 9**</u>: The Defendants and other members of the Greenpeace Enterprise received significant economic benefits from their respective roles in the criminal activity and overall fraudulent scheme.  For years, the Defendants have fraudulently induced people throughout the United States and the world to donate millions of dollars based on materially false and misleading claims about its purported environmental purpose and its "campaigns" against targeted companies, enriching the entity Defendants, perpetuating their existence and providing for additional fundraising, and paying the salaries of the individual defendants.

**10. Describe the effect of the activities of the enterprise on interstate or foreign commerce.**

**ANSWER to 10:** As detailed herein and in the Complaint, the Greenpeace Enterprise has had a substantial impact on both interstate and foreign commerce.

First, it has fraudulently induced millions of dollars in donations in the United States and around the world based on the scheme alleged in the Complaint alone.

Second, Resolute is engaged in the forest products industry, planting and harvesting trees, milling wood and wood fiber to create a diverse range of products, including market pulp, wood products, newsprint, tissue, and specialty papers as well as power generation in Canada and the United States. The Company owns or operates over forty pulp, paper, tissue and wood products facilities in the United States, Canada and South Korea, and operates mills in both Canada and the United States, including in West Virginia, Georgia, Tennessee, Alabama, Mississippi, Florida, Washington State, South Carolina, and Michigan. Resolute employs approximately 8,000 people worldwide, and, in recent years, has annual sales in the range of $3 billion. Resolute is the largest producer of newsprint in the world and in North America, the biggest volume producer of wood products east of the Rockies, the third largest market pulp producer in North America, and the largest in North America producing uncoated mechanical papers.

Without limitation, the Greenpeace Enterprise has directly targeted and either impaired or caused the termination of multiple contractual and other customer relationships in the United States, Canada and Europe, including, but not limited to, those set forth herein such as 3M, Axel Springer, Best Buy, Georgia Pacific, Kimberly Clark, Proctor & Gamble, Union Bank, Burrows Paper Corporation, and UPM. The Greenpeace Enterprise has also caused Resolute to lose significant market share in the various markets in which Resolute operates around the globe.

Indeed, in January 2016, Greenpeace published a putative briefing for investors admitting, indeed trumpeting, that the issues it had raised during the "Resolute: Forest Destroyer" campaign "are contributing to a loss of market share, loss of social license to operate in the Boreal Forest, reputational damage, and increased costs" and estimate the impact of that interstate loss to be no less than "C$100 million."

**11. If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information:**

    **a) State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and**

    **b) Describe the use or investment of such income.**

**ANSWER to 11(a)**: In furtherance of the illegal Greenpeace Enterprise, Defendants committed the predicate racketeering acts as detailed in response to Questions 5(a)-(c) above and as alleged in the Complaint for the purpose of creating and disseminating false and misleading reports and information concerning Resolute, under the guise of protecting the environment, but in truth, for the unlawful purpose of soliciting fraudulent donations from the public at-large.

Greenpeace International, GP-Fund, GP-Inc., Greenpeace Canada, and ForestEthics each used this materially false and misleading information to fraudulently induce donations which were derived from the pattern of racketeering activity described in detail in the Complaint and above.  GP-Fund, GP-Inc., and Greenpeace Canada also provided some portions of their donations to Greenpeace International in the form of grants, loans, and a license to continue using the Greenpeace name.  By way of example, in 2014, GP-Fund collected approximately $14.8 million and distributed approximately $6 million of that to Greenpeace International and $5 million to GP-Inc, in the United States.  Also in 2014, ForestEthics' reported receiving more

than $3 million in contributions much of it based on its participation in the campaign against Resolute.

