IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| RESOLUTE FOREST PRODUCTS, INC., RESOLUTE FP US, INC, RESOLUTE FP AUGUSTA, LLC, FIBREK GENERAL PARTNERSHIP, FIBREK U.S., INC., FIBREK INTERNATIONAL INC., and RESOLUTE FP CANADA, INC., | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 1:16-cv-00071-JRH-BKE |
| GREENPEACE INTERNATIONAL (aka "GREENPEACE STICHTING COUNCIL"), GREENPEACE, INC., GREENPEACE FUND, INC., FORESTETHICS, DANIEL BRINDIS, AMY MOAS, MATTHEW DAGGETT, ROLF SKAR, TODD PAGLIA, and JOHN AND JANE DOES 1-20, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

BRIEF OF DEFENDANT GREENPEACE FUND, INC.
IN SUPPORT OF MOTION TO DISMISS

Greenpeace Fund, Inc. ("GP-Fund") brings this motion pursuant to Rule 12(b)(6) to

dismiss in its entirety the Complaint of Resolute Forest Products, Inc., Resolute FD US, Inc.,

Resolute FP Augusta, LLC ("Resolute Augusta"), Fibrek General Partnership, Fibrek U.S., Inc.,

Fibrek International, Inc., and Resolute FP Canada, Inc. (collectively "RFP").  The complaint

herein is an attempt by Plaintiffs to suppress First Amendment-protected, political speech arising

out of a public and long-running controversy over logging in Canada.

The complaint, supposedly a "short and plain" statement of Plaintiffs' claims (Rule 8, Federal Rules of Civil Procedure), consists of 318 numbered paragraphs and a large apparatus of supposedly supporting information, much of which is at best the pleading of evidence and at worst mere political posturing. It purports to state 11 claims against various parties, including GP-Fund: three allegedly arising under the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Sections 1961-1968 ("federal RICO") and eight under Georgia statutory and common law. Notwithstanding the vast tracts of rhetoric through which the reader must find his way, Plaintiffs' allegations do not state a claim against GP-Fund under any of their theories. In particular, Plaintiffs' three alleged federal RICO claims, upon which jurisdiction over all their state law claims depends, do not state claims under the federal RICO law against GP-Fund.

The gravamen of Plaintiffs' complaint is simply defamation: Plaintiffs claim that various Defendants have made a large number of statements about various Plaintiffs which Plaintiffs contend are untrue and damaging to Plaintiffs. Plaintiffs are attempting to convert these defamation claims, the great majority of which are barred by Georgia's one year statute of limitations for defamation, into predicate acts for federal RICO, by claiming that GP-Fund has defrauded its own donors while using mails or wires. Plaintiffs' attempt, if successful, would be an unprecedented expansion of federal RICO. By freeing Plaintiffs from the constitutional and common law restraints of defamation law, it would have grave implications for public interest advocacy which the federal RICO law was never intended to address and cannot be tortured to support.

The Complaint lists over 304 statements that allegedly have been made by the Defendants or members of the supposed RICO enterprise. **However, across the entire 160 pages of its Complaint, Plaintiffs do not allege a single statement to have been made by GP-Fund.**

2

Judge Dudley H. Bowen, Jr., recognized the need to restrict RICO claims by requiring "plaintiffs in civil RICO cases to allege injury caused by an activity which RICO was designed to deter, which whatever it may be, is different from that caused simply by such predicate acts as are alleged here." *Doxie v. Ford Motor Credit Co*., 603 F.Supp. 624, 628 (S.D. Ga. 1984). In dismissing an overreaching plaintiff's complaint which attempted to use RICO for a common law tort, Judge Bowen quoted case law that "a civil RICO complaint must allege 'a distinct RICO injury… [an] injury caused by a RICO violation, not just one caused by some of the essential elements of a RICO violation". *Id. quoting Bankers Trust Co. v. Rhoades, 741 F.2d 511, 516 (2d Cir. July 26, 1984).* Judge Bowen continued that his "order should make clear… that [he has] concluded that Congress did not intend to federalize every tort or breach of contract in business transactions involving the use of mails". *Id*.

