# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| RESOLUTE FOREST PRODUCTS, INC., *et al.*,   ) | |
|               ) | |
|       Plaintiffs,      ) | CIVIL ACTION FILE |
|               ) | NO. CV116-071 |
|     v.            ) | |
|               ) | |
| GREENPEACE INTERNATIONAL, *et al.*,  ) | |
|               ) | |
|       Defendants.   ) | |
|               ) | |

## GREENPEACE DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) AND MEMORANDUM IN SUPPORT

Defendants Greenpeace International ("GPI"), Greenpeace, Inc. ("GP Inc."), Daniel Brindis, Amy Moas, Matthew Daggett, and Rolf Skar (collectively, the "Greenpeace Defendants") bring this motion under Rule 12(b)(6) to dismiss in its entirety and with prejudice the Complaint of Resolute Forest Products, Inc. ("Resolute FP"), Resolute FP US, Inc., Resolute FP Augusta, LLC ("Resolute Augusta"), Fibrek General Partnership, Fibrek U.S., Inc., Fibrek International Inc., and Resolute FP Canada, Inc. (collectively, "RFP"). Concurrently, by separate motion, the Greenpeace Defendants move to strike the Complaint pursuant to the Georgia anti-SLAPP statute, O.C.G.A. § 9-11-11.1.

## <u>INTRODUCTION</u>

This case represents an extraordinary attempt by the largest logging company in Canada to cut down legitimate, First Amendment-protected speech by non-profit environmental groups daring to criticize that company's activities. RFP's lawsuit is nothing less than a scorched-earth assault on the very nature of advocacy organizations in this country, and constitutes an unprecedented attempt to co-opt the anti-racketeering laws to silence critical speech on issues of public concern.

RFP's 160-page Complaint consists of no more than meritless and mostly time-barred defamation claims – camouflaged as causes of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO") – intended to curtail Defendants' public speech on environmental

issues. Rather than respond constructively to growing demands for the company to change its unsustainable practices, RFP has lashed out in anger at the fact that these practices have been revealed to the public in the first place.

As the Supreme Court has stated, "[s]peech does not lose its protected character . . . simply because it may embarrass others or coerce them into action." *NAACP v. Claiborne Hardware Co.*, 458 US 886, 910 (1982). In *New York Times Co. v. Sullivan*, the Court reaffirmed the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks." 376 U.S. 254, 270 (1964). Freedom to challenge established institutions by criticizing their activities is enshrined in the long tradition of advocacy groups in this country, from abolitionist organizations, to the labor movement, to supporters of universal suffrage, to the civil rights movement, to anti-abortion protesters, and – since at least the late 1800s – environmental protection groups. Advocacy groups also have long been subject to attack under the guise of law by those who disagree with their positions, and the First Amendment has provided protection from such attacks.

Greenpeace prides itself on advocacy campaigns that take a hard look at large corporate and government entities whose activities have an outsized, negative impact on the environment, but also takes pride in ensuring that its advocacy is carefully documented with references to scientific studies. Among Greenpeace's many environmental and public awareness campaigns is one initiated by the national Greenpeace organization for Canada ("GP Canada") involving Montreal-based RFP. This campaign has publicly criticized RFP for demonstrating insensitivity to the long-term health of the forests in which it operates. Three years ago, RFP retaliated against GP Canada for that campaign by filing a defamation lawsuit in Ontario. *Resolute Forest Products Inc. v. Greenpeace*, DC-15-009 (Ontario Superior Court of Justice) (the "Canadian Action").

In the Canadian Action, the appellate court recently struck portions of RFP's pleadings that "specifically impugn[ed] the conduct of Greenpeace groups that are not parties to this proceeding,

conduct by those groups that is not related to Canada's boreal forests or the words published about Resolute by Greenpeace in respect to these topics," and that "span[ned] the entire global Greenpeace movement over a period of decades." *See* Declaration of Lacy H. Koonce, III, dated September 8, 2016 ("Koonce Decl.") Ex. 2, Para. 7. The court held that the allegations "expand[ed] the proceedings into an inquiry into the entire Greenpeace movement . . . ," noting:

> Greenpeace is an environmental advocacy group. Resolute seems to take issue with this characterization in some places in its reply, suggesting that Greenpeace's *raison d'etre* is to raise money and not to advocate in respect to environmental or social causes in which it believes. The pleading is a *non sequitur*. It is not inconsistent for an environmental advocacy group to seek to raise funds for its operating costs and to support its campaigns.

*Id.* (Para. 62). RFP is now trying to replicate in the U.S. what was rejected in Canada, seeking to put the entire global Greenpeace network on trial, suing different Greenpeace parties in Georgia (which has precious few ties to this dispute) than it sued in Canada and listing other Greenpeace entities and individuals as supposed conspirators, while reciting a host of purported acts by Greenpeace spanning many years that have nothing at all to do with RFP.

When stripped of invective and extraneous material, RFP's claims all come down to the same basic facts: Public statements and other communications regarding RFP's environmentally unsound practices. These statements – some 304[1] are listed in the Complaint – were made at different times (mostly time-barred), by different parties (many of whom are not defendants), in different locations (mostly outside the U.S.), on a multitude of topics. Although framed variously as RICO predicate acts, tortious interference, trademark dilution and conspiracy, upon close inspection they are no more than garden-variety defamation claims.

An astonishing 255 (84%) of the publications were made outside of the one-year statute of limitations for defamation in Georgia, but RFP tries to reanimate them into cognizable claims.

---

[1] There are 267 statements listed in the text of the Complaint or in appendices as allegedly defamatory, *see* Koonce Declaration Table A, but RFP appears to argue that every single one of those purportedly defamatory statements is also fraudulent or extortive under RICO, and lists another 37 statements in Table B under its RICO claims. *Id.*

Further, 26 of the remaining 53 statements were made by non-defendants, ***leaving only 27 purportedly defamatory statements of the original 304, or less than 9%, that are not otherwise time-barred or were actually made by the actual defendants in this Action***. Those 27 statements are in turn based on ***a grand total of 10 underlying publications***.

The alleged defamatory statements are largely protected opinion, protected by the fair report privilege, not plausibly alleged to have been made with actual malice, and substantially true. They constitute prototypical environmental advocacy on issues of public significance (*e.g.*, "[T]he health of forests around the world … is in jeopardy. The Canadian Boreal forest, for example, is one of the largest reservoirs of carbon in the world . . . [b]ut it is under threat from unsustainable logging [by] [o]ne company in particular, Resolute Forest Products." (Suppl. App. 3 (B02)). As such, this is a classic Strategic Lawsuit Against Public Participation ("SLAPP").[2] The Eleventh Circuit has recently explained that issues presented by SLAPP lawsuits

> Implicate[] significant constitutional guarantees and values of an exceptionally high order. … "speech concerning public affairs is more than self-expression; it is the essence of self-government. Accordingly, speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection. . ."

*Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1357 (11th Cir.2014) (citing U.S. Const. amend. I; *Sullivan*, 376 U.S. at 270; *Snyder v. Phelps*, 562 U.S. 443, 452 (2011)). Without question, it will serve the public interest to dismiss this case at an early stage.

RFP's effort to manufacture RICO claims here stretches that law not just far from its roots in addressing organized crime, but past its breaking point. The same statements alleged as defamatory are the only alleged predicate acts supporting RFP's RICO claims, and ***no*** court has ever held that an advocacy campaign on issues of public importance, standing alone, can be subject to liability for racketeering. The reverberations of such a decision, compounded by the threat of treble damages,

---

[2] As discussed in the Greenpeace Defendants' concurrent motion, SLAPP lawsuits long predated the enactment of specific statutes such as O.C.G.A. § 9-11-11.1, and courts routinely dismiss such suits on First Amendment grounds.

would chill speech across a wide swath of public advocacy in the U.S.

Unsurprisingly, RFP's complaint fails as a matter of pleading. Its RICO claims fail because defamation is not a "predicate act" and RFP cannot convert its claims into wire and mail fraud merely by alleging that the statements were made online, by phone or by mail, without showing actual fraud. Nor can it convert them into "extortion" without pleading a demand for a transfer of property, or proximate cause. RFP also cannot save its complaint by repackaging Greenpeace's statements as the basis for claims for trademark dilution. Greenpeace's use of the term "Resolute: Forest Destroyer" is quintessential nominative trademark use as criticism/commentary, fully protected by the First Amendment. Similarly, RFP cannot make out a claim for tortious interference based on protected speech where it has made no more than bare allegations that the Greenpeace defendants acted improperly and without privilege, for the sole purpose of injuring RFP.

In short, rather than responding constructively to the "forest destroyer" campaign and changing its unsustainable practices like many other companies, RFP continues on its destructive path, bulldozing its critics and silencing them any way it can. The Court should recognize this litigation for what it is, a groundless defamation suit over protected speech, and not permit RFP to misuse the racketeering or other laws or to avoid dismissal of its lawsuit for an abject failure to state a viable claim. Greenpeace asks the Court to dismiss the Complaint in its entirety with prejudice.

## FACTUAL BACKGROUND

### A.       GREENPEACE AND ITS ACTIVISM WITH RESPECT TO RFP

Greenpeace is a network of independent legal entities with nearly 3 million individual supporters globally. The 26 national and regional Greenpeace organizations ("NROs") pursue environmental conservation on many fronts, across many campaigns, without relying on financial

support from corporations or government. *See* Koonce Decl. Ex. 1 (GPI 2015 Annual Report).[3]

Greenpeace International, whose ambit is limited to top-line global issues and strategies and whose

governance structure is based on voting rights held by the NROs, is based in Netherlands. Koonce

Decl. Ex. 5. GPI is involved in setting the current overarching global campaign goals, which include

climate and energy, oceans, forests, sustainable agriculture and toxics, but each NRO develops its

own national campaign strategy for advancing those goals. *Id.*, Ex. 4.

Beginning around 2003, GP Canada sought to convince companies operating in Canadian

forests to practice more ecologically sustainable forestry. In 2010, RFP and GP Canada, along with

nine other ENGOs and 21 companies, signed the Canadian Boreal Forest Agreement ("CBFA").

The CBFA covered 70 million hectares and attempted to resolve longstanding conflicts between

ENGOs and forestry companies by introducing a planning process intended to lead to an increase in

protected areas and more sustainable practices. *Id.*, Ex. 7. The ENGOs suspended their market

campaigns and the companies agreed not to log in about half of the covered acreage (the remaining

range of woodland caribou, a threatened wildlife species in Canada). *Id.* In 2012, GP Canada

withdrew from the CBFA, citing lack of progress towards agreed-upon milestones. GP Canada also

cited violations by RFP regarding building of new roads in off-limits areas but later retracted those

claims, as they were found to have been caused by faulty maps.  *Id.*, Ex. 2, ¶¶ 21-26. In exchange

for a public retraction, RFP agreed not to sue GP Canada if the allegations were not republished. *Id.*

B.      THE INSTANT LAWSUIT

1.      Background and Overlap with Canadian Action

Despite its agreement not to sue, on May 23, 2013, RFP brought the Canadian Action

against GP Canada and its employees Richard Brooks and Shane Moffatt. The plaintiffs in the

Canadian Action are the same as in the instant case, except that Resolute has added here a seventh

---

[3] The Court may consider facts subject to judicial notice and documents referenced in the complaint. *See Almanza v. United Airlines, Inc.*, 2016 WL 722159, at *8 (11th Cir. Mar. 8, 2016); *Hall v. Brown*, 2013 WL 393042, at *1 n.2 (S.D. Ga. Jan. 30, 2013).

plaintiff, Resolute Augusta, to construct a tie to Georgia. The Canadian Action asserts claims for defamation and interference with economic relations, based on statements made about RFP's practices, including those made in connection with pulling out of the CBFA. *See id.*, Ex. 2. As noted, the appellate court has now stricken numerous extraneous, improper allegations covering other campaigns by GP Canada and other non-parties to the litigation over a 40-year period. *Id.*

RFP filed its Complaint in the instant Action on May 31, 2016, accompanied by significant self-generated publicity, including a press release, a website ([ResolutevGreenpeace.com](ResolutevGreenpeace.com)) soliciting the public for information, a Twitter feed ([twitter.com/RFPvGP)](twitter.com/RFPvGP), and interviews with counsel. Koonce Decl. Ex. 8.[4] The Complaint itself retreads much of the same ground as the Canadian Action, except that instead of naming GP Canada, Brooks and Moffatt as defendants, RFP calls each an "enterprise member." RFP identifies all of the alleged defamatory statements set forth in the Canadian Action, each made by GP Canada, as part of the factual underpinning for its claims (Compl. ¶¶ 73-83), and thus seeks to hold Defendants in this case liable on many of the same facts it is asserting in Canada. RFP's pleading also is rife with irrelevant matter outside the applicable statutes of limitations and beyond any reasonable reading of its claims, much of which overlaps with similar matter in RFP's Canadian pleadings that has now been stricken in that case.

