## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| RESOLUTE FOREST PRODUCTS, INC., | : | |
| RESOLUTE FP US, INC., RESOLUTE FP | : | |
| AUGUSTA, LLC, FIBREK GENERAL | : | Civil Action File No. 1:16-cv-00071 |
| PARTNERSHIP, FIBREK U.S., INC., FIBREK | : | (JRH) |
| INTERNATIONAL INC., and RESOLUTE FP | : | |
| CANADA, INC. | : | |
| | : | |
| Plaintiffs, | : | Hon.  James Randall Hall |
| | : | |
| - against - | : | |
| | : | |
| | : | |
| GREENPEACE INTERNATIONAL (aka | : | |
| "GREENPEACE STICHTING COUNCIL"), | : | |
| GREENPEACE FUND, INC., FORESTETHICS, | : | |
| DANIEL BRINDIS, AMY MOAS, MATTHEW | : | |
| DAGGETT, ROLF SKAR, TODD PAGLIA, and | : | |
| JOHN AND JANE DOES 1-20, | : | |
| | : | |
| Defendants. | : | |

## *AMICUS CURIAE* BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

## **TABLE OF CONTENTS**

INTEREST OF AMICI CURIAE .................................................................................................. 4

INTRODUCTION ......................................................................................................................... 5

ARGUMENT.................................................................................................................................. 8

    The Fundamental Safeguards Of The First Amendment Should Not Yield To An Over-
    Expansive Reading Of RICO ................................................................................................... 8

    A.    Courts Have Zealously Guarded The First Amendment Rights To Speak And
        Assemble Peaceably Regarding Matters Of Public Concern ...................................... 8

    B.    Resolute's Attempt To Apply RICO To Non-Violent Speech By Alleging
        Greenpeace Has Defrauded Its Own Donors Threatens Freedom Of Speech
        And Assembly ........................................................................................................... 10

    C.    Resolute's Attempt To Apply RICO To Non-Violent Speech By Labelling It
        "Extortion" Threatens Free Speech ........................................................................... 12

CONCLUSION............................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Cantwell v. Connecticut*, 310 U.S. 296 (1940) .............................................................. 10

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010)..................................... 8

*City of San Diego, Cal. v. Roe*, 543 U.S. 77 (2004) ....................................................... 8

*Connick v. Myers*, 461 U.S. 138 (1983)........................................................................... 8

*Cox Broad. Corp. v. Cohn*, 420 U.S. 469 (1975)............................................................. 9

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985) ................... 8

*NAACP v. Alabama*, 357 U.S. 449 (1958)........................................................................ 8

*NAACP v. Button*, 371 U.S. 415 (1963)..................................................................... 9, 10

*NAACP v. Claiborne*, 458 U.S. 886 (1982) ................................................. 8, 10, 13, 14

*Nat'l Org. for Women, Inc. v. Scheidler*, 267 F.3d 687 (7th Cir. 2001) ....................... 12

*Nat'l Org. for Women v. Scheidler*, 510 U.S. 249 (1994)............................................. 11

*Ne. Women's Ctr., Inc. v. McMonagle*, 670 F. Supp. 1300 (E.D. Pa. 1987)................ 14

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).................................................. 8

*Org. for a Better Austin v. Keefe*, 402 U.S. 415 (1971)................................................ 13

*Rankin v. McPherson*, 483 U.S. 378 (1987) ................................................................... 9

*Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620 (1980)................................. 11

*Scheidler v. National Org. for Women, Inc.*, 537 U.S. 393 (2003)......................... 12, 13

*Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947 (1984)......................... 11

*Snyder v. Phelps*, 562 U.S. 443 (2011)........................................................................... 9

*United States v. Alvarez*, 132 S. Ct. 2537 (2012) ........................................................ 12

*Wackenhut Corp. v. Serv. Employees Int'l Union,* 593 F. Supp. 2d 1289 (S.D. Fla. 2009) ......... 13

**Statutes**

18 U.S.C. § 1951.............................................................................................................. 9

18 U.S.C. § 1964(c) ......................................................................................................... 2

## INTEREST OF AMICI CURIAE[1]

*Amici Curiae* ("*Amici*") are non-profit organizations that advocate for environmental awareness and protection. They provide a way for people to associate for a common cause and to amplify their voices in pursuit of common goals. In pursuit of their public-interest, environmental-protection objectives, they regularly engage in a variety of activities that may include issuing reports on topics of public interest, educating the public, petitioning governments to take actions to protect the environment, mobilizing and empowering the public to speak out and be heard on such issues, and advocating for the business community to adopt environmentally sustainable practices and policies. To support their operations and fulfill their charitable purposes, *Amici* regularly mount fundraising campaigns and solicit private donations.