**ANSWER to 11(b)**: Iin conducting the affairs of the Greenpeace Enterprise, Defendants used and invested income that was derived from the pattern of racketeering activity, directly or indirectly, to continue to perpetuate themselves, prosecute the ongoing campaign against Plaintiffs so as to keep raising money, and to conduct other direct actions against Resolute including misappropriating its proprietary customer information and interfering with operations of the Resolute in tortious and non-tortious ways in violation of 18 U.S.C. § 1962(a). Specifically, the Defendants used funds they fraudulently procured through the alleged pattern of predicate acts to: (a) fund the Greenpeace Enterprise; (b) fund the dissemination of materially false and fraudulent information used to induce donors to make contributions to the Greenpeace Enterprise and individual enterprise members; and (c) fund the expanded attack on Resolute and its relationships with customers, partners and other critical business constituents as alleged in this Complaint, including but not limited to the use of illicit funds from fraudulently induced donations to fund the direct actions against Resolute customers that caused the loss of those customers and market share in an amount the Greenpeace Enterprise has estimated to be not less than C$100 million, to fund direct and indirect actions directed at Resolute's relationship with FSC and the auditors responsible for evaluating compliance with FSC certification standards, and to fund the fraudulent misappropriation of proprietary customer, sourcing and other trade secret information from Resolute and its customers, which it then used to target these customers.

**12.  If the complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.**

**ANSWER to 12:** The complaint does not allege a violation of 18 U.S.C. § 1962(b).

13. **If the complaint alleges a violation of 18 U.S.C. § 1962(c), provide the following information:**

   a)  **State who is employed by or associated with the enterprise; and**

   b)  **State whether the same entity is both the liable "person" and the "enterprise" under § 1962(c).**

<u>**ANSWER to 13(a)**</u>:  Defendants Greenpeace International, GP, GP-Fund, Daniel Brindis, Amy Moas, Matthew Daggett, Rolf Skar, ForestEthics and Todd Paglia are all "associated with" the enterprise, as are non-defendants Greenpeace Canada, Richard Brooks, Shane Moffat, Nicolas Mainville, Annie Leonard, and Amanda Carr.  None of these persons or entities is an officer, director, or employee of the Greenpeace Enterprise but some are employed by one or another enterprise members.

<u>**ANSWER to 13(b)**</u>: Each of the "persons" charged with a violation of § 1962(c) in the Complaint is distinct from the "enterprise" whose affairs they are charged with conducting or participating in the conduct of.

14. **If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy.**

<u>**ANSWER to 14**</u>:  As detailed in the Complaint and further described in response to Questions 2, 3 and 5 above, each of the Defendants, in association with the other enterprise members, willfully, knowingly and unlawfully conspired to, and did further the efforts of the Greenpeace Enterprise to perpetrate the above-described scheme against Resolute through a pattern of racketeering activity in violation of 18 U.S.C. §§ 1962(c) and 1962(a).

   In furtherance of the conspiracy, each of the Defendants agreed that the following predicate acts, among others, would be committed by one or more members of the conspiracy: (i) mail fraud in violation of 18 U.S.C. § 1341; (ii) wire fraud in violation of 18 U.S.C. § 1343; (iii) extortion and other crimes in violation of 18 U.S.C. § 875-77, 880 and 18 U.S.C. § 1512; (iv)

illegal interference with commerce in violation of 18 U.S.C. § 1951; (v) illegal monetary

transactions in violation of 18 U.S.C. § 1957; (vi) and corresponding Georgia statutes

criminalizing the same conduct, and which constitute a pattern of racketeering activity pursuant

to 18 U.S.C. § 1961(5).

Specifically, the following predicate acts were performed at the direction of, and/or were

foreseeable to, the Defendants, for the purpose of executing the scheme to solicit fraudulent

donations and harm Resolute's business: (i) preparing false and misleading reports concerning

Resolute and its customers; (ii) broadly disseminating the false and defamatory reports and other

statements through Greenpeace's website and other internet platforms, such as Twitter and

Facebook; (iii) communicating and coordinating with one another to effectuate the dissemination

of false and misleading information necessary to perpetrate the scheme to harm Resolute; (iv)

disseminating the false and misleading allegations directly to Resolute's stakeholders, customers,

trade associations, government regulators, and other critical market constituents through email,

U.S. mail, and phone; (v) misappropriating proprietary customer, sourcing, and other trade secret

information under false pretenses from Resolute and its customers; (vi) harassing Resolute's

customers with extortionate threats; (vii) soliciting fraudulent charitable donations from the

public by means of false pretenses, representations, or promises; (viii) wiring fraudulently

obtained funds to sustain the Greenpeace Enterprise's "campaign" against Resolute; and (ix)

submitting materially false and misleading tax submissions and financial information. These

Greenpeace Enterprise's predicate acts in furtherance of the unlawful conspiracy are detailed in

response to Question 5(c) above.