Plaintiffs in this action are doing just that. They are attempting to federalize common law defamation claims against Defendants simply because these alleged defamatory statements involved the use of mail or wire. More importantly on this motion, if Plaintiffs could be deemed to state a claim for RICO, defamation or *any* of their claims based on alleged defamatory or fraudulent statements against a party that did not *make* any of those statements, this would represent an unprecedented extension of the law.

As the complaint alleges (¶ 33), GP-Fund is a California corporation registered as a tax exempt 501(c)(3) charitable foundation with its principal office in Washington, D.C.  Plaintiffs admit in paragraph 41 of their complaint that GP-Fund is a separate and distinct legal entity from any other party.  Plaintiffs, in a weak attempt to tie GP-Fund to the allegations in the complaint, allege without any evidence or specification whatsoever that GP-Fund is intimately involved in planning, approval, direction and monitoring of the GP-Inc. campaigns and activities that it funds

3

and from which it fundraises. Furthermore, Plaintiffs claim (¶ 41), again without any evidence or citation, that GP-Fund is falsely claiming to be operated exclusively for charity via its classification as a 501(c)(3) entity.

GP-Fund moves for dismissal of the entirety of the complaint on the basis that the majority of the conduct complained of was not even allegedly committed by GP-Fund and any ties GP-Fund allegedly has to this complaint are insufficient to survive this Motion to Dismiss pursuant to F.R.C.P. 12(b)(6).  Below, we address briefly the independent reasons why this Court should dismiss GP-Fund given the failure to adequately plead *any* conduct by GP-Fund. In all other respects, GP-Fund refers the court to the Greenpeace Defendants' Motion To Dismiss Pursuant To Rule 12(B)(6) and the memoranda in support thereof, in which GP-Fund joins and incorporates herein by reference.

As demonstrated more fully in the brief in support of Co-Defendants' Brief in Support of their Motion to Dismiss, frivolous RICO and defamation cases are ripe for early consideration and dismissal due to the stigma, high cost of litigation and crippling effect on speech.  *See Williams v. Mohawk* Industries, 465 F3d 1277 (11th Cir. 2006); *Jessup v. Rush*, 271 Ga.App. 243 (2005).  GP-Fund cross references Section C(1) of Co-Defendants' brief for additional arguments and citations of authority on the applicable pleading standard.

2.  Plaintiffs have not sufficiently alleged claims against GP-Fund under federal RICO

Defendants allege three federal RICO counts against GP-Fund.  These are Count I (for violation of 18 U.S.C. Section 1962(c), pertaining to conducting an enterprise through a pattern of racketeering activity, Paragraphs 218 through 236), Count II (for violation of  Section 1962(a) pertaining to investment of income derived from a pattern of racketeering activity, Paragraphs 237-244), and Count III (for violation of 1962(d), conspiracy, Paragraphs 237 through 253).  The

allegations which are specific to these three counts do not mention GP-Fund at all, referring merely to "Defendants" or "all Defendants".   Therefore, in order to determine whether Defendants have sufficiently alleged a case against GP-Fund on any of these three theories, Plaintiffs must search the first 217 allegations of the complaint.   Doing so, GP-Fund finds only the following relevant allegations made specifically against it:

(a) that GP-Fund "donates a significant amount of funds each year" to Defendant Greenpeace, Inc., Greenpeace International and other Defendants, "some of which is earmarked for" the public relations campaign of which Plaintiffs complain (¶33, 41(a), (b), and (c), 45, 46);

(b) that GP-Fund is "intimately involved"  in the planning, approval, direction and monitoring" of that campaign (¶¶ 33, 41(b), 45);

(c) that GP-Fund "fundraises"   "from" that campaign (whatever this may mean) (¶ 41(b));

(d) that GP-Fund falsely purports to be exclusively operated for a charitable purpose (¶ 41(b));

(e) that Defendant Annie Leonard is the Executive Director of GP-Fund and of Defendant Greenpeace, Inc. "with responsibility for operating and managing the coordinated role and participation of these two defendants" in that campaign (¶¶ 41(l), 45);

(f) that Greenpeace International, another Defendant,  has provided GP-Fund with the right to use the name "Greenpeace" and funded GP-Fund (¶ 44); and

(g) that GP-Fund published "disinformation" about Resolute on its own webpages (¶ 45).