### 2. The Parties and Non-Parties

Throughout the Complaint, RFP deliberately blurs the lines between the named parties, the supposed enterprise members, and parties who have not been named as defendants or as members of the alleged enterprise, and the statements or acts attributable to each. Similarly, RFP deliberately lumps differently-situated third parties together, in order to obscure causation and effect.

---

[4] Much third-party "press" about the Action derives from The Heartland Institute, a "think tank supporting skepticism about man-made climate change." Koonce Decl. Ex. 9. Individuals associated with it have extensively "reported" on the lawsuit, and its website offers articles, interviews, and a purported exposé that includes allegations restated in the Complaint. *Id.* Ex. 10. RFP tops this off by citing a notorious critic of Greenpeace who currently works with RFP, *see id.* (*Washington Times* article), and is *also* associated with the Institute, *see id.* (Patrick Moore page) to claim Greenpeace is "fraudulent and illegal." Compl. ¶ 67.

With respect to named parties, Plaintiff Resolute FP, a $3 billion company, is the parent of the other plaintiffs. On the defense side, RFP names GPI; GP Inc.; GP Fund; Daniel Brindis, Rolf Skar and Amy Moas (GP Inc. employees); Matthew Daggett (GPI employee); and another unrelated advocacy group, ForestEthics ("Stand"). In addition to the named defendants, the Complaint identifies supposed Greenpeace "enterprise" members: GP Canada; Shane Moffatt and Nicolas Mainville of GP Canada; Richard Brooks, formerly of GP Canada; Annie Leonard of Greenpeace Fund; and Amanda Carr of Canopy. (Compl. ¶ 41.) Remarkably, of the 304 purported defamatory or fraudulent statements RFP cites as the basis for its claims, at least 143 – nearly half – of those statements were made by non-party GP Canada.

RFP also cites dozens of statements by other Greenpeace entities. (Compl. ¶¶ 81-142). The identity of the authors is readily apparent or discoverable, but RFP does not name them as either defendants *or* as enterprise members, yet attempts to sweep all such communications within its legal claims, listing multiple such communications in its tables and appendices. Finally, all of RFP's claims depend, first, upon the purported impact of Defendants' speech to third parties, yet it conflates these parties, who stand in very different positions with respect to the legal claims: (a) the general public; (b) Greenpeace's donors; (c) tax authorities; (d) RFP's government regulators; (e) RFP's stakeholders; (f) trade associations; and (g) RFP's customers. (*See, e.g.,* Compl. ¶ 55).

## ARGUMENT

### A.    THE COURT SHOULD DISMISS OR TRANSFER FOR LACK OF VENUE

#### 1.    The Court Should Dismiss GPI for Lack of Jurisdiction Pursuant to Rule 12(b)(2)

Defendant GPI is organized and located in the Netherlands. (Compl. ¶ 31.) The Complaint does not allege that GPI transacts business in Georgia, and the only act by GPI that RFP even loosely alleges involved Georgia was a trip by Defendant Daggett, a GPI employee, and others to Augusta in 2015 "to communicate falsehoods" at an RFP annual meeting. (Compl. ¶ 208.) However, RFP provides no facts about these "falsehoods" – the only statements cited were made

**outside of Georgia, not by Daggett or GPI, before and after the trip**, and on their face are not

actionable. *See infra* § B(3)(b). As a foreign party, this Court's jurisdiction over GPI under RICO

depends on application of the Georgia long-arm statute, and for the reasons stated above RFP has

not come close to showing minimum contacts between GPI and Georgia. *Doe v. Unocal Corp.*, 27

F. Supp. 2d 1174, 1181-84 (C.D. Cal. 1998) (rejecting "national contacts" test). GPI must be

dismissed.

>    **2.      The Court Must Dismiss the Individual Defendants if the RICO Claim is
>              Dismissed**

This Court has the discretion to decline pendent personal jurisdiction over defendants

Daggett, Skar, Brindis and Moas with respect to RFP's state law claims, and should do because – as

discussed in the following section – those defendants have virtually no contacts with Georgia and

had no expectation of being haled into court here. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726

(1966) (justification for pendent personal jurisdiction "lies in considerations of judicial economy,

convenience and fairness to litigants"). Just as importantly, if this Court dismisses RFP's RICO

claims, as Defendants urge, the Court will no longer have *either* subject matter jurisdiction over the

state claims, as the parties are not diverse, *or* personal jurisdiction over the individual defendants,

given the absence of minimum contacts with Georgia. *Id.*

>    **3.      The Court Should Dismiss or Transfer Under 28 U.S.C. § 1406(a)**

Defendants respectfully request dismissing or transferring this action under Fed. R. Civ. P.

12(b)(3) and 28 U.S.C. § 1406(a) because venue is improper in this District.[5] RFP claims "a

substantial part of the events giving rise to Plaintiffs' claims occurred in this forum" because (1)

Defendants "utilized numerous Georgia contacts, including specifically targeting critical Resolute

customers located in Georgia, and traveling to the State to perform significant campaign furthering

---

[5] When a defendant objects to venue, plaintiff bears the burden of showing that the selected venue is proper. *Premium Nutraceuticals, LLC v. Leading Edge Marketing, Inc.*, 2016 WL 3841826, *5 (S.D. Ga. July 12, 2016).

acts"; and (2) Defendants' conduct caused "substantial effects" in this District. (Compl. ¶ 23).

Neither argument provides a basis for venue under § 1391(b)(2).

This District is not the locus of any purported injury to RFP; that locus would be Canada, where RFP is based. The sole connection between RFP and this jurisdiction is its newsprint mill in Augusta,[6] but none of the complained-of statements or acts in the Complaint are alleged to have targeted that entity. Despite RFP's efforts to tie Defendants' campaign (and the lone trip to Augusta discussed above) generally to layoffs at its Augusta mill (Compl. ¶ 50), it cites no facts for this assertion; instead, public filings by RFP confirm the layoffs actually occurred because of a downturn in the newsprint market. *See infra* §4(d). Next, RFP cannot prove that Defendants engaged in significant "campaign furthering acts" in this District, because all such acts consisted of statements by forest campaigners ***outside*** this District; indeed, over half were made by non-defendants outside the U.S.[7] RFP also cannot conflate allegations about enterprise members with actions of Defendants for venue purposes. *Vest v. Waring,* 565 F. Supp. 674, 691 (N.D. Ga. 1983).

### 4.     The Court Should Transfer Venue Under 28 U.S.C. § 1404(a)

Even if the Court does not find improper venue, it should exercise its discretion to transfer to the Northern District of California ("NDCA") "for the convenience of parties and witnesses and in the interests of justice." *Greely v. Lazer Spot, Inc.*, 2012 WL 170154, *3 (S.D. Ga. Jan. 19, 2012). First, Deference to a Plaintiff's choice of venue is not warranted where the forum is not plaintiff's home and inconvenience of the present forum to the moving party substantially outweighs inconvenience of the proposed forum to plaintiff. *Spanx, Inc. v. Times Three Clothier, LLC*, 2013 WL 5636684, at *2 (N.D. Ga Oct. 15, 2013). Here, as noted, the sole connection

---

[6] Recent Georgia business filings for Resolute Augusta list its principle office in South Carolina. Koonce Decl. Ex. 14.
[7] RFP attempts to obscure the venue question by alleging communications by non-defendant Brooks of GP Canada with companies in *other* judicial districts in Georgia: YP in Tucker, Georgia (Compl. ¶ 200), The Home Depot in Atlanta, Georgia (Compl. ¶ 201), and a Kimberly-Clark employee in Roswell, Georgia (Compl. ¶ 203) (RFP alleges additional communications with Texas-based Kimberly-Clark but does not say to whom they were made). RFP alleges that Brooks also communicated with Procter & Gamble (based in Ohio), which it says has a plant in Albany, Georgia, but does not allege the communications were with that facility. (Compl. ¶ 206.). It also claims Greenpeace "scared away" Georgia Pacific (Atlanta, Georgia), but does not identify any statements made to the company. (Compl. ¶ 207.).

between this forum and RFP is its Augusta facility, but there is no suggestion that anyone from the Augusta mill will be a witness, and RFP's main offices are in Canada.

In contrast, two named Defendants, Skar (Forest Campaign Director for GP Inc.) and Brindis, reside in the NDCA and are integral to Greenpeace's U.S. forestry campaign efforts. Declaration of Thomas W. Wetterer, dated September 8, 2016 ("Wetterer Decl.") ¶ 4. Defendant Stand is incorporated in California and maintains an office in San Francisco, and Defendant Paglia regularly travels to that office.[8] GP Inc. and GP Fund are California corporations with offices in San Francisco. Wetterer Decl. ¶ 3. The enterprise members listed in the Complaint include Annie Leonard, who works out of the Greenpeace offices in San Francisco and lives in the NDCA. *Id.* ¶ 3. Although RFP identifies a few customers in Georgia, it has not identified *any* potential nonparty witnesses in this District, and there are *many* more RFP customers noted in the Complaint that are *not* in Georgia. For witnesses who will need to travel, the NDCA presents a more convenient location as there are many direct flights into San Francisco International Airport.

Next, most of the facts here relate to a Canadian company, and advocacy concerning Canadian forests, wildlife and native populations. However, any U.S. locus is in the NDCA because that is where the key campaigners on these issues reside (with one in Nevada). Wetterer Decl. ¶ 4. Indeed, of the 304 statements alleged in the complaint, all but 27 of the 137 statements made in the U.S. were by Brindis, Skar or Moas. *See* Koonce Decl. ¶ 11 & GP Defs.' Table C. Finally, choice of law principles suggest that the applicable state law here is that of California. In a multistate defamation case, Georgia applies the "most significant relationship" test. *Adventure Outdoors, Inc. v. Bloomberg*, 519 F. Supp. 2d 1258, 1280 (N.D. Ga. 2007). While the facts giving rise to this case are disparate, the NDCA is the only forum where a plurality of parties, witnesses, and documentary evidence reside. *See Michel v. NYP Holdings, Inc.*, 2015 WL 1285309, at *3 (S.D. Fla. Mar. 4,

---

[8] *See* Motion of Stand and Paglia to Dismiss or Transfer for Lack of Venue.

2015) (applying New York law to libel claim brought by Florida resident where defendant based in New York), *aff'd in part and remanded*, 816 F.3d 686 (11th Cir. 2016).

In short, on facts such as these in defamation cases, courts in this Circuit have granted motions to change venue. *See, e.g.*, *Montgomery v. Risen*, No. 15-20782-CIV, ECF No. 247(S.D. Fla. Jan. 26, 2016) (transferring suit to D.C. where a defendant worked and witnesses were available); *Stern v. News Corp.*, 2008 WL 10712037 (S.D. Fla. Aug. 26, 2008) (transferring suit to New York where defendant was based, New York law applied, and operative facts took place there).