*Amici* are concerned that the constitutionally protected rights of association, free speech, and petitioning governments would be chilled if RICO were applied in the manner sought by Plaintiffs in this case, with far-reaching implications to their organizations. The *in terrorem* effect of RICO's treble damages provisions, if applied to these advocacy activities, threatens to chill constitutionally protected speech with the specter of litigation, often brought by deep-pocketed business interests.

The First Amendment plays an indispensable role in fostering an environment where organizations like *Amici* can engage in advocacy activities on issues of national importance without threat of intimidation and retribution. *Amici* believe that permitting the RICO statute to be used as club to silence legitimate speech and expression is contrary to long-established protections afforded public-interest advocacy. Permitting this lawsuit to proceed would be an

---

[1]     A list of the organizations participating as *amici* appears in the "Appendix" to this brief.

unprecedented misuse of federal law, and would set a dangerous precedent.  We therefore
respectfully request the opportunity to brief these issues before Your Honor.

**INTRODUCTION**

Plaintiffs Resolute Forest Products, Inc. and various subsidiaries (collectively,
"Resolute") are a publicly traded logging enterprise.  Defendants include various entities and
individuals associated with Greenpeace, the environmental activist group (collectively,
"Greenpeace").  Resolute has filed this lawsuit, asserting ten counts against Greenpeace under
various federal and state laws arising out of the "Resolute: Forest Destroyer" advocacy
campaign.  Characterizing Greenpeace's statements about Resolute, including in connection with
its fundraising activities, as "racketeering," Resolute brings five of the ten counts under the
federal Racketeer Influenced and Corrupt Organizations Act (RICO) and its state law analogue.
*Amici* submit this brief in support of Defendants' motions to dismiss the RICO counts.[2]

Our democracy is founded on the fundamental right of free speech and peaceful assembly
to debate or advocate in regard to matters of public concern.  The exercise of these First
Amendment rights may be provocative or controversial.  But the core freedom to speak and
peaceably assemble without governmental interference remains sacrosanct, and -- with very few
exceptions -- irrespective of the views that are communicated.

As its name suggests, RICO is a statute originally enacted to combat organized crime.
Recognizing that organized crime syndicates frequently act through fungible, low-level agents,
such that ordinary civil and criminal remedies against the actors themselves were insufficient,
Congress included in RICO expansive criminal as well as civil remedies.  Its civil remedies

---

[2]       While this brief only addresses the RICO claims, that should not be construed in any way
as an endorsement of the remaining counts.  Rather, *Amici* merely wish to focus their submission
on the points of law that may have broader ramifications beyond this case.

include treble damages for any harm caused by racketeering activity as well as attorney's fees. 18 U.S.C. § 1964(c).  These broad remedies apply where the accused is guilty of multiple racketeering *crimes*.  But here, the conduct being labeled as racketeering crimes consists entirely of non-violent, non-commercial speech about topics of public interest.

The use of RICO as a club to silence Greenpeace from using non-violent means to mobilize the public, raise awareness alongside the necessary funds to operate, and seek to bring about change in respect of environmental practices it opposes would chill the exercise of First Amendment rights not only by Greenpeace but by other groups, including *Amici*.  It would endanger the ability of non-profits to operate and set a dangerous precedent.  It should be rejected.  *Amici* depend on the freedom to debate controversial topics, often against powerful business interests, in the public sphere.  They could not do so without the ability to disseminate information about the issues, raise public awareness of their causes, and obtain financial support to advance their missions.  These core rights are indispensable for non-profit, public-interest organizations, and they would not exist if the opposite side of the debate on these important issues could bring a RICO action—with all the expense, burden, and uncertainty that entails— merely on the basis that the allegedly "false," "coercive," statements complained of were made in part for the purpose of soliciting donations to fund the non-profit's activities.