It was specifically intended and foreseen by Defendants that the Greenpeace Enterprise

would engage in, and conduct activities which affected interstate commerce.  Each Defendant

was aware of the various racketeering schemes, assented to the efforts of the Greenpeace Enterprise to carry out these acts, and acted in furtherance of the conspiracy.

The pattern of racketeering consisted of multiple acts of racketeering by each of the Defendants.  The activities of these Defendants were interrelated, not isolated, and were perpetrated for the same or similar purposes by the same persons.  These activities extended for several years, and continued up to the commencement of this action.  The Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962(c) and 1962(a), in violation of 18 U.S.C. § 1962(d).

**15. Describe the alleged injury to business or property.**

**ANSWER to 15**: Plaintiffs' damages include, but are not limited to: (i) lost revenue, profits and enterprise value, including lost business opportunities, lost customers, lost market share and decreased production; (ii) increased fees and expenses, as well as the expenditure of significant human resources, incurred and devoted to uncovering the nature and scope of, and attempting to remedy, Defendants' illegal enterprise and the harm directly resulting therefrom; (iii) misappropriated proprietary information; and (iv) damaged reputation in the global marketplace, business and environmental communities.

**16. Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.**

**ANSWER to 16**: The causal relationship between the alleged injuries suffered by Resolute and the RICO violations is clear, direct and proximate.  First, the scheme to fraudulently induce donations was based entirely on extremely false, defamatory, and damaging lies about Resolute that alone damaged its reputation and business.  Second, the Greenpeace Enterprise used the illicit proceeds from that racketeering activity to fund additional fundraising based on the same defamation but also to fund direct actions against Resolute and its customer

38

relationships.  Third, attempting to mitigate both of the previous two categories required the expenditure of time, money and resources.

**17. List the damages sustained for which each defendant is allegedly liable.**

**ANSWER to 17**:  It is currently not possibly to quantify the damages sought because the full extent of the campaign against Resolute is still unknown.  However, in January 2016, Greenpeace published a putative briefing for investors admitting, indeed trumpeting, that the issues it had raised during the "Resolute: Forest Destroyer" campaign "are contributing to a loss of market share, loss of social license to operate in the Boreal Forest, reputational damage, and increased costs" and estimate that loss at not less than "$C100 million."

**18. List all other federal causes of action, if any, and provide the relevant statute numbers.**

**ANSWER to 18**: The Complaint does not allege any other federal causes of action.

**19. List all pendent state claims, if any.**

**ANSWER to 19**: In addition to violations of 18 U.S.C. §§ 1962(a), (c) and (d), the Complaint also alleges violations of Georgia's RICO statute, O.C.G.A §§ 16-14-4 (b) and (c), violations of Georgia's Trademark and Dilution Statute, O.C.G.A § 10-1-451(b), and common law claims of defamation, tortious intereference with prospective business relations, tortious interference with contractual relations and civil conspiracy.

**20. Provide any additional information that you feel would be helpful to the Court in processing your RICO claim.**

**ANSWER to 20**:  All necessary information is contained in this form the pending complaint.

Dated:    Augusta, Georgia
           May 31, 2016


                                           HULL BARRET, PC


                                           By:     /s/ James B. Ellington
                                                   **James B. Ellington**
                                                   Ga. Bar No. 243858
                                                 (JEllington@hullbarrett.com)


                                                 P.O. Box 1564
                                               Augusta, Georgia 30901
                                               Tel: (706) 722-4481


                               Of Counsel (Pro Hac Applications To Be
                               Submitted)

                               KASOWITZ, BENSON, TORRES
                                  & FRIEDMAN LLP

                               1633 Broadway
                               New York, New York 10019
                               Tel: (212) 506-1700

                               **Michael J. Bowe**
                               (mbowe@kasowitz.com)

                               **Lauren Tabaksblat**
                               (ltabaksblat@kasowitz.com)

                               *Attorney for Plaintiffs*