(h) that GP-Fund benefits by "fraudulently inducing donations to itself directly" (¶ 45)

5

(i) that GP-Fund "has processed millions of dollars in fraudulently induced donations over the wires in thousands of individual transactions. (¶¶ 228 and 262)

(a.) Plaintiffs have failed to plead a RICO enterprise which involves GP-Fund

In order to maintain a claim against GP-Fund specifically, Plaintiffs must establish that GP-Fund "conducted or participated, directly or indirectly, in the conduct of such enterprises affairs through the pattern of racketeering activity." 18 U.S.C. § 1962(c). When evaluating Plaintiffs' complaint and the allegations specifically against GP-Fund, it becomes clear that Plaintiffs' claims are almost exclusively based on GP-Fund's relationship to other actors, not to GP-Fund's own conduct.  Plaintiffs allege that GP-Fund is associated with the enterprise which violated RICO. According to the Supreme Court, a RICO "enterprise" can include "any union or group of individuals associated in fact." *United States v. Turkette*, 452 U.S. 576, 580, (1981). Further, "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. US*, 556 U.S. 938 (2009).  "[T]he existence of an enterprise is an element distinct from the pattern of racketeering activity and 'proof of one does not necessarily establish the other.'" *Id.* (*citing Turkette*). While it is possible to maintain a RICO violation based on a relationship with another actor, here the relationship between the actors is not in the nature or extent to warrant a RICO cause of action. The Supreme Court has held that in order to participate directly or indirectly in conduct of enterprise's affairs within the meaning of federal RICO statute, one must have some part in directing the enterprise's affairs and must maintain a formal position in the enterprise or with significant control over or within the enterprise. *Reves. v. Ernst & Young*, 507 U.S. 170 (1993). Mere association is not enough.

Plaintiffs allege in general terms that GP-Fund is "intimately" involved in the planning, approval, direction and monitoring of the campaign. (Complaint ¶¶ 33, 41(a), (b), and (c), 45 and 46). However, whatever adjectives they use to describe the purported involvement, Plaintiffs conclusory and threadbare allegations are insufficiently detailed. Indeed, they provide no detail at all. Plaintiffs do not explain how GP-Fund plans the activities or what role in the campaign GP-Fund plays, or what individuals are responsible for those activities. The 11th Circuit has held, in dismissing a RICO complaint which failed to specify each defendant's particular role in the alleged civil RICO violations, that it is not sufficient to simply lump all defendants together and that lumping multiple defendants together in such generalities is insufficient under Rule 9(b). *Burgess v. Religious Technology Center, Inc.*, 600 Fed. Appx. 657 (11th Cir 2015). Here, most of the allegations in the complaint group all Defendants together. When the complaint does separate out each Defendants actions it becomes clear that without question GP-Fund's role was insufficient to constitute a member of the alleged enterprise.

The Supreme Court has provided further guidance by holding that "[i]n order to participate, directly or indirectly, in the conduct of such enterprise's affairs, one must have some part in directing those affairs." *Reves*, 507 U.S. 170 (1993). A party will only meet the statutory requirement if they exert control over the enterprise such that they "conducted or participated in the conduct of the enterprise's affairs, not just their own affairs." *Id.* at 184-185. It is true that GP-Fund raises money, shares a name, and donates money to Greenpeace Inc. However, there is no evidence that GP-Fund participated in, directed, or had significant control over the alleged defamatory statements made against Plaintiff. In Plaintiffs' complaint none of the allegedly defamatory statements were made by GP-Fund. The 5th Circuit has held that "simply having a business relationship with or performing valuable services for an enterprise, even with knowledge

of the enterprise's illicit nature, is not enough to subject an individual to RICO liability." *See, e.g.,* *In re: Mastercard Intl. Inc.*, 132 F. Supp. 2d 468, 487 (E.D. La. 2001), *aff'd*, 313 F.3d 257 (5th Cir, 2002).