## B.  THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6)

For all its length, RFP's Complaint is nothing more than an assault on the Greenpeace Defendants for engaging in First Amendment protected activity. Even if the First Amendment did not wholly bar RFP's lawsuit, RFP has not pled any facts that plausibly suggest that the Greenpeace Defendants are liable under Georgia defamation law or the federal RICO statute, or any other claim.

### 1.  The Applicable Pleading Standards

Should the Court retain this case, it must evaluate RFP's claims with particular scrutiny. Courts favor early consideration and dismissal of defamation claims—especially in cases where the plaintiff is a public figure—because the cost of litigation can have a chilling effect on speech:[9]

> Forcing publishers to defend inappropriate suits through expensive discovery proceedings in all cases would constrict [First Amendment] breathing space in exactly the manner the actual malice standard was intended to prevent. The costs and efforts required to defend a lawsuit through that stage of litigation could chill free speech nearly as effectively as the absence of the actual malice standard altogether. Thus, a public figure bringing a defamation suit must plausibly plead actual malice in accordance with the requirements set forth in *Iqbal* and *Twombly*.

*Michel*, 816 F.3d at 702. The Georgia legislature has endorsed this approach by enacting an anti-SLAPP statute, as discussed in the Greenpeace Defendants' concurrent motion. This approach is

---

[9] *See Jessup v. Rush*, 609 S.E.2d 178 (Ga. App. 2005) (questions of whether party was public figure, and whether there was actual malice, are for the court and thus "particularly appropriate for [summary] resolution") (citation omitted).

buttressed by the pleading standards articulated by the U.S. Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Separately, "[a]llegations of racketeering have been described as a 'thermonuclear device.' ….The mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants. As a result, courts are charged with flushing out frivolous RICO allegations at the earliest possible stage of litigation." *Elsevier v. WHPR, Inc.*, 692 F. Supp. 2d 297 (S.D.N.Y. 2010); *see also Schmitt v. Reimer*, 2012 WL 2153800, at *5 (S.D. Ga. 2012) ("'The Rules require a heightened pleading standard for claims involving RICO and civil rights violations based on fraud.'") (citation omitted). Courts also must scrutinize whether the injury pled was proximately caused by the claimed RICO violations. *Williams v. Mohawk Indus.*, 465 F.3d 1277 (11th Cir. 2006); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006). Where, as here, RICO claims are based on alleged predicate acts of mail or wire fraud, they also are subject to the higher pleading standard in Rule 9(b), requiring parties to set forth "the who, what, when, where, and how of the alleged fraud." *See Schmitt*, 2012 WL 2153800, at *5 (dismissing RICO claims where Plaintiff failed to provide facts supporting statutory elements of mail and wire fraud).[10]

### 2. RFP's Claims Implicate the First Amendment

#### a. Advocacy is Protected Speech Under the First Amendment

Greenpeace's political advocacy criticizing RFP's forestry practices is within the core of First Amendment protection. Public reports, petitions, articles, and protests are types of speech and behavior clearly entitled to protection. This includes even "hurtful" speech. *Snyder v. Phelps*, 562 U.S. 443, 446 (2011). Such speech may, for instance, coerce or embarrass others into boycotting businesses and still retain its constitutional protection. *Thornhill v. Alabama*, 310 U.S. 88 (1940); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 910 (1982); *see also Organization for a Better*

---

[10] RFP's extraordinarily long Complaint may give the illusion of specificity, but it is strikingly devoid of key facts and runs afoul of Rule 8, which requires pleadings to contain only "a short and plain statement of the claim." *See Aaron v. Durrani*, 2014 U.S. Dist. LEXIS 32693, at *9-11 & n.3 (S.D. Ohio Mar. 13, 2014) ("Courts have repeatedly upheld the dismissal of RICO complaints . . . for failure to comply with [Rule] 8's pleading requirements") (collecting cases).

*Austin v. Keefe*, 402 U.S. 415 (1971). The First Amendment fully protects even "threats of social ostracism, vilification, and traduction." *Claiborne Hardware Co.*, 458 U.S. at 921.

RFP's claims run afoul of not just the right to free speech but also, in the context of its RICO and conspiracy claims, the right of association. There is no dispute that the non-profit entities and individuals sued here work both independently and in parallel to advocate for environmental change. "[T]here are, of course, some activities, legal if engaged in by one, yet illegal if performed in concert with others, but political expression is not one of them." *Citizens Against Rent Control/Coalition for Fair Hous. v. Berkeley*, 454 U.S. 290, 294 (1981) ("[T]he practice of persons sharing common views banding together to achieve a common end is deeply embedded in the American political process. . . . [B]y collective effort individuals can make their views known, when, individually, their voices would be faint or lost."). "Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as this Court has more than once recognized by remarking upon the close nexus between the freedoms of speech and assembly." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958). Where Greenpeace entities represent millions of supporters and work together to advance their concerns, RFP cannot use RICO laws to trample another First Amendment protection.[11]

### b. All of RFP's Claims Are Based on Protected Speech

RFP's pleadings demonstrate that each of its claims is, at its root, based on Greenpeace's speech about issues of public interest. RFP itself breaks down the purported speech into categories that include criticism of RFP because (i) it is engaged in destructive and unsustainable logging

---

[11] Given its meritless claims about tax fraud, defrauding donors, and using donations on salaries, RFP apparently would have the Court find Greenpeace, globally, an "illegal operation." (Compl. ¶ 67). This ignores longstanding Supreme Court precedent on charitable organizations. In *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 636-67 (1980), the Court rejected a municipality's effort to impose restrictions on charities that used more than a certain percentage of donations on salaries and expenses on the theory that they were a "for-profit enterprises," because "this cannot be true of those organizations that are primarily engaged in research, advocacy, or public education and that use their own paid staff to carry out these functions as well as to solicit financial support." The Court further held that restrictions on "organizations whose primary purpose is . . . to gather and disseminate information about and advocate positions on matters of public concern" were barred by the First Amendment. *Id.* Solicitations by charities are also protected by the First Amendment. *Id.* at 633 (citing *Bates v. State Bar of Arizona*, 433 U.S. 350, 363 (1977)).

activities in Canada's Boreal Forest; (ii) its activities have a negative impact on climate change, on native communities and on endangered wildlife habitat; and (iii) its activities violate relevant certification. (Compl. ¶ 280). Patently, these categories relate to issues of profound public importance.[12] *A review of all 304 statements in the Complaint demonstrates that every complained-of statement is of this type*. Although RFP tries to reframe such speech as other "acts," these allegations either are manifestly speech-based advocacy or bare conclusions insufficient to state a claim under any theory.

Nowhere is this clearer than in connection with RFP's attempt to transform Greenpeace's communications with RFP's customers or potential customers into "extortion" under RICO. Although RFP tries to imply that Greenpeace made illegal threats to force customers to choose other suppliers, a careful review of the allegations demonstrates that *in every instance* these "threats" were merely the possibility of a company being linked publicly to RFP. For instance, RFP alleges (with no specifics) that Greenpeace extorted UPM into dropping its relationship with RFP. But the allegations state only that UPM (i) was concerned about the impact on UPM's business from Greenpeace's public campaign about RFP; (ii) asked RFP to explain Greenpeace's claims about RFP practices; (iii) decided to stop sourcing products from RFP; and (iv) said it did so because it was being pressured by Greenpeace entities "who threatened that if UPM continued to source pulp from Resolute, they would target its German printers . . . ." (Compl. ¶ 155.) The Complaint then goes on to state that UPM's German printer Axel Springer "was a frequent target of the Greenpeace Enterprise's campaign" and in 2015 "informed Resolute that it had decided to cancel its most recent orders" due to the campaign. (Compl. ¶ 156.) In other words, Greenpeace, at most, told other companies that if they did business with RFP, they would be called out publicly for associating with

---

[12] *See*, *e.g.*, *Browns Mill Dev. Co. v. Denton*, 543 S.E.2d 65, 68 (Ga. App. 2000), ("alleged violations of environmental laws in the county . . . were matters of general public concern and interest"), *aff'd*, 561 S.E.2d 431 (Ga. 2002); *see also Mott v. Anheuser-Busch, Inc.*, 910 F. Supp. 868, 874 (N.D.N.Y. 1995), (corporation's "admitted violations of environmental regulations" are issues of legitimate public concern), *aff'd*, 112 F.3d 504 (2d Cir. 1996).

RFP, which Greenpeace was already publicly calling out for its poor environmental policies. There are no alleged extortive acts other than the same speech complained of in RFP's defamation claim.

Also, RFP claims that Greenpeace targeted RFP's customer Best Buy with a boycott, and hints that it was responsible for attacking Best Buy's website. (Compl. ¶ 16.) The more detailed allegations in the Complaint reveal that RFP is complaining about a report by GP Canada (Compl. ¶¶ 167-169), a blog post by defendant Moas (Compl. ¶ 170), and tweets by Brooks (Compl. ¶¶ 171, 173), all made publicly. The Complaint then veers into conspiracy theory, trying to spin the fact that a social media user claiming to be with the group Anonymous announced an attack on Best Buy's website *in response* to Brooks' tweets, into an "attack" *by* Greenpeace. (Compl. ¶¶ 171-173.) Farfetched innuendos aside, RFP's claims must stand or fall on the underlying speech.[13]

### c. RFP Cannot Recast Defamation to Avoid First Amendment

In addition to the significant First Amendment barriers to using RICO and its treble damages threat to chill speech, plaintiffs cannot evade constitutional free speech protections by *reformulating* their defamation claims as different causes of action. In *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50, 54-57 (1988), the Supreme Court held that in addition to barring Falwell's defamation claim, the First Amendment also barred his intentional infliction of emotional distress claim arising from the same publication. Constitutional protections "are not peculiar to [defamation] actions but apply to all claims whose gravamen is the alleged injurious falsehood of a statement."

---

[13] RFP also alleges without specifics that Greenpeace: "impersonated Resolute employees, its customers, and others to illegally misappropriate proprietary customer and supply chain information" (Compl. ¶¶ 15, 149); committed tax fraud (Compl. ¶ 55); "targeted" RFP's certifications with the Forest Stewardship Council ("FSC") by "seeking to improperly influence FSC's purportedly independent third-party auditors" (Compl. ¶¶ 80, 130-131, 181); and "pressured" "government regulators to implement additional regulatory requirements governing forestry practices" (Compl. ¶ 189). There are simply *no* factual allegations in the Complaint about impersonation or misappropriation. As to tax fraud, RFP's only allegations are based on an assertion that RFP does not think defendants' statements about RFP are "legitimate" and that this should invalidate Greenpeace's tax-exempt status (of course, a content-based tax consideration would be wholly unconstitutional even if the IRS were to so find – which it has not). The "improper influence" on FSC, as it turns out, consists of a publicly-filed complaint and "the "emotionalizing pressure" Greenpeace's "Forest Destroyer" campaign was designed to generate." (Compl. ¶¶ 131, 185-186.) Similarly, the "pressure" on government regulators – clearly First-Amendment protected petitioning--consisted of "a protest at the Ministry of Natural Resources in Quebec City" in 2009, far outside any statute of limitations, and an email in June 2015 from GP Canada to the mayor of the town of Cochrane in Alberta, Canada, stating concerns "about the sustainability of [Resolute's] forestry operations and their impact on the ecological health of our public forests." (Compl. ¶¶ 189-191.)

*Blatty v. New York Times Co.*, 42 Cal.3d 1033, 1042-43, 1045 (1986) (broadly applying constitutional limitations protecting free speech to different causes of action so as not to "frustrate the[] underlying purpose" of the constitutional protections).[14]

Courts thus dismiss claims based on the same underlying speech that would otherwise state a defamation claim, if the defamation claim fails. *See Douglas Asphalt Co. v. Qore, Inc.*, 2009 WL 368649, at *3-4 (S.D. Ga. Feb. 13, 2009) (defamation claim barred plaintiff's attempt to re-characterize as injurious falsehood claim) ("It is not the function of federal courts to expand state tort doctrine in novel directions absent state authority suggesting the propriety of doing so"), *aff'd*, 657 F.3d 1146, 1154 (11th Cir. 2011).[15] In this context, given the constitutional concerns, courts do not distinguish between federal and state claims if the underlying acts are protected speech; for example, courts have rejected Lanham Act claims where they merely restated defamation claims. *See Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485 (1984).