If Resolute wishes to challenge Greenpeace's statements about Resolute's (or Greenpeace's) environmental record, it is free to do so.  It can publicize its record on planting trees (Compl. ¶ 7), the "numerous awards and recognitions" it says it has received for "responsible and sustainable forestry" (¶ 8), its position on climate-change science (¶ 9), or its support for local communities in the Boreal Forest (¶¶ 12-13), and subject those claims to scrutiny in the court of public opinion, where they belong.  Where it feels it can meet the heavy

evidentiary standard required, the aggrieved party can seek a remedy through a libel or defamation claim.  But Resolute should not be permitted to effectively silence the other side of the debate in a court of law by using a statute whose broad remedies were designed to combat racketeering, not public, non-commercial speech on matters of paramount importance.

## ARGUMENT

## THE FUNDAMENTAL SAFEGUARDS OF THE FIRST AMENDMENT SHOULD NOT YIELD TO AN OVER-EXPANSIVE READING OF RICO

### A.   Courts Have Zealously Guarded The First Amendment Rights To Speak And Assemble Peaceably Regarding Matters Of Public Concern

"Speech is an essential mechanism of democracy . . .  The right of citizens to inquire, to hear, to speak, and to use information to reach consensus is a precondition to enlightened self-government and a necessary means to protect it." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 339 (2010).  Indispensable to the exercise of free of speech is the freedom of assembly. *NAACP v. Alabama*, 357 U.S. 449, 460 (1958) ("Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as this Court has more than once recognized by remarking upon the close nexus between the freedoms of speech and assembly.").  The First Amendment serves as a bulwark against governmental action threatening the freedom of speech or the rights to assembly and petition.

"At the heart of the First Amendment's protection" are "matters of public concern." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758–59 (1985); *NAACP v. Claiborne*, 458 U.S. 886, 913 (1982) ("There is a 'profound national commitment' to the principle that 'debate on public issues should be uninhibited, robust, and wide-open.'") (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)).  These relate to a "political, social or other concern to the community," *Connick v. Myers*, 461 U.S. 138, 146 (1983), or the "subject of legitimate news interest…of value and concern to the public at the time of publication." *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 83–84 (2004).  The Supreme Court has instructed that limits must be placed cautiously, if at all, on the freedom to speak freely about matters of public concern, even though such matters may be—indeed are likely to be—controversial, and have included such things as picketing a serviceman's funeral with signs such as "God Hates You"

8

(*Snyder v. Phelps*, 562 U.S. 443, 454 (2011)); expressing disappointment that a presidential assassination attempt had failed (*Rankin v. McPherson*, 483 U.S. 378 (1987)); or the content of public records even when they involve potentially sensitive information, like a crime victim's identity (*Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 496–497 (1975)).  "For the Constitution protects expression and association without regard to the race, creed, or political or religious affiliation of the members of the group which invokes its shield, or to the truth, popularity, or social utility of the ideas and beliefs which are offered."  *NAACP v. Button*, 371 U.S. 415, 444-45 (1963).

The issues in this case must be evaluated in this framework.  It is a time-honored feature of our democracy for nongovernmental organizations (like Defendants and *Amici*) to provide a vehicle for people to advocate for causes, with the full protection of the Constitution.  Resolute's grievances alleged in the complaint target precisely this type of advocacy, including "stag[ing] a protest…to draw the regulators' attention to Resolute's logging and forestry practices" (Compl. ¶ 189), "publishing a report" criticizing an academic for bias in regard to his climate-change research (¶ 66), "publiciz[ing] claims that Resolute was destroying the Boreal forest, its woodland caribou, and its indigenous people" (¶ 131) and the like.  *Amici* believe that deforestation, climate change, conservation and human-rights issues are paradigmatic matters of public concern.  These matters of paramount importance to the public should be debated rigorously in public under the highest level of First Amendment protection.  *Amici* themselves regularly advocate in regard to such issues and depend upon the protections afforded by the First Amendment to do so.