Plaintiffs state that some of the money donated to Greenpeace, Inc. is earmarked for the purpose of funding the campaign of which they complain. Even if this is so, there is no allegation that GP-Fund directs or controls how its donations are used or how any campaign is executed. Transferring money, without any role in directing the enterprise is insufficient to sustain a RICO claim. *See, e.g., In re: Mastercard Intl. Inc.*, 132 F. Supp. 2d 468, 487 (E.D. La. 2001), *aff'd*, 313 F.3d 257 (5th Cir, 2002).

Plaintiffs also allege that GP-Fund fundraises from the campaign. While it is unclear what Plaintiffs mean by this allegation, what is clear is that there are no specifics at all. No fundraising material has been referenced or attached to the complaint related to the campaign against Plaintiffs. There is no explanation how the fundraising was undertaken or what references were made to the campaign. There were no dates when the promotional material was sent out. There are no specifics on what the promotion material contained in it. Failing to allege the precise statements in advertisements or promotional material and where the material was directed has resulted in RICO claims being dismissed pursuant to F.R.C.P. 12(b)(6). *Gibson v. Spirit Airlines*, 2016 WL 4578347 (11th Cir 2016) (11th Circuit affirmed district court's dismissal of a RICO complaint which alleged false advertising when it failed to provide the specifics about the advertisement).

Plaintiffs also complain that Annie Leonard is both the director for GP-Fund and Greenpeace, Inc. and that GP-Fund was allowed to use the name "Greenpeace". Of course GP-Fund does not dispute either of these allegations. However, shared staff and permission to use a common name does not form the control and direction which is required for an enterprise to be

alleged. Plaintiffs also state with no proof or citation to authority that GP-Fund published "disinformation" about Resolute on its own webpages, but, again, no such disinformation is actually identified.

Finally, Plaintiffs complain that GP-Fund benefits by fraudulently inducing donations to itself directly. Plaintiffs do not even allege what the purported fraud was, and obviously Plaintiffs would not be the injured party subject to any fraudulent solicitation and would not be able to state a claim accordingly. *See Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1287 (11th Cir. 2006) (requiring a direct connection between the injury to plaintiff and the racketeering activity) (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459-60 (2006)); *see also Kimberlin v. National Bloggers Club,* 2015 WL 124276 (U.S.D.C. Maryland 2015) ("the direct victims of the mail fraud, wire fraud, and money laundering are the individuals who were induced into making donations. . . . these individuals may pursue their own remedies under the law.")

Alleging generally that GP-Fund was related or contributed to the enterprise is simply not enough. "The mere use of the words 'conspiracy' and 'aiding and abetting' without any more explanation of the grounds…is insufficient." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010).

### (b.) Plaintiffs Allege No Sufficient Predicate Acts by GP-Fund

None of the claimed defamatory statements in the Complaint are attributed to GP-Fund. Instead, Plaintiffs allege conclusorily that it has "processed millions of dollars in fraudulently induced donations over the wires in thousands of individual transactions…Each such transaction constitutes a predicate act." (Complaint. ¶ 228). Yet RFP has pled no information about any such transactions, or about these transactions generally; indeed, RFP has not pled any *interaction* at all with any third party, period. RFP has not alleged any facts demonstrating (a) any actual statements

made to potential donors; (b) any actual statements made while fundraising; (c) what donors have been defrauded (s); (d) which donations have been fraudulently obtained; (e) an intent by GP-Fund to defraud donors; or (f) that any donations have been used for purposes other than as promised.