### 3. Plaintiffs Fail to Plead a Plausible Claim for Defamation

Courts routinely dismiss defamation claims at the pleading stage, before discovery, for the very deficiencies present in RFP's Complaint and identified in this motion. Under Georgia or any other applicable law, RFP's defamation claims (Count VI) fail as a matter of law.

#### a. The Applicable One-Year Statute of Limitations Requires Dismissal of 218 of the 267 the Statements at Issue

The vast majority of statements in suit on RFP's defamation claim are outside the applicable one-year statute of limitations ("SOL") – of the 267 statements noted in the complaint,[16] *only 49 are not time-barred*. O.C.G.A. § 9-3-33. Under the single publication rule, the one-year SOL runs

---

[14] *See also Films of Distinction, Inc. v. Allegro Film Prods., Inc.*, 12 F. Supp. 2d 1068, 1082 (C.D. Cal. 1998) (rejecting "'creative pleading'" to avoid "'First Amendment limitations placed on litigation against speech'") (citation omitted).

[15] *See also Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013) ("[b]ecause [plaintiffs'] defamation claim fails, so do their other tort claims based upon the same allegedly defamatory speech," dismissing tortious interference and Lanham Act claims); *Moldea v. N.Y. Times Co.*, 22 F.3d 310, 317 (D.C. Cir. 1994) ("[A] plaintiff may not use related causes of action to avoid the constitutional requisites of a defamation claim.") (*citing Cohen v. Cowles Media Co.*, 501 U.S. 663, 671 (1991)); *Idema v. Wager*, 120 F. Supp. 2d 361 (S.D.N.Y. 2000) (court rejecting state claims for conspiracy and intentional infliction of emotional distress based on the same speech).

[16] *See* Koonce Decl. ¶ 5 & GP Defs.' Table A (chart of 267 alleged defamatory statements).

from the date of the first publication. *McCandliss v. Cox Enters.*, 593 S.E.2d 856 (Ga. App. 2004) (ability to retrieve via internet does not restart limitations period), *overruled on other grounds*, *Infinite Energy, Inc. v. Pardue*, 310 Ga.App. 355 (2011). Dismissal is especially appropriate here because defamation "is a traditionally disfavored cause of action."[17]

Using the publication dates in RFP's appendices and the publications themselves, over 80% of the statements in suit must be dismissed as out-of-time. *See* Koonce Decl. ¶ 7 & GP Defs.' Tables B-1 & B-2 (sorting and indicating by color 218 statements outside applicable statute of limitations). With knowledge of the statute of limitations, RFP seeks to shield its defamation claims from dismissal by alleging RICO, but, as discussed *supra* at § B(2), that effort fails.

### b. RFP's Defamation Claim Must Be Dismissed as Against Defendants GPI, Daggett and Brindis

*None* of the statements alleged to have been published by the Greenpeace Defendants within the last year are alleged to have been made by Defendants GPI, Daggett or Brindis. *See* Koonce Decl. ¶ 9 & GP Defs.' Table D. Thus the Court must dismiss RFP's defamation claim as against those defendants. To the extent RFP attempts to allege a slander claim based on unspecified "falsehoods" by Daggett at the RFP meeting, the failure to plead *in haec verbae* – the specific statements – is fatal. *Sarver v. Jackson*, 2008 WL 4911836, at *4 (N.D. Ga. Nov. 13, 2008) ("general allegations, without identifying specific statements, are insufficient to state a claim for slander, libel or defamation), *aff'd*, 344 F. App'x 526 (11th Cir. 2009).

### c. Of the Remaining 49 Statements, only 26 Were Made by Defendants

Incredibly, 158 of the 267 *total* statements cited by RFP as defamatory statements were made by non-parties. Koonce Decl. ¶ 8 & GP Defs.' Table C. Of the 49 statements that are not

---

[17] *Jacobs v. Shaw*, 465 S.E.2d 460, 463 (Ga. App.1995) (dismissing republication claim outside statute of limitations because "courts tend to construe [libel or slander claims] by a somewhat stricter standard"); *see also Lyon v. Ashurst*, 2009 WL 3725364, at *3 (11th Cir. Nov. 9, 2009); *Glanville v. Glanville*, 21 Media L. Rep. 1407 (N.D. Ga. 1993); *McGee v. Gast*, 572 S.E.2d 398 (Ga. App. 2002); *Davis v. Emmis Publ'g Co.*, 536 S.E.2d 809 (Ga. App.2000). Under California's one-year statute of limitations, the result would be the same. Cal. Code Civ. P. 340(c); Cal. Civ. Code 3425.1-3425.5 (single publication rule).

time-barred, ***only 26 statements were made by named parties***. *Id.* ¶ 9 & GP Defs.' Table D. While RFP appears to contend that the Greenpeace Defendants may be held liable in defamation for non-party statements, under deep-rooted defamation law, only one who takes a responsible part in a publication of defamatory material may be held liable for the publication. *Universal Commc'n Sys., Inc. v. Turner Broad. Sys., Inc.*, 168 F. App'x 893 (11th Cir. 2006) (*per curiam*).

RFP does not allege that the Greenpeace Defendants participated in preparing the publications attributed in its exhibits to separate entities such as GP Canada or Greenpeace entities in the UK, Brazil, Germany, or India. RFP does not allege that the Greenpeace Defendants knew of the contents of the other Greenpeace entities' publications in advance of publication. Nor has RFP alleged, nor could it, that the Greenpeace Defendants hold any position of authority over the other non-party Greenpeace organizations. Instead, RFP alleges generally that the Greenpeace Defendants "coordinate" with GP Canada in a "disinformation campaign," not that they had any editorial authority over publications made by non-parties. Compl. ¶¶ 44-46.[18] Thus RFP makes ***no allegations*** that the Greenpeace Defendants' exercised the requisite editorial oversight of the non-party Greenpeace entities. *See Karaduman v. Newsday*, 51 N.Y.2d 531, 540-42 (1980); *Osmond v. EWAP, Inc.*, 153 Cal. App. 3d 842, 852 (1984).

In total, RFP's Complaint alleges that GP Canada, a non-party, made fully 128 of the alleged defamatory statements. The statements stem from GP Canada's extensive political campaign concerning RFP's logging activities in the Canadian Boreal forest. As discussed *supra* at 2, such statements are already the subject of a defamation suit filed by RFP in Canada. RFP's ploy to hold the Greenpeace Defendants' liable for the statements of a wholly separate entity, which are the subject of a separate on-going suit, underscores why dismissal of these alleged defamatory

---

[18] Plaintiffs allege that GP Canada received funding from GPI and GP Fund to execute their campaign, Compl. ¶ 47, but monetary support alone is insufficient to hold an entity liable for defamation made by another. *Matson v. Dvorak*, 40 Cal. App. 4th 539, 549 (1995).

statements is required.[19] Because the allegations set forth in the Complaint, if taken as true, do not assert that the Greenpeace Defendants had any responsible part in the publication of the alleged libel by non-parties, this Court should dismiss those defamation claims.

      **d.**      **The Challenged Statements Are Non-Actionable Opinion and Rhetorical Hyperbole Protected by the First Amendment**

Once the time-barred statements and the statements made by non-defendants are excluded, all of the statements remaining in suit are non-actionable expressions of opinion. The remaining 26 statements arise from just ***ten*** publications aimed at swaying corporations to cease using paper products derived from RFP's logging, including campaigns to persuade (a) Rite Aid to no longer use RFP products for advertising flyers; (b) McGraw Hill to cease sourcing paper from RFP; and (c) Midland Paper to no longer associate with paper suppliers with connections to RFP's products. Suppl. App. 1-4, 8-9. The publications in suit also include statements applauding companies that discontinue sourcing paper from RFP. *Id.* 5-6. In addition, RFP seeks to hold Greenpeace liable for statements in "Resolute Forest Products: Key risks and concerns for investors," that sets forth an analysis that "Greenpeace believes warrant[s] investor consideration." *Id.* 7. The publications, and the challenged statements, are quintessential advocacy and opinion based on disclosed facts to persuade paper-sourcing companies and RFP's investors to change practices and/or demand that RFP take a more sustainable approach to logging in the Boreal Forest. Statements of opinion like these are protected speech and cannot serve as the basis for defamation liability.

Under the First Amendment, and the law of Georgia, to succeed, a defamation claim must be based on statements of fact, not opinion. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990). Expressions of opinion are subjective statements incapable of being proved true or false. *Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 718 (11th Cir. 1985). "The immunity granted to opinions

---

[19] *See Universal Commc'n Sys.*, 2005 WL 3956648, at *3 (discussing potential Rule 11 sanctions after court dismissed defamation suit for failure to state claim that named defendants made statements in suit, and where evidence "evinces that the plaintiffs filed their complaint in federal court for the sole underlying purpose of exerting 'political and business pressures' upon a defendant in another lawsuit, and to obtain discovery it had been denied in the other cases.").

reflects, in part, the First Amendment principle that there can be no false ideas." *Michel v. NYP Holdings, Inc.*, 816 F.3d at 695 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974)). Whether allegedly defamatory statements are non-actionable opinion is a question of law. Thus, "[b]oth the Supreme Court and [the Eleventh Circuit] have long recognized that a defamation claim may not be actionable when the alleged defamatory statement is based on non-literal assertions of 'fact.'" *Bennett v. Hendrix*, 325 F. App'x 727, 738–39 (11th Cir. 2009) (*quoting Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002)).

### (1) Advocacy Context Indicates the Statements Were Opinion

The context of Greenpeace's advocacy work and publications indicates to a reasonable reader the publications at issue presented statements of opinion. The Supreme Court has recognized that "debate on public issues should be uninhibited, robust, and wide-open," *Sullivan*, 376 U.S. at 270, and "language of the political arena ... is often vituperative, abusive, and inexact," *Watts v. United States*, 394 U.S. 705, 708 (1969). As the Ninth Circuit observed, "[P]olitical statements are inherently prone to exaggeration and hyperbole." *Planned Parenthood v. Am. Coal. of Life Activists*, 244 F.3d 1007, 1019 (9th Cir. 2001). "[T]he tone of the speech and its medium of expression can often signal opinion or nonliteral assertions of fact, especially within the political arena." *Bennett v. Hendrix*, 325 F. App'x 727, 741–42 (11th Cir. 2009) (citing *Planned Parenthood* and *Milkovich*, 497 U.S. at 6 (noting "the general tenor of an article" may negate a literal assertion)); *see also Secrist v. Harkin*, 874 F.2d 1244, 1249 (8th Cir. 1989) (campaign press release "is at least as likely to signal political opinion as a newspaper editorial or political cartoon"). Each of the publications remaining in suit is attributed to GP Inc., a well-known organization identified with environmental advocacy. The publications include various obvious statements of opinion setting forth Greenpeace's advocacy aims.[20] Advocacy pieces are quintessential opinion publications, similar to

---

[20] *E.g.,* Suppl. App. 1 ("[W]e're calling on Rite Aid to do the 'rite' thing before the damage to the endangered forests in the Boreal gets worse"); *id.* 2 ("Earlier this year, Greenpeace initiated a public campaign spotlighting Rite Aid").

a newspaper's op-ed page, and Georgia law recognizes that advocacy publications are understood by reasonable readers to be inherently opinion-based publications.[21]

### (2) The Statements are Opinion Based on Disclosed Facts

"If an opinion is based upon facts already disclosed in the communication, the expression of the opinion implies nothing other than the speaker's subjective interpretation of the facts," and the opinion is not actionable. *Jailett v. Ga. Television Co.*. 520 S.E.2d 721, 725 (Ga. App. 1999). Here, except for a single tweet that is pure opinion, and as set forth in the Supplemental Appendix, the publications fully disclose the facts upon which the challenged statements were based.[22] As more fully explained in the Anti-SLAPP Motion,[23] the underlying facts are substantially true.[24]

Rather than implying the existence of any "undisclosed" facts,[25] the writers of the statements at issue went out of their way to set forth the basis for the opinions expressed through footnoting sources, adding hyperlinks to sources, and providing links to supportive news reports.[26] Most of the

---

[21] *Lucas v. Cranshaw*, 659 S.E.2d 612, 616 (Ga. App. 2008) (newspaper column not actionable); *Collins v. Cox Enters.*, 215 Ga. App. 679, 680 (1995) (editorial expressing opinion not assertion of objective fact that might be proved false); s*ee also McCall v. Couture*, 666 S.E.2d 637, 640 (Ga. App. 2008) (letter to homeowners board was wholly subjective opinion). Unambiguous statements or statements where meanings can be derived from context can be decided by courts as a matter of law. *Cox Enters., Inc. v. Nix*, 274 Ga. 801, 803 (2002).