The application of RICO to efforts by non-profit organizations to organize, assemble, and communicate their message to the public is highly problematic because the broad remedies

available under the statute (*e.g.*, treble damages, liability for conduct of other alleged co-conspirators) are too blunt an instrument in a field where the law demands "precision of regulation" to avoid encroaching on First Amendment rights. *NAACP v. Claiborne*, 458 U.S. 886, 916 (1982) (quoting *NAACP v. Button*, 371 U.S. at 438). "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *NAACP v. Button*, 371 U.S. at 433 (citing *Cantwell v. Connecticut*, 310 U.S. 296, 311 (1940)). "Specifically, the presence of activity protected by the First Amendment imposes restraints on the grounds that may give rise to damages liability and on the persons who may be held accountable for those damages." *Claiborne*, 458 U.S. at 916-17. That rule should apply with particular force here.

### B.     Resolute's Attempt To Apply RICO To Non-Violent Speech By Alleging Greenpeace Has Defrauded Its Own Donors Threatens Freedom Of Speech And Assembly

The cornerstone of Resolute's RICO claim is that Greenpeace has "create[d] and disseminate[d] false and misleading reports and information concerning Resolute." Compl. ¶ 222. Resolute alleges that the alleged "lies" about Resolute and its customers constituted mail- and wire-fraud (RICO predicate offenses) because they were communicated to prospective donors to solicit donations. *See, e.g.*, Compl. ¶¶ 1, 43, 54-55, 247-248. Resolute in essence seeks to use RICO to police statements Greenpeace made about Resolute for the purpose of raising public awareness and soliciting donations from third parties. The extension of a statute meant to combat racketeering to instead combat peaceful debate and advocacy about matters of public concern solely on the ground that some of the challenged statements were made in conjunction with requests for donations would chill constitutionally protected speech and freedom of assembly, not only with respect to the public at large but also between non-profit

10

organizations (like *Amici*) and their members, on whose donations *Amici* and similar organizations depend for their very existence.

It is beyond cavil that statements made for the purpose of soliciting donations fall squarely within the protection of the First Amendment.  *See Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980) ("Prior authorities . . . clearly establish that charitable appeals for funds, on the street or door to door, involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes— that are within the protection of the First Amendment."); *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 959-60 (1984) ("solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes").  In *Schaumburg*, the Supreme Court specifically rejected the argument that solicitation of money transforms the speech in question into purely commercial speech such that First Amendment protections recede.  444 U.S. at 632.

The idea that a non-profit organization's peaceful speech to educate about matters of substantial importance to the public can constitute predicate acts under RICO, simply because non-profits must solicit public support to fulfill their charitable purposes, endangers this core freedom.  *See Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 264-265 (1994) (Souter, J., concurring) ("I think it prudent to notice that RICO actions could deter protected advocacy and to caution courts applying RICO to bear in mind the First Amendment interests that could be at stake.").

It is unsurprising that the target of an advocacy campaign would take issue with how its activities are characterized.  But if Resolute feels that its environmental record has been

mischaracterized, it can tell its side of the story and let the public decide.   *See United States v. Alvarez*, 132 S. Ct. 2537, 2550 (2012).

### C.     Resolute's Attempt To Apply RICO To Non-Violent Speech By Labelling It "Extortion" Threatens Free Speech

Resolute alleges that non-violent campaigns by Greenpeace constitute "extortion" in violation of the Hobbs Act, 18 U.S.C. § 1951 (a RICO predicate offense).  Compl. ¶¶ 223-24; *see also, e.g.*, *id.* ¶ 15 ("Once identified, Greenpeace and its co-conspirators have issued extortive demands to [Resolute's] customers to sever their ties with Resolute and publicly endorse the 'Resolute: Forest Destroyer' campaign or face crippling boycotts and other threatening behavior accusing them of also being 'Forest Destroyers.'").  But Resolute does not allege the elements of the crime of extortion.  The Hobbs Act defines "extortion" as "the *obtaining* of property from another, with his consent, *induced by wrongful use of actual or threatened force, violence, or fear*, or under color of official right."  18 U.S.C. § 1951(b) (emphasis added).  Resolute does not allege that Greenpeace employed violent tactics or threats of violence—the words "violent" or "violence" are conspicuously absent from the Complaint.