For the reasons stated in the Greenpeace Defendants' Motion to Dismiss, Plaintiffs' failure to articulate any facts relating to GP-Fund's involvement in any statements or other alleged wrongdoing also means that:

- Plaintiffs have not alleged the predicate acts of mail or wire fraud against GP-Fund *See U.S. v. Takhalov*, --- F.3d---, 2016 WL 3683456 (11th Cir. 2016);;

- Plaintiffs have not alleged the predicate acts of extortion against GP-Fund. *See Sekhar v. U.S.*, 133 S.Ct. 2720 (2013);

- Plaintiffs cannot show that they have RICO standing with respect to GP-Fund;

- Plaintiffs cannot show that there is any injury to RFP in the U.S. attributable to GP-Fund (or any injury at all).

GP-Fund cross references Section c(2) and (3) of the Rico Elements section of Co-Defendants' brief for additional arguments and citations of authority regarding those issues.

3.  Plaintiffs have not sufficiently alleged claims against GP-Fund under Georgia RICO

Since all of the remaining claims are in this Court under supplemental jurisdiction, should the federal RICO claim be dismissed, all other claims should be dismissed for lack of federal question jurisdiction.  In any event the state claims should be dismissed as stated below.

Although Georgia law provides and controls the substantive elements of a claim in this Court, whether such a claim is adequately pleaded is a matter of federal law.  Therefore, the heightened pleading requirements of *Ashcroft v. Iqbal,* 490 F.3d 143 (2009) and *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544 (2007) apply to determine whether Plaintiffs have stated a claim on their Georgia RICO theories.

Plaintiffs' claim under the Georgia RICO Act should be dismissed for the same reasons that Plaintiffs' federal RICO claims should be dismissed as discussed above. Plaintiffs' claims against GP-Fund under the Georgia RICO Act, O.C.G.A. § 16-14-4(b), rests on the same allegations as its federal RICO claim. Complaint ¶¶ 254-270.

Georgia's RICO Act is largely modeled on the federal act and closely traces the federal statute. *Williams v. Regency Properties*, 672 F. Supp. 1436, 1443 (Georgia's RICO Act "contains substantially the same operative language" as the federal RICO statute.) Because plaintiffs' state and federal allegations are nearly identical and based on the same predicate acts, its state claims fail for the same reasons as their federal claims.

3. Plaintiffs have not sufficiently alleged claims against GP-Fund under Georgia common law of defamation.

Plaintiffs' purported defamation claim (Complaint, Paragraphs 279-287) alleges generally that "all Defendants" knowingly published false statements about "Resolute". "Resolute" as used in the complaint means seven Plaintiffs:  Resolute Forest Products, Inc., Resolute FP US, Inc., Resolute FP Augusta, LLC, Fibrek General Partnership, Fibrek U.S. Inc., Fibrek International, Inc. and Resolute FP Canada, Inc.  Complaint, unnumbered introductory paragraph.  Plaintiffs allege that "all Defendants" made, "among other things", six supposedly false categories of statements. Complaint, Paragraph 280.  All six statements have to do with activities in Canada. **Critically, absolutely no statements are alleged to have been made by GP-Fund.**

Furthermore, Georgia requires that an action for defamation be brought within one year from the date of the alleged defamatory communication, and thus RFP cannot rely on statements

which that fall outside the limitations period. O.C.G.A. § 9-3-33.  Nor can it rely on statements made by non-parties or parties other than GP-Fund without sufficient nexus to GP-Fund to establish an enterprise. The entirety of RFP's defamation claim is thus based on a total of 26 statements, **none of which are alleged to be made by GP-Fund.**

Furthermore the law does not allow GP-Fund to be punished for statements made by other parties, or non-parties. As set forth in more detail in the Greenpeace Defendants' Motion to Dismiss, only a party that takes a responsible part in publication of a defamatory statement can be held liable for its publication.  *Universal Comm. Systems, v. Turner Broadcasting* 168 F. App'x 893 (11th Cir. 2006) (*per curium*); *Georgia Power Co. v. Busbin*, 159 Ga. App. 416, 283 S.E.2d 647 (1981), *rev'd on other grounds*, 249 Ga. 180, 289 S.E.2d 514 (1982)..