[22] For example, the publications concerning Rite Aid include hyperlinks to reports detailing Resolute's logging practices and suspended FSC certifications. *See* Suppl. App. 1-2, 4-5.

[23] In their Anti-SLAPP motion, the Greenpeace Defendants set forth in full an argument that RFP cannot carry its burden of establishing that Defendants' statements are substantially false, but incorporate those arguments here to the extent they are based on unambiguous or other statements the Court can determine without reference to matters outside the pleadings, or where relevant facts are incorporated by reference in the Complaint or are available by judicial notice.

[24] Truth is an absolute defense under Georgia law. *Wolf v. Ramsey*, 253 F. Supp. 2d 1323, 1349 (N.D. Ga. 2003). The law of libel "overlooks minor inaccuracies and concentrates upon substantial truth." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-17 (1991); *see also Stange v. Cox Enters., Inc.*, 440 S.E.2d 503, 506-07 (Ga. App. 1994).

[25] A non-actionable, subjective opinion can only lose its protection from suit if the statement implies an undisclosed defamatory fact as the basis for the opinion. *Jaillett.*, 520 S.E.2d at 726 (quoting Restatement (Second) of Torts § 566) (internal quotation marks omitted).

[26] *See Hoffman–Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002) ("The 'publication' at issue here is the entire book, which was properly before the court on the motion to dismiss because [Plaintiff] referred to it in her complaint and it is central to her claims."); *Muller-Paisner v. TIAA*, 289 Fed. App'x. 461, 466 n.5 (2d Cir. Aug. 15, 2008) (judicial notice of website for fact of publication); *Benak v. Alliance Capital Mgmt., L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006) (judicial notice of publications "in the public realm"). The Court may also consider the links included in the publications because they are incorporated by reference in the publications. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Horsley v. Feldt*, 304 F. 3d 1125, 1134 (11th Cir. 2002) (in defamation case, considering documents not attached to complaint, but incorporated by reference).

complained-of statements are based on facts disclosed in the communication.[27] Thus, the opinions implied nothing other than the speaker's subjective interpretation of those facts. *Atlanta Humane Soc'y v. Mills*, 618 S.E.2d 18 (Ga. App. 2005) (reference to director of humane society as "Mr. Kill" incapable of being proved false); *see also Garland v. State*, 84 S.E.2d 9, 11 (Ga. App. 1954).[28] Statements that Rite Aid is "ignor[ing] what science tells us: the Canadian Boreal forest is at risk and Rite Aid's supplier, Resolute, is making a bad situation worse," (GP Defs.' Table D, Compl. Allegation 30), and that "[b]y continuing to manage this area without science-based conservation measures, Resolute is actively contributing to the loss of intact forests and woodland caribou habitat," (*id.* C02), are exactly the kind of scientific controversies where such subjective evaluations are expected and protected. *Arthur v. Offit*, 2010 WL 883745, at *6 (E.D. Va. Mar. 10, 2010) ("Courts have a justifiable reticence about venturing into the thicket of scientific debate, especially in the defamation context."). Thus, to the extent the statements are not time-barred, and are made by the actual defendants, RFP fails to state a claim based on these opinions.[29]

### (3) At Most Statements Contained Rhetorical Hyperbole

Judicial protection for statements of opinion "provides assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." *Milkovich*, 497 U.S. at 20. "Georgia law unquestionably excludes from defamation liability any statements that may be characterized as

---

[27] *See* Suppl. App. 1-2 (providing hyperlinks to scientific summaries of impacts to Boreal Forest ecology); *id.* 3 (providing links to literature detailing links between forests and clean water, air quality, and climate change consequences that may result from poor forest management); *id.* 5 (hyperlinking to reporting on Canadian woodland caribou populations); *id.* 8 (providing scores of footnotes to relevant government and scientific studies of the Boreal Forest, auditor assessments of RFP's logging practices, and statements by First Nations communities criticizing RFP practices); *id.* 9-11 (attaching "Endangered Forests in the Balance," a GP Canada report with extensive footnotes to relevant government and scientific studies pertaining to the impact of RFP's logging in the Montagnes Blanches).

[28] Contrary to RFP's allegations, Defendants are not required to set forth countervailing facts for their challenged statements to be protected opinion. *See Lucas v. Cranshaw*, 659 S.E.2d 612, 615-16 (Ga. App. 2008) (article describing paving company's removal of soil and trees from land owned by county board of education as "rape" of public land not defamatory, even though article omitted fact that paving company acted in mistaken belief that land was owned by client for whom it was constructing a road).

[29] Six of the 26 alleged statements are also privileged as fair reports of official proceedings. *See Morton v. Stewart*, 266 S.E.2d 230, 232 (Ga. App. 1980). These include statements derived from the publication "Boreal Forests," which includes a link to reports on RFP's lawsuit against GP Canada (GP Defs.' Table D, C01 & D01)), and statements concerning the actions and reports of Canadian agencies on RFP's logging practices (*id.* C02, A02, A03 & C02).

rhetorical hyperbole or are clearly recognizable as pure opinion because their factual premises are revealed." *800 Mktg. Solutions, Inc. v. GMAC Ins. Mgmt. Corp.*, 2008 WL 2777140, at *6 (M.D. Ga. 2008) (internal quotations omitted).

Here, even if the Greenpeace Defendants' statements are not opinion based on disclosed facts (and they are), RFP's allegations that the Greenpeace Defendants said that RFP is "bad news for the largest remaining intact forest in North America, the Boreal" (GP Defs.' Table D, B03), is "Destroying Canada's Boreal Forest" (*id.* Compl. Allegation 31), that it is "cutting out the heart of the forest" (*id.* B01), that "[t]he Montagnes Blanches is a key battleground for the health of Boreal forest" (*id.* F10), and that RFP's operations threaten "iconic species" (*id.* C01), are without question non-verifiable statements of subjective opinion and at most non-actionable rhetorical hyperbole.[30] The publications' use of the word "Forest Destroyer," for example, is obvious rhetoric: RFP did not literally destroy an entire forest. It is of course arguable that RFP destroyed portions of the Canadian Boreal Forest without abiding by policies and practices established by the Canadian government and the Forest Stewardship Council, but that is the point: The "Forest Destroyer" statement cannot be proven true or false, it is merely an opinion.[31] In the context of the publications, the words "destroyer," "heart of the forest," "key battleground," and "iconic species," for example, strongly express Defendants' **opinion** that RFP's actions harm the ecological well-being of the Boreal Forest, the threatened caribou species, and the well-being of indigenous communities.

---

[30] *See, e.g., Kirsch v. Jones*, 464 S.E.2d 4 (Ga. App. 1995) (accusation lawyer bungled client's case non-actionable opinion and hyperbole); *Horsley*, 292 F.3d at 702 (statements that show guest was accomplice to doctor's murder protected rhetorical hyperbole). *Cf. Bennett v. Hendrix*, 325 F. App'x 727, 742 (11th Cir. 2009) (no opinion but "[i]f the challenged language on the front page of [the challenged publication] had been "criminals" instead of the more exact and literal phrase "convicted criminals," this might be a different case.").

[31] *See Letter Carriers v. Austin*, 418 U.S. 264, 265 (1974) ("traitor" was protected opinion); *Greenbelt Coop. Publ'g Ass'n, Inc. v. Bresler*, 398 U.S. 6, 14 (1970) ("even the most careless reader must have perceived" that resident's reference to "blackmail" at meeting "was no more than rhetorical hyperbole") *United States Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275 (11th Cir. 2001) (comparing steel company to Jeffrey Dahmer); *Blomberg v. Cox Enters.*, 491 S.E.2d 430 (Ga. App. 1997) ( "silver-tonged devil" non-actionable opinion).

e. **The Complaint Should Be Dismissed For Failure to Plausibly Plead Actual Malice or Any Other Applicable Fault**

(1) **RFP Is Public Figure And Must Plead Defendants Published With Actual Malice**

Even if anything in the challenged publications were false statements of fact, not opinion, and not otherwise protected by the fair report privilege, the Complaint would still fail because it does not and cannot plausibly allege the requisite level of fault on the part of the Greenpeace Defendants. If the injured party is a public figure or official and the defamatory material involves issues of legitimate public concern, "the plaintiff must prove that the defendant acted with actual malice to establish liability." *Silvester v. Am. Broad. Companies, Inc.*, 839 F.2d 1491, 1493 (11th Cir. 1988) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964); *Curtis Publ'g Co. v. Butts*, 388 U.S. 130 (1967); *Gertz v. Robert Welsh, Inc.*, 418 U.S. 323 (1974)); *see also Michel*, 816 F.3d at 695. The First Amendment mandates that a plaintiff who, as here, is a public company, "may recover for injury to reputation only on clear and convincing proof of 'actual malice,'" a state of mind the Supreme Court has defined as "knowledge of … fals[ity] or … reckless disregard of whether it was false or not." *Sullivan*, 376 U.S. at 279-80.

(a) **Environmental Impact of Logging Activities is a Matter of Public Concern**

The alleged defamatory speech in this case clearly addresses matters with which the public has legitimate concern. The public is legitimately interested in all matters of environmental harm, treatment of indigenous communities, and the impact of human activities on wildlife. *Browns Mill Dev. Co. v. Denton*, 543 S.E.2d 65, 68 (Ga. App. 2000), *aff'd*, 561 S.E.2d 431 (Ga. 2002) ("issues of county-wide soil and water environmental protection and alleged violations of environmental laws in the county, which were matters of general public concern and interest").[32] And, RFP's

---

[32] *See also Mott v. Anheuser-Busch, Inc.*, 910 F. Supp. 868, 874 (N.D.N.Y. 1995), *aff'd*, 112 F.3d 504 (2d Cir. 1996) (nationally recognized corporation's "admitted violations of environmental regulations implicate issues of environmental safety and public health," and are issues of legitimate public concern); *Container Mfg. Inc. v. CIBA-*

logging practices are a legitimate matter of public concern because the same issues that are the subject of the alleged defamatory statements have been the subject of media reporting.[33]

(b)    **Plaintiffs Are Public Figures**

In *Gertz*, the Supreme Court discussed at length the distinction between private and public figures, noting two fundamental differences. First, public figures usually have greater access to the media which gives them "a more realistic opportunity to counteract false statements than private individuals normally enjoy." 418 U.S. at 344; *see also Hutchinson v. Proxmire*, 443 U.S. 111, 136 (1979) ("Regular and continuing access to the media ... is one of the accouterments of having become a public figure."). Second, "public figures ... voluntarily expose themselves to increased risk of injury from defamatory falsehoods concerning them." *Gertz*, 418 U.S. at 345. In short, public figures "invite attention and comment." *Hutchinson,* 444 U.S. at 135.