Nor does Resolute allege that Greenpeace attempted to obtain for itself money or property from Resolute.  In *Scheidler v. National Org. for Women, Inc.*, 537 U.S. 393, 409 (2003), the Supreme Court restricted the definition of "extortion" under the Hobbs Act, holding that a person must, among other things, "obtain or attempt to obtain property" for oneself to fall under its scope.  The Seventh Circuit had held that the Hobbs Act does not require that one obtain the property in question for oneself; a "loss to, or interference with the rights of, the victim is all that is required."  *Nat'l Org. for Women, Inc. v. Scheidler*, 267 F.3d 687, 709 (7th Cir. 2001).  The Supreme Court reversed, holding that the fact that protesters "interfered with, disrupted, and in some instances completely deprived respondents of their ability to exercise

their property rights" was insufficient to violate the Hobbs Act.  537 U.S. at 394.  Justice

Ginsburg sagely observed in a concurring opinion: "The Court is rightly reluctant, as I see it, to

extend RICO's domain further by endorsing the expansive definition of 'extortion' adopted by

the Seventh Circuit."  *Id*. at 412.  Boycotts and similar activity alleged by Resolute, aside from

constituting protected speech under the First Amendment, plainly would fall outside the Hobbs

Act definition of extortion and as such cannot give rise to a RICO case.  *See Wackenhut Corp. v.*

*Serv. Employees Int'l Union,* 593 F. Supp. 2d 1289, 1296 (S.D. Fla. 2009) (dismissing RICO

case where it was alleged only that "defendant sought to deprive [plaintiff] of these property

rights, not that it sought to acquire them for itself").

What Resolute *does* allege is that Greenpeace used boycotts or other "coercive" tactics to

pressure Resolute and other market players into compliance with Greenpeace's causes.  The

proposed use of the Hobbs Act and RICO to shut down non-violent boycotts or other efforts to

pressure or "coerce" compliance with a social or environmental agenda—activities that some

*Amici* have also engaged in to promote their environmental mission—is flatly inconsistent with

the First Amendment.

The First Amendment protects non-violent advocacy even when it is coercive or intended

to apply economic or social pressure to influence behavior.  *Org. for a Better Austin v. Keefe*,

402 U.S. 415, 419 (1971) ("The claim that…expressions [are] intended to exercise a coercive

impact on respondent does not remove them from the reach of the First Amendment");

*Claiborne*, 458 U.S. at 910 ("Speech does not lose its protected character…simply because it

may embarrass others or coerce them into action").  The *Claiborne* Court noted that emotional

appeals and "'threats' of vilification or social ostracism" to promote compliance with a boycott

were all "constitutionally protected and beyond the reach of a damages award."  *Id*. at 926.  That

13

the defendants intended to inflict *economic* injury was insufficient to limit their constitutional

right to free expression.  *Id.* at 914; *see also Ne. Women's Ctr., Inc. v. McMonagle*, 670 F. Supp.

1300, 1308 (E.D. Pa. 1987) ("Only non-peaceful activity, falling outside the parameters of

protected conduct, can form the basis of a claim for extortion.").  RICO simply does not, and

should not, extend to these non-violent, constitutionally protected activities.

<u>CONCLUSION</u>

For the foregoing reasons, *Amici* respectfully request that Defendants' motion to dismiss

Counts I-V be granted.

<u>/s/ Robert Jackson</u>
Robert Jackson, Esq. - GA Bar # 387750
ROBERT B. JACKSON, IV, LLC
260 Peachtree Street - Suite 2200
Atlanta, Georgia 30303
(404) 313-2039 Voice
rbj4law@gmail.com

Of Counsel:
SIMPSON THACHER & BARTLETT LLP
Joseph M. McLaughlin
Joshua M. Slocum
Harsha Panduranga
425 Lexington Avenue
New York, New York 10017
(212) 455-2000

14

## - APPENDIX -

The organizations participating as *amici* on this brief are:

**Alaska Wilderness League**

**Center for Biological Diversity**

**Center for International Environmental Law**

**Defenders of Wildlife**

**FishWise**

**Physicians for Social Responsibility**

**Sierra Club**

**Sustainable Fisheries Partnership Foundation**

**The Wilderness Society**