To the extent that Plaintiffs allege that other Greenpeace entities received funding from GP-Fund to execute campaigns monetary support alone is insufficient to hold an entity liable for alleged defamation made by another. *Matson v. Dvorak*, 40 Cal. App. 4th 539, 549, 46 Cal. Rptr. 2d 880, 886–87 (1995) ("One whose only contribution to a political campaign is financial, and who is not involved in the preparation, review or publication of campaign literature, cannot be subjected to liability in a defamation action . . .").  Plaintiffs make ***no allegations*** that GP-Fund exercised the requisite oversight of the non-party Greenpeace entities to be held liable for defamation for publications made by those other entities.

Because Plaintiffs' allegations do not assert that GP-Fund was responsible for the publication of any alleged defamation by  other parties, entities, or individuals, this Court should dismiss Plaintiffs' defamation claims for failure to demonstrate a probability of prevailing against GP-Fund.

Even if GP-Fund somehow could be found to have made any of the statements of which Plaintiffs complain (which it cannot), Plaintiffs' claims are barred by the fair report privilege, or opinion and rhetorical hyperbole, all protected by the First Amendment.  *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990);   *Blatty v. New York Times Co.*, 42 Cal. 3d 1033 (1986).

As fully set forth in the Greenpeace Defendants' Memorandum in Support of their Motion to Dismiss, GP-Fund asserts: (1) Plaintiffs' claims implicate the First Amendment; (2) all of RFP's claims are based on protected speech; and (3) Plaintiffs fail to state claim for Defamation.  GP-Fund cross references section C(2) of Co-Defendants' brief for additional arguments and citations on these issues.

4.  Plaintiffs have not sufficiently alleged claims against GP-Fund under Georgia common law of tortious interference

Under Georgia law, the elements of both tortious interference with contract and tortious interference with business relations are

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligation or caused a party or third party to discontinue or fail to enter into an anticipated business relationship with plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.
> *Culpepper v. Thompson*, 562 S.E.2d 837, 840 (Ga. Ct. App. 2002)

RFP cannot re-plead defamation as interference and avoid dismissal of its claims, if the supposed "improper" act of interference is simply the same alleged false statements, with nothing more. *See Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013) (dismissing tortious interference claim based on same facts as defamation claim).

13

The first requirement is that there be an improper action or wrongful conduct. *Chaney v. Harrison & Lynam*, 708 S.E.2d 672 (Ga. Ct.App. 2011). In the underlying action the only wrongful conduct which has even been alleged against GP-Fund is defamation, based exclusively on statements made by co-defendants and on the alleged connection between co-defendants and GP-Fund. Necessarily, if Plaintiff's defamation claim is dismissed then there is no improper action or wrongful conduct to sustain its tortious interference cause of action. *Monge v. Madison County Record*, 802 F. Supp.2d 1327 (N.D.GA. 2011).

In its complaint Plaintiffs generally allege that all Defendants interfered with Plaintiffs' prospective business relationships with  third party customers. (Complaint ¶ 291) However, after reviewing the entire complaint, there are very few specific allegations related to GP-Fund's alleged role. GP-Fund is never specifically alleged to have made any contact with any of Plaintiffs' customers. It is, again, GP-Fund's supposed relationship with other co-Defendants who allegedly made tortious statements that attempt to implicate GP-Fund. There is simply no wrongful conduct which Plaintiffs even allege was committed by GP-Fund alone.

Tortious interference also requires malicious intent. *Renden v. Liberty Real Estate*, 213 Ga.App. 333 ( 1994). Here, Plaintiffs have alleged in conclusory and general terms that Defendants have acted with malice. In the wake of *Iqbal* and *Twombly*, a plaintiff cannot state a claim simply by making conclusory assertions of the elements of actual malice, which is all Plaintiffs' Complaint does.  Indeed, federal courts in Georgia and across the country now routinely dismiss defamation cases for failure to state a claim where, as here, the plaintiff fails to plead allegations to make actual malice plausible.