There is no question that RFP is a publicly held corporation that must plead and prove "actual malice."[34] Compl. ¶¶ 24-30. *See Compuware Corp. v. Moody's Inv'rs Servs.*, 499 F.3d 520, 525 (6th Cir. 2007) (conceded by the plaintiff); *Reliance Ins. Co. v. Barron's*, 442 F. Supp. 1341 (S.D.N.Y. 1977). When a corporation "goes public" by offering its securities, it has taken a specific, voluntary action, the known result of which will be mandatory, increased public scrutiny. Sack on Defamation § 5:3.7, at 5-48 (4th ed.). Corporations subject to regulation by state or federal authorities are similarly "public," again inviting public scrutiny by voluntarily entering such businesses.[35] *See Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386 (8th Cir. 1997)

---

*GEIGY Corp.*, 870 F. Supp. 1225, 1234-35 (D.N.J. 1994) (storage of chemicals "pose potentially severe health and environmental risks to society" and is an issue concerning a matter of legitimate public concern").

[33] *Gaeta v. New York News, Inc.*, 62 N.Y.2d 340, 349 (1984) (determination of what constitutes matter of public concern is editorial function; publication is strong evidence it is of legitimate public interest); *accord Post v. Regan*, 677 F. Supp. 203, 208 (S.D.N.Y. 1988).

[34] RFP will also be considered a limited purpose public figure based on public controversy because RFP is involved in significant public controversy concerning timber practices in the Canadian Boreal Forest, and the alleged defamatory statements are germane to its participation therein. *Mathis v. Cannon*, 573 S.E.2d 378, 381 (Ga. 2002).

[35] Courts have held that Internet postings about corporate activity constitute an issue of public importance upon considering the following "pertinent factors: (1) whether the company is publicly traded; (2) the number of investors; and (3) whether the company has promoted itself by means of numerous press releases." *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1576 (2005).

(referring to regulation of company in holding that company is public figure); *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 273 (7th Cir. 1983) (*dictum*) ("there seems no reason to classify a large corporation as a private person.").[36]

### (2) RFP Fails to Plead Actual Malice

The "actual malice" standard imposes a heavy burden on plaintiffs. It "is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Rather, the plaintiff has the burden of pleading and ultimately proving that the defendant made the statements with a "high degree of awareness of their probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). As the D.C. Circuit has explained this bedrock Constitutional principle, a public-figure plaintiff could support a libel claim with allegations that a defendant was subjectively aware the story was "(1) fabricated; (2) so inherently improbable that only a reckless person would have put [it] in circulation; or (3) based wholly on an unverified anonymous telephone call or some other source that [plaintiff] HAD obvious reasons to doubt." *Lohrenz v. Donnelly*, 350 F.3d 1272, 1283 (D.C. Cir. 2003).

In the wake of *Iqbal* and *Twombly*, a plaintiff cannot state a claim simply by making conclusory assertions of the elements of actual malice, which is all RFP does.[37] Indeed, federal courts routinely dismiss defamation cases for failure to state a claim where a plaintiff fails to plead allegations to make actual malice plausible.[38] "[A]pplication of the plausibility pleading standard makes particular sense when examining public figure defamation suits. In these cases, there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation. Indeed, the actual malice standard was designed to

---

[36] *See also Sisler v. Gannett Co., Inc.*, 104 N.J. 256, 273 (1986) (not unfair to burden corporation with actual malice standard where statements regarding its commercial activities on matter of legitimate public concern published).

[37] Compl. ¶ 282 ("The false and defamatory statements … were made and published with actual malice, as such statements were made by Defendants with knowledge of their falsity or reckless disregard for the truth.").

[38] *See Michel*, 816 F.3d at 702 (rejecting defamation plaintiff's claim that suits involving public figures should not be dismissed without discovery because "after *Iqbal* and *Twombly*, every circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice") (collecting cases).

allow publishers the 'breathing space' needed to ensure robust reporting on public figures and events." *Michel*, 816 F.3d at 702 (citing *Sullivan*, 376 U.S. at 271–72).

Because the challenged statement expressly relies on previously published articles in reputable publications and statements in official court records, scientific reports, and government reports, RFP cannot plausibly meet the "daunting" standard of actual malice. *See Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230 (11th Cir. 1999) (overturning jury verdict where evidence insufficient to establish broadcast network and producer acted with actual malice). Indeed, the facts here, based on these documentary records, conclusively demonstrate an absence of actual malice by Defendants, as a matter of law. Reliance on previously published material from reputable publications precludes RFP from plausibly pleading actual malice, as a matter of law. *See, e.g., Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1297 (D.C. Cir. 1988). Here, the challenged publications expressly cite the criticisms lodged in government reports, comprehensive audits conducted on RFP's logging practices, critiques of First Nation Communities, and scientific analyses published in reputable sources, which contain all the facts RFP now challenges. Reliance on these reputable sources defeats actual malice, as a matter of law.[39]

RFP claims that, in pursuit of engaging in an "enterprise" to harm it, the Greenpeace Defendants made false, defamatory statements with the intent of "injuring Plaintiffs' reputation." Compl. ¶ 283. But a defamation defendant's "intent" is insufficient to establish actual malice. *See Morgan v. Tice*, 862 F.2d 1495, 1500 (11th Cir. 1989) (no actual malice based on defendant's alleged "purpose and intent to find whatever unsavory things he could about" plaintiff). To plead actual malice, RFP must allege facts sufficient to give rise to a reasonable inference that the alleged false statement was made with knowledge that it was false or with reckless disregard of whether it

---

[39] *Layman v. City Pages*, 2015 WL 1546173, at *16-17 (M.D. Fla. Apr. 3, 2015) (plaintiff could not prove actual malice when newspapers and authors relied on judicial opinions and public filings in Florida Bar disciplinary proceedings), *aff'd*, 2016 WL 3033141, at *5 (11th Cir. May 27, 2016) ("Evidence that an article contains information that readers can use to verify its content tends to undermine claims of actual malice."); *CACI Premier Tech. v. Rhodes* 536 F.3d 280, 292 (4th Cir. 2008) (no actual malice where radio commentator relied on official reports about the conditions set by government contractor that led to torture, rape, and murder at Abu Ghraib prison).

was false. *Meisler v. Gannett Co.*, 12 F.3d 1026, 1030 (11th Cir. 1994). The question is whether defendant actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false. The Complaint does not allege – and cannot allege –facts suggesting that the Greenpeace Defendants entertained any serious doubts that the 26 statements they published regarding RFP's logging practices were true.

### 4.      RFP Fails to Plead a Plausible Claim Under RICO

In dismissing a RICO case involving a 142-page complaint, the Eleventh Circuit recently noted that "[i]n pleading, as in many aspects of life, quality matters more than quantity." *Lawrie v. Ginn Dev. Co.*, 2016 WL 4036381, at *1 (11th Cir. July 28, 2016). Here, for all of the 160 pages in its Complaint, RFP does not come close to meeting black-letter law requirements of a RICO claim, and thus Counts I-III must be dismissed. Many of its allegations are tissue-thin and on inspection are not based on any alleged facts; in some cases, RFP has not even identified viable statutory sections for alleged predicate acts. Defamation is not a predicate act and RFP cannot convert defamation claims into mail and wire fraud merely by declaring them "fraudulent," nor convert those statements into extortion simply because its customers heeded Greenpeace's comments about RFP's practices. Fundamentally, RFP cannot plead standing as it cannot show a concrete, domestic injury to its business or property that was the proximate result of any pattern of racketeering.[40]

### a.      The RICO Elements

A RICO plaintiff must plead: (1) conduct (2) of an enterprise[41] (3) through a pattern (4) of racketeering activity (predicate acts); (5) a sufficiently direct injury that plaintiff has standing; and (6) proximate causation. *Jones v. Childers*, 18 F.3d 899, 910 (11th Cir. 1994) (*quoting Sedima,*

---

[40] RFP pleads precisely the same predicate acts under its Georgia RICO claims (Counts IV and V), and thus its state claims suffer from the same fatal flaws discussed herein, and must also be dismissed.

[41] To plead an enterprise, a plaintiff must show each member knowingly and intentionally agreed with others to conduct or participate in the enterprise's affairs, and commit racketeering acts towards a common purpose. *Almanza v. United Airlines, Inc.*, 2016 WL 722159, *9 (11th Cir. Mar. 8, 2016). "Conscious parallel conduct" is insufficient because it does not "plausibly demonstrate that [] defendants ever reached an understanding that they would undertake such concerted action." *Id.* RFP's allegations of coordination and participation among supposed enterprise members are bare averments. (*e.g.*, "Defendant Rolf Skar is a Forest Campaigner for GP-Inc. with responsibility for GP-Inc.'s participation in the campaign against Resolute alleged herein" (Compl. ¶ 39.).

*S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)); *Williams*, 465 F.3d at 1828-83; *Holmes v. Secs. Inv'r Prot. Corp.*, 503 U.S. 258, 259 (1992). Here, RFP alleges that Defendants have violated Section 1962(a), (c) and (d)[42] of the RICO statute.[43]

### b. RFP's Bare RICO Allegations Should Be Stricken

RFP's Complaint and Rule 9.1 statement demonstrate that for many of its RICO allegations, RFP offers no more than legal conclusions or bare allegations of wrongdoing, which are neither plausible nor particular under *Twombly* and *Iqbal*. At a minimum, under *American Dental Ass'n v. Cigna Corp.*, 605 F. 3d 1283, 1290 (11th Cir. 2010), the Court should strike all bare allegations from the Complaint relating to: misappropriation or "theft" of proprietary information (Compl. ¶¶ 15, 41, 46, 149, 224, 230, 235, 241, 243, 248, 252, 258, 264, 269, 274, 277); impersonation/false pretenses (Compl. ¶¶ 15, 149, 224, 230, 248, 258, 264, 274); bribery (Compl. ¶ 41); fraudulent "inducement" of donors (Compl. ¶ 1, 3, 18, 43-48, 87, 224, 228, 241, 248, 262, 274, 312 ); defrauding tax authorities (Compl. ¶¶ 18, 55, 224, 248, 258, 274).

### c. RFP Fails to Plead RICO Predicate Acts

### (1) Defamation, However Framed, Is Not a Predicate Act

With respect to the RICO allegations based on speech by Defendants, the law is clear that defamation is not a predicate act under RICO. *Hourani v. Mirtchev*, 796 F.3d 1, 10 n.3 (D.C. Cir. 2015); *Kimberlin v. Nat'l Bloggers Club*, 2015 WL 1242763, at *9 (D. Md. Mar. 17, 2015); *Kimm v. Lee,* 2005 WL 89386 (S.D.N.Y. Jan.13, 2005); *Contes v. City of New York*, 1999 WL 500140, at *8 (S.D.N.Y. July 14, 1999) ("Defamation is not a predicate act under § 1961."). Although RFP does not specifically list defamation as an alleged predicate act, courts also are "universally hostile" to

---

[42] A claim under section 1962(d) cannot stand unless a plaintiff can sustain a viable claim under another subsection, which RFP cannot do here. *G & G TIC, LLC v. Alabama Controls, Inc.*, 2008 WL 4457876 , at *6 (M.D. Ga. Sept. 29, 2008) ("Since Plaintiff's Complaint fails to state a substantive RICO claim, Plaintiff's RICO conspiracy claim also fails.") (*citing Jackson v. BellSouth Telecomms.*, 372 F.3d 1259, 1269 (11th Cir. 2004)).

[43] The RICO statute specifies the provisions of Title 18 that may constitute predicate acts. Absent from that list are crimes in violation of 18 U.S.C. §§ 875-77, 880, so RFP's (unsupported) allegations under this provision must be stricken. RFP also has failed to plead **any** predicate acts under 18 U.S.C. § 1512, the witness tampering provision.

attempts to "spin an alleged scheme to harm a plaintiff's professional reputation into a RICO claim." *Kimberlin*, 2015 WL 1242763, at *9; *see also Kimm,* 2005 WL 89386, at *5; *Marks v. City of Seattle,* 2003 WL 23024522, at *1; *Mansmann v. Smith,* 1997 WL 145009 (E.D. Pa. Mar. 21, 1997); *Manax v. McNamara,* 660 F. Supp. 657, 658 (W.D. Tex. 1978), *aff'd,* 842 F.2d 808 (5th Cir. 1988).