Plaintiff must also allege that defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship

with plaintiff. *Walker v. Gowen Stores*, LLC, 322 Ga.App. 376 (2013). Again, Plaintiffs do not allege that GP-Fund ever made any contact with any of its customers. Plaintiffs' general allegation that "Defendants" contacted various businesses who had contracts with Plaintiffs is simply not enough to survive this motion.

Finally, Plaintiffs must allege damages which were proximately caused by Defendant's conduct. Here, there is no proximate cause because the only alleged wrongful conduct against GP-Fund was to encourage and support the other co-Defendants' alleged defamation. Here, that is insufficient to state a claim for tortious interference.

Plaintiff's complaint fails to allege any wrongful conduct that satisfies Georgia law and the *Iqbal* and *Twombly* heightened pleading standard. Even if GP-Fund did provide and assist others in any alleged wrongful conduct, this would simply be insufficient to state a claim for tortious interference.

5.  Plaintiffs have not sufficiently alleged claims against GP-Fund under Georgia common law of conspiracy.

Plaintiffs attempt to hold their few and sparse allegations directly against GP-Fund together by alleging generally a general conspiracy to commit all the unlawful acts contained in counts VI through VIII. (Complaint ¶ 306). Specifically, Plaintiffs complain that the publication of false statements on the Internet, the publication of false statements on social media platforms, and the dissemination of allegations to Plaintiffs' constituents form the basis of their conspiracy allegation.

In Georgia a conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means. *Mustaqeem-Graydon v. SunTrust Bank*, 258 Ga.App. 200, (2002).  In essence, a plaintiff seeking damages for conspiracy must show that two or more persons, acting in concert, engaged in conduct that amounts to a tort. *Id.* Here, Plaintiffs

have alleged federal and state RICO claims, defamation claims, tortious interference with contractual and business relations, and trademark dilution. Because each of these claims relies on alleged defamatory statements made against Plaintiffs, if the court dismisses the defamation count then it must dismiss the conspiracy count as well. Without an underlying tort, there is no liability for civil conspiracy. *Id.*

6.  Plaintiffs have not sufficiently alleged claims against GP-Fund under Georgia law of trademark dilution

Plaintiff claims that using the term "Resolute: Forest Destroyer" is a dilution of its trade name, but on its face it is a mere nominative use of the existing mark, RESOLUTE FOREST PRODUCTS.  The First Amendment guarantees parties the right to use another party's trademarks in this manner.   "Resolute Forest Destroyer" formulation is protected noncommercial criticism/commentary. *See Stop the Olympic Prison v. United States Olympic Committee*, 489 F.Supp. 1112, 1123 (S.D.N.Y.1980); *LL Bean, Inc. v. Drake Publishers, Inc.*, 811 F. 2d 26 (1st Cir. 1987); *Girl Scouts of USA v. Personality Posters Manufacturing Co.*, 304 F.Supp. 1228, 1233 (S.D.N.Y.1969).

The sole basis alleged for Plaintiffs' Count X (Complaint, paragraphs 310 through 316) is O.C.G.A. § 10-1-451(b), which provides for injunction against actions which would be likely to injure the business reputation. However, there are no separate or specific allegations against GP-Fund contained in this section of the complaint. Defendants are grouped together and institute general allegations against all Defendants.

The complaint does not allege Plaintiffs' registration or ownership of any trademark, that the alleged mark is distinctive, any use by Defendants of the complained-of term in a trademark

sense (as opposed to within the body of communications), or any factual averments of tarnishment other than conclusory ones. (Complaint ¶¶ 210-16).