In *Kimberlin*, the plaintiff alleged that the defendants violated RICO "by establishing a criminal enterprise to create and publish false and defamatory narratives about Kimberlin in order to raise money from individuals who supported the enterprise's efforts." The plaintiff pled violations of the mail and wire fraud statutes, extortion, money laundering, and other crimes, but the court readily found those alleged predicate acts to be merely defamation claims. It noted that it is "firmly established" that defamation and "many other similar allegations" cannot support a RICO claim. *Id.* (*citing Kimm*, 2005 WL 89386, at *5); *see also DelRio-Mocci v. Connolly Props. Inc.*, 672 F.3d 241 (3d Cir. 2012) (not purpose of RICO statute to open doors of federal judiciary to "garden variety" civil fraud). Just as RFP cannot reframe its claims to avoid the First Amendment, it bears a heavy burden to show that Greenpeace's speech can constitute a predicate criminal act.

### (2)     RFP Cannot Plead Mail and Wire Fraud

To plead mail or wire fraud, a plaintiff must allege with particularity[44] that (1) "defendant intentionally participated in a scheme to defraud another of money or property," (2) "defendant used the mails or wires in furtherance of that scheme," and (3) "plaintiff relied to his detriment on the defendant's misrepresentations." *Flava Works, Inc. v. Roje on Holiday Inc.*, 2012 WL 1569568, *2 (S.D. Fla. May 2, 2012); *Kemp v. American Telephone & Telegraph, Co.*, 393 F.3d 1354, 1359 (11th Cir.2004). To establish the requisite intent to defraud, RFP must plausibly plead that the Greenpeace Defendants: (1) sought to deprive someone "of something of value by trick, deceit,

---

[44] RFP attempts to "particularize" by proffering hundreds of alleged fraudulent statements without identifying how each was misleading or benefited Defendants. *See Lawrie*, 2016 WL 4036381 at *8 (Rule 9(b) dismissal where despite an "everything-but-the-kitchen-sink approach to pleading" Plaintiffs failed to allege essential fact making statements false).

chicane, or overreaching" and (2) they intended to cause harm to the victim by "obtain[ing], by deceptive means, something to which [the defendant] is not entitled." In *United States v. Takhalov*, --- F.3d ----, 2016 WL 3683456 (11th Cir. 2016), the Eleventh Circuit reviewed jury charges in a wire-fraud case that only required jurors to consider whether the alleged victims had been deceived. The Court stated that under 18 U.S.C. § 1343, "a defendant 'schemes to defraud' only if he schemes to 'depriv[e] [someone] of something of value by trick, deceit, chicane, or overreaching.'" *Id.* at *3 (*citing United States v. Bradley*, 644 F.3d 1213, 1240 (11th Cir. 2011). Where a defendant does not intend to cause harm to the victim by "obtain[ing], by deceptive means, something to which [the defendant] is not entitled" there is no intent to defraud. *Id.* at *4 (citations omitted).

Here, as discussed previously in connection with defamation, RFP has not even pleaded that the Greenpeace Defendants deceived anyone, and certainly not that they intended to do so. But even assuming *arguendo* that RFP has somehow pleaded deception of "stakeholders, customers, trade associations, government regulators, and other critical market constituents" about RFP's environmental failings (Compl. ¶¶ 224, 258, 274.), it has not pled fraud. Although RFP argues that the purported predicate acts "were intended to and did ***mislead*** donors, customers, and others about the Plaintiffs so as to ***induce*** donations and compliance with the Defendants' demands. . . " *id.* (emphases added), it does not even ***attempt*** to allege any intentional effort by Greenpeace to cause injury to the general public, RFP's stakeholders, the tax authorities, trade associations, or government regulators by depriving those parties of something of value, and therefore its RICO claims fail with respect to purported mail and wire fraud directed to those parties.

RFP's entire RICO case thus depends on the sufficiency of its allegations that Greenpeace's communications with its own donors and RFP's customers were fraudulent. As to donors, RFP has not – and cannot – advance sufficient factual allegations to support its claim. It pleads only alleged misleading messaging ***about RFP*** in a single campaign, not fraud relating to the actual transaction between Greenpeace and its donors. RFP has not alleged any facts demonstrating (a) any specific

statements made to potential donors; (b) any specific statements made in connection with fundraising; (c) the identity of any defrauded donor(s); (d) any donations that were fraudulently obtained; (e) an intent on the part of Greenpeace to defraud donors; or (f) that any donations have been used for purposes other than as promised. Under Eleventh Circuit law, RFP thus has only pleaded deception, not fraud, and even that amounts to nothing more than statements with which RFP disagrees. More importantly, RFP has *no standing* to advance wire and mail fraud claims on behalf of Greenpeace's donors, as discussed below.

As to RFP's customers, to the extent RFP also vaguely alleges that Greenpeace's campaign statements misled customers and caused them to decide not to associate with RFP, again, this at most would constitute deceit, not an attempt to defraud. To the extent RFP argues that the allegedly fraudulent statements by Greenpeace "induced" customers to "comply" with Greenpeace's "demands," this would appear to be RFP's attempted claim for extortion, discussed below.[45]

### (3)     RFP Cannot Plead Extortion

RFP alleges "illegal interference with commerce in violation of 18 U.S.C. § 1951," the Hobbs Act. Extortion under the Hobbs Act consists of "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Threats to defame someone are insufficient to state a claim for extortion. *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126 (E.D.N.Y. 2010); *Kimm*, 2005 WL 89386. Extortion requires a demand for property that is transferrable from the party being extorted to the party doing the extorting; coercion or interference is insufficient. *Sekhar v. U.S.*, 133 S. Ct. 2720, 2725 (2013) (distinguishing between distinct statutory claim of coercion and extortion); *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393 (2003). Obtaining property under the Hobbs

---

[45] The Eleventh Circuit has noted that "it has long been recognized that, broad as are the words 'to defraud,' they do not include threat and coercion through fear or force." *U.S. v. Pendergraft*, 297 F.3d 1198 (11th Cir. 2002) (*citing Fasulo v. United States*, 272 U.S. 620, 628, (1926).

Act means "not only the deprivation but also the acquisition of property." *Scheidler*, 537 U.S. at 404 (citing *United States v. Enmons*, 410 U.S. 396, 400 (1973).

Here, the alleged "extortion" of RFP customers was not a demand for the transfer of anything of value from those customers to Greenpeace, and at most constituted lawful conduct akin to "hard bargaining" or boycotting.[46] Greenpeace is not alleged to have been attempting to "obtain" RFP's relationships with its business customers, nor could RFP make such an allegation. Again, RFP attempts to blur the line between a defamation claim, its wire and mail fraud allegations about Greenpeace donors, and its allegations about extortion of customers, but this is untenable. If there was any *consequence* of the alleged extortion of customers, it clearly had nothing to do with Greenpeace donations – at most it resulted in the decision by some customers to reconsider their relationships with RFP. This type of loss without a transfer is at most coercion, and cannot stand as a predicate act. To the extent Greenpeace uses marketplace pressure to convince customers to think twice about doing business with RFP, RFP had no preexisting right to be free of such pressure.

Additionally, while extortion under the Hobbs Act may include "fear" of economic loss in addition to threats of physical violence, "whether the threat of economic harm is wrongful under the Hobbs Act depends on whether the defendant has a 'lawful claim' to the property he seeks to obtain." *United Broth. of Carpenters and Joiners of America v. Building and Const. Trades Dep't*, 770 F.3d 834, 838-41 (9th Cir. 2014). A long line of cases distinguishes "hard business bargaining" where parties in a free market exert economic pressure to achieve their end, which does not constitute extortion, and cases where a plaintiff has a "pre-existing entitlement" to "pursue business interests" free of such pressure, such as where it had an extant contract. *Id.* at 1130-31.[47]

---

[46] "[N]othing in the Court's opinion precludes a RICO defendant from raising the First Amendment in its defense in a particular case. Conduct alleged to amount to Hobbs Act extortion … or one of the other, somewhat elastic RICO predicate acts may turn out to be fully protected First Amendment activity, entitling the defendant to dismissal on that basis." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249(1994) (*citing NAACP v. Claiborne Hardware*, 458 U. S. at 917 (addressing boycotting)).

[47] *See also Brokerage Concepts v. U.S. Healthcare*, 140 F.3d 494, 503 (3d Cir. 1998); *Rennell v. Rowe*, 635 F.3d 1008, 1009 (7th Cir. 2011); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 939–40 (9th Cir. 2006); *George Lussier Enters., Inc. v.*

Most importantly the activity that RFP complains of in the "extortion" context was merely speaking out to companies about using RFP as a paper supplier. The only "threat" was being publicly exposed as having a relationship with RFP, which Greenpeace was already publicly criticizing for its practices. This alleged harm to reputation is only redressable by a defamation claim and, for the reasons stated, that claim fails.

### d. Failure to Plead Proximate Cause and Direct and Concrete Injury

RICO's proximate cause requirement demands a direct connection between the Plaintiff's injury and the Defendant's racketeering activity. *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1287 (11th Cir. 2006) (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459-60 (2006)). Where there is a more direct victim of the alleged racketeering, less direct victims will not have standing to bring a claim. *Id.* ("The requirement of a direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims." (citing *Anza*, 540 U.S. at 460)). Even if Greenpeace had engaged in a pattern of racketeering activity directed at its own donors or the tax authorities (which it did not), RFP would not have standing to bring a RICO based on that conduct because none of its injuries would have stemmed directly from it. *See Kimberlin*, 2015 WL 1242763, at *13 ("Here, the direct victims of the mail fraud, wire fraud, and money laundering are the individuals who were induced into making donations. . . . these individuals may pursue their own remedies under the law."). Further, none of the injuries claimed in RFP's Rule 9.1 Statement[48] directly stem from *any* pattern of racketeering, and several are wholly unsupported or non-cognizable. (Doc. No. 3, Para. 15.)

---

*Subaru of New England, Inc.*, 393 F.3d 36, 50 (1st Cir. 2004); *Viacom Int'l v. Icahn*, 747 F. Supp. 205 (S.D.N.Y. 1990); *Slack v. Int'l Union of Operating Engineers* 2014, WL 4090383, at *25 (N.D. Cal. Aug. 19, 2014).

[48] None of these injuries are alleged to result from Greenpeace's use of funds from racketeering, and thus cannot support a claim under Section 1962(a). *United Broth. of Carpenters and Joiners of America v. Building and Constr. Trades Dep't*, 911 F.Supp.2d 1118, 1126 (E.D. Wa. 2012) ("[A] plaintiff seeking civil damages for a violation of § 1962(a) must allege facts tending to show that he or she was injured by the use or investment of racketeering income.") (*citing Nugget Hydroelectric L.P. v. Pacific Gas & Elec. Co.*, 981 F.2d 429, 437 (9th Cir. 1992)). "'Reinvestment of proceeds from alleged racketeering activity back into the enterprise to continue its racketeering activity is insufficient to show proximate causation.'" *Id.* (*citing Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008)).

***Lost revenue, profits, and enterprise value, including lost customers, market share***: RFP does not have standing to bring a RICO claim based on lost profits, customers or market share for two primary reasons. ***First***, RFP has not plausibly pled a direct link between Greenpeace and any customer or sale loss. *Williams*, 465 F.3d at 1287. While RFP claims that it had to reduce operations at its August newsprint mill in May 2016 due "in part" to Greenpeace's campaign (Compl. ¶ 209), in its SEC filings, RFP said that the decision to reduce operations "was motivated by the ongoing structural challenges in the newsprint market and was necessary to avoid costly rotating downtime." Koonce Decl. Ex. 13. A press release from RFP stated that the decision was "motivated by the ongoing structural challenges in the newsprint market" and "[l]ong-term market conditions remain challenging for newsprint, particularly for our U.S. mills, which are especially vulnerable in the present U.S. dollar environment." *Id.*, Ex. 12.[49] RFP has not met its burden of establishing a direct and plausible connection between Greenpeace and the reduction in operations. *See Simpson v. Sanderson Farms*, 744 F.3d 702, 712 (11th Cir. 2014) ("The pattern of RICO predicate acts need not be the 'sole cause' of a plaintiff's injury . . . but a plaintiff must ***indisputably show*** that a defendant's racketeering activity was more than merely a 'but for' cause of harm.") (citations omitted, emphasis added).

***Second***, even if RFP had established such a link, it has failed to show how those injuries stem from any ***racketeering activity*** as opposed to the more general (and protected) Greenpeace campaign. *Sedima*, 473 U.S. at 496-97. In those few instances where RFP appears to be alleging actual losses of customers, it does not specify whether and how those customers' departure flowed from any deceptive or false statement. For instance, in the case of 3M, RFP alleges only that Greenpeace made public statements about 3M's need to source from responsible providers, leading to a new paper sourcing policy that RFP then failed to meet. (Compl. ¶¶ 165-166.) RFP's

---

[49] This rationale was repeated in news articles. *See* Koonce Decl. Ex. 15. Other RFP filings confirm that "newsprint demand fell by 7% in 2011, 1% in 2012, 10% in 2013, 9% in 2014 and 10% in 2015." Koonce Decl. Ex. 14.

allegations regarding the campaign against Best Buy state that "Best Buy publicly announced that it would shift business away from Resolute toward companies that support 'sustainable forestry practices,'" which indicates that Best Buy itself viewed its decision to change suppliers as a result not of extortion, but of environmentally-sound policy at most prompted by Greenpeace's spotlight on RFP's practices.[50]

*Fees and expenses to uncover and remedy the alleged acts of the enterprise.* Yet again, RFP has pled no facts supporting this alleged injury. In any event, increased fees of this type are far too remote to provide standing under RICO. *Cf. Kimberlin v. Nat'l Bloggers Club*, 2015 WL 1242763, at *12 (rejecting claim of direct injury to business or property where plaintiff claimed merely to have "spen[t] money defending against the false narrative").

*Misappropriated proprietary information.* Quite simply, RFP has not alleged any misappropriation of proprietary information in the complaint.

*Damaged reputation.* Injury to reputation is an insufficient basis for a RICO claim, as it does not constitute injury to business or property. *Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006). Such injury is redressable, if at all, by a viable defamation claim which RFP has not stated.

### e.    Extraterritorial Application of RICO

In *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090 (2016), the Supreme Court recently clarified the extraterritoriality of RICO, and made two key rulings. First, it confirmed that the mail and wire fraud statutes do not apply extraterritorially, and thus any RICO claim based on those predicate acts must be based on communications **within the U.S. only**. Second, it confirmed

---

[50] RFP alleges the loss of several other potential customers where RFP had no existing contractual relationship. For example, RFP alleges without specificity that Greenpeace "bombarded" Kimberly-Clark with false claims, which it says generated "noise" that caused the company to choose not to pursue a relationship with RFP. Putting aside that "noise" is not extortion, RFP also concedes that the reason given by Kimberly-Clark for not pursuing a relationship was "Resolute's continued dispute with Greenpeace and the recent upsets in the CBFA." (Compl. ¶ 150.)  This does not disclose any "extortive" conduct; also, on its face Kimberly-Clark's rationale was the public "dispute" between RFP and Greenpeace, not any alleged false statements, and public issues relating to the CBFA, not extortion.

that "Section 1964(c) requires a civil RICO plaintiff to allege and prove a domestic injury to business or property and does not allow recovery for foreign injuries." *Id.* at 2111.

Here, RFP, a foreign plaintiff, alleges violation of the RICO statute for injuries it suffered, if anywhere, in Canada, where it is based. Indeed, it specifies its alleged damages in Canadian dollars. (Compl. ¶¶ 17, 209, 214, *passim*). Although its U.S. subsidiaries are named as plaintiffs, there are no allegations that those entities suffered any RICO injury here, other than facially insufficient claims about layoffs at the Augusta newsprint facility, discussed above. Even as to the purported trip to Augusta by several defendants to speak at an RFP annual meeting, the Complaint contains *no* cognizable allegations of injury in the U.S. caused by that visit. Further, many of Defendants' statements alleged to be the basis for RFP's claims were published only in foreign countries, particularly Canada. To the extent that RFP's claims are based on foreign statements, they cannot be predicate acts under the mail and wire fraud acts.

### 5. The Trademark Claim Should be Dismissed

Plaintiff claims that the term "Resolute: Forest Destroyer" is a dilution by tarnishment of its alleged trademark RESOLUTE FOREST PRODUCTS under state law.[51] However, like many of its other claims, there are no factual allegations whatsoever supporting this cause of action. The Complaint does not allege RFP's registration or ownership of any trademark,[52] that RFP's alleged mark is distinctive,[53] any use by defendants of the complained-of term in a trademark sense (as opposed to within the body of communications), or any factual averments of tarnishment other than conclusory ones. (Compl. ¶¶ 210-216.) These omissions are fatal, especially here where, as noted, RFP is trying to reframe its defamation claims as other causes of action.

---

[51] Although RFP has a federally registered trademark for this name, it does not bring a Lanham Act claim for dilution. One possible reason is that it is aware that under federal case law on dilution, its claim is likely frivolous, and under the Lanham Act defendants are entitles to recover their attorneys fees in exceptional cases.

[52] According to the Georgia Secretary of State's website, Resolute has not registered its alleged mark in Georgia. Koonce Decl. Ex. 16. This precludes it from recovering any alleged profits or damages. O.C.G.A. 10-1-451 (2010); *see India-American Cultural Ass'n, Inc. v. Ilink Prof'ls, Inc.*, 769 S.E.2d 905, 909-10 (Ga. Sup. 2015).

[53] *Corbitt Mfg. Co. v. GSO Am., Inc.*, 197 F. Supp. 2d 1368, 1379 (S.D. Ga. 2002)

Further, even if RFP could plead ownership, distinctiveness, trademark use and tarnishment, on its face the complained-of use constitutes a mere nominative use of that mark. The First Amendment guarantees the right to use another party's trademarks – especially a parodical version, like this one – for noncommercial criticism and commentary. *See LL Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26 (1st Cir. 1987) (if federal dilution law allowed "a trademark owner to enjoin the use of his mark in a noncommercial context found to be negative or offensive, then a corporation could shield itself from criticism by forbidding the use of its name in commentaries critical of its conduct"; "legitimate aim" of the law was "to prohibit the unauthorized use of another's trademark in order to market incompatible products or services"); *see also Stop the Olympic Prison v. United States Olympic Committee*, 489 F. Supp. 1112, 1123 (S.D.N.Y. 1980); *Girl Scouts of USA v. Personality Posters Manufacturing Co.*, 304 F. Supp. 1228, 1233 (S.D.N.Y. 1969); *Lamparello v. Falwell*, 420 F.3d 309 (4th Cir. 2005); *cf. Smith v. Wal-Mart Stores, Inc.*, 537 F. Supp. 2d 1302,1316-17 (N.D. Ga. 2008).

### 6. The Tortious Interference Claims Should Be Dismissed

To maintain a claim for tortious interference with contractual relations or prospective relations, a plaintiff must show that the defendant (1) acted improperly and without privilege, (2) purposely and with malice and intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) caused the plaintiff to suffer some financial injury. *Willis v. United Family Life Ins.*, 487 S.E.2d 376 (1997); *Parks v. Multimedia Techs., Inc.*, 520 S.E.2d 517, 526 (Ga. App. 1999). In Counts VII and VII, RFP broadly alleges that defendants interfered with its customers and potential customers; shareholders and potential investors; potential distributors; potential employees; community leaders; government regulators; and trade associations. (Compl. ¶¶ 289, 298.) The Complaint, predictably, is silent as to any facts relating to actual or prospective business relationships, or acts of interference with, investors, shareholders, distributors, employees, community leaders or trade associations; the only acts even

complained of are the same types of speech discussed elsewhere in this motion: "publication of false and misleading statements in numerous publications on the internet, on social media platforms, and via email, mail, [and] telephone in-person communications." (Compl. ¶ 300.) As noted, RFP cannot just reframe its defamation claims. *See Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013) (dismissing interference claim that duplicated defamation claim).

RFP's claims boil down to a claim of interference with its customers and potential customers by "[t]he dissemination of false, misleading and defamatory allegations to and about customers in an effort to coerce those customers to cease conducting business with Plaintiffs" and by "threatening to harm Plaintiffs' customers unless they terminated their business relationships with Plaintiffs." (Compl. ¶ 300.) Obviously, these allegations restate RFP's defamation claims and its wire/mail fraud and extortion claims, for reasons previously discussed. *See also NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 910 (1982) (cannot plead around First Amendment by claiming tortious interference). Also, RFP simply fails to state facts to plausibly plead the elements of its claims, including "improper conduct" and intent.[54] *See Others First, Inc. v. Better Bus. Bureau of Greater St. Louis, Inc.*, 2016 WL 3727747 (8th Cir. July 12, 2016) (consumer advocacy group did not act improperly by publishing news release to warn consumers of dubious business practice).

### C.      RFP is Not Entitled to Attorneys Fees Under O.C.G.A. § 13-6-11

O.C.G.A. § 13-6-11 does not create an independent cause of action, but allows recovery of litigation expenses and attorneys fees if a defendant acts in bad faith, has been stubbornly litigious or has caused a plaintiff unnecessary trouble and expense. There is significant irony inherent in RFP accusing Greenpeace of being stubbornly litigious and causing RFP trouble and expense, given that

---

[54] RFP's state conspiracy claim (Count IX) also fails because it cannot show an underlying tort. To plead conspiracy, "a plaintiff must show that two or more persons combined 'either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort.... [T]he conspiracy of itself furnishes no cause of action. The gist of the action ... is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage.'" *McIntee v. Deramus*, 722 SE 2d 377, 379 (Ct. App 2012). Nor has it pleaded a common design.

it is RFP that has expanded its stubborn effort to silence Greenpeace by bringing a second litigation in a new jurisdiction on many of the same grounds, with no better grounds than the first.

This 8th day of September, 2016.

Respectfully submitted,

/s/    Thomas W. Tucker
Thomas W. Tucker                                    Laura Handman (admitted *pro hac vice*)
Georgia Bar No. 717975                          Lisa Zycherman (admitted *pro hac vice*)
TUCKER LONG, PC                                  DAVIS WRIGHT TREMAINE, LLP
453 Greene Street                                     1919 Pennsylvania Avenue, NW, Suite 800
Augusta, Georgia 30901                         Washington, DC 20006-2401
(706) 722-0771                                         (202) 973-4200
ttucker@tuckerlong.com                        laurahandman@dwt.com
                                                               lisazycherman@dwt.com

                                                               Lacy H. Koonce, III (admitted *pro hac vice*)
                                                               DAVIS WRIGHT TREMAINE, LLP
                                                               1251 Avenue of the Americas, 1st Floor
                                                               New York, NY 10020-1104
                                                               (212) 603-6467
                                                               lancekoonce@dwt.com

*Attorneys for Defendants Greenpeace International, Greenpeace, Inc., Daniel Brindis, Amy Moas, Matthew Daggett, and Rolf Skar*

## CERTIFICATE OF SERVICE

This is to certify that on the 8th day of September, 2016, I have served all parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF") which was generated as a result of electronic filing.

  /s/ Lisa B. Zycherman
LISA B. ZYCHERMAN (Admitted *Pro Hac Vice*)