Furthermore it seems ridiculous that Plaintiffs could complain about its name being associated with the term forest destroyer. There is simply no other way that Defendants could criticize Plaintiffs other than using their name. The First Amendment guarantees the right to use another party's trademarks—especially a parodical version, like this one—for noncommercial criticism and commentary. *See LL Bean, Inc. v. Drake Publishers, Inc.*, 811 F. 2d 26 (1st Cir. 1987) (if federal dilution law allowed "a trademark owner to enjoin the use of his mark in a noncommercial context found to be negative or offensive, then a corporation could shield itself from criticism by forbidding the use of its name in commentaries critical of its conduct"; "legitimate aim" of the law was "to prohibit the unauthorized use of another's trademark in order to market incompatible products or services"); *see also Stop the Olympic Prison v. United States Olympic Committee*, 489 F.Supp. 1112, 1123 (S.D.N.Y.1980); *Girl Scouts of USA v. Personality Posters Manufacturing Co.*, 304 F.Supp. 1228, 1233 (S.D.N.Y.1969); *Lamparello v. Falwell*, 420 F. 3d 309 (4th Cir. 2005); *cf. Smith v. Wal-Mart Stores, Inc.*, 537 F. Supp. 2d 1302,1316-17 (N.D. Ga. 2008).

Again, plaintiffs are attempting to trump up their defamation claims into more causes of action. If their defamation suit fails, certainly GP-Fund would be allowed to use the company's name to criticize it. Of course, there is not allegation that GP-Fund is doing anything at all to dilute plaintiff's trademark.

7.  Plaintiffs cannot recover attorneys' fees under O.C.G.A. Section 13-6-11.

Since Plaintiffs have not sufficiently alleged any substantive claims against GP-Fund under Georgia law, Plaintiffs could not,  under any set of facts comprehended within their complaint, be

liable to Defendants under O.C.G.A. Section 13-6-11.  This statute creates no claims, but instead relates entirely to damages for substantive violations of Georgia law.

8.  It would be improper and unjust to allow Plaintiffs to amend their complaint to remedy its pleading deficiencies

Plaintiffs first define the nine named Defendants as separate and distinct Defendants, and then, as the complaint goes on and on, lump the defendants together and refer to them as "Defendants", "the Greenpeace Enterprise" and "Greenpeace".  GP-Fund has addressed the sparse, specific allegations against itself and would be prejudiced if Plaintiffs were allowed to amend the complaint to attempt to keep GP-Fund in the suit.  The length of Plaintiffs' complaint alone shows that it is the product of extensive preparation and thought.  It is reasonable to assume that, if Plaintiffs could have made more specific allegations, they would have done so.  In some cases, involving unsophisticated plaintiffs or counsel, it may well be appropriate to allow plaintiffs an opportunity to cure defects in pleading.  However, in this case, with Plaintiffs as sophisticated as these, to do so would only allow Plaintiffs to continue their improper public relations campaign at Defendants' expense, without being likely to produce any meaningful cure of the defects in Plaintiffs'' already carefully considered pleadings.

9.  Conclusion

Simply put, GP-Fund did not make any of the statements complained of, it did not make any contact with Plaintiffs' customers, and it did not defraud any Plaintiff.  Merely grouping GP-Fund with all of the other Defendants does not satisfy the heightened pleading standard of RICO, nor does it satisfy the *Iqbal* and *Twombly* heightened pleading standard. Because Plaintiffs have failed to state a claim upon which relief can be granted against GP-Fund, GP-Fund should be dismissed as a Defendant in this action and from each count of the complaint.

September 8, 2016

       /s/ James S. Murray

JAMES S. MURRAY

Georgia Bar No.: 531801

WARLICK, STEBBINS, MURRAY& CHEW, LLP

Post Office Box 1495

Augusta, Georgia 30903-1495

(p) (706) 722-7543

jmurray@wsmclaw.com

## CERTIFICATE OF SERVICE

This is to certify that on this day, I electronically filed the forgoing Greenpeace Fund, Inc.'s Brief in Support of its Motion to Dismiss and have served all parties in this case using the CM/ECF System which will automatically generate an email notification of such filing to all the attorneys of record listed with the Clerk of Court.

This 8th day of September, 2016

        /s/ James S. Murray
JAMES S. MURRAY
Georgia Bar No.: